IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CHESTER COUNTY HOSPITAL<br><br>v.<br><br>INDEPENDENCE BLUE CROSS,<br>QCC INSURANCE COMPANY,<br>KEYSTONE HEALTH PLAN EAST, and<br>KEYSTONE MERCY HEALTH PLAN | CIVIL ACTION<br><br>NO. 02-2746 |

**REPORT OF INITIAL ATTORNEYS' CONFERENCE
AND PROPOSED DISCOVERY AND CASE MANAGEMENT PLAN**

1. **Time and Place of Rule 26(f) Meeting**

A Rule 26(f) conference was held by telephone on June 13, 2002, between Lewis R. Olshin and Wayne A. Mack, Duane Morris LLP, counsel for the plaintiffs, and William J. Leonard, Obermayer, Rebmann, Maxwell & Hippel, LLP, and Kenneth W. Donnelly, Howrey Simon Arnold & White, LLP, counsel for the defendants.

2. **List of Anticipated Additional Parties Who Should Be Included, When They Can Be Added and By Whom They Are Wanted**

The parties have not identified any anticipated additional parties.

3. **Agreed-Upon Discovery Plan Proposed to the Court**

   a. **Subjects on which Discovery May Be Needed, When Discovery Should Be Completed, and Whether Discovery Should Be Conducted in Stages or Be Limited to or Focused Upon Particular Issues**

This case involves nine claims and three counterclaims, one plaintiff and four defendants. The Plaintiff, the Chester County Hospital (CCH), claims violations of federal antitrust law under Sections 1 and 2 of the Sherman Act, common law restraint of

trade, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, and a reformation or recission of a number of separate contracts between it and Defendants. CCH alleges that the Defendants are an unlawful monopolist and an unlawful monopsonist in the various markets. Independence Blue Cross and the other three Defendants (collectively, "IBC") allege they are providers of health care financing services, insurance benefits, or HMO or other health care delivery services. In the counterclaim, IBC claims that CCH has breached its contracts and breached its duty to negotiate in good faith with IBC.

Given the scope and complexity of the issues raised in this case, the parties anticipate that it will be necessary to take substantial discovery, including from third-parties. Discovery will likely be necessary on the full range of the allegations contained in the Complaint and Counterclaims, including but not limited to: (a) the definition of the relevant product and geographic markets; (b) whether IBC possesses market or monopoly power in the alleged markets to supply health care benefits; (c) whether IBC possesses market or monopsony power in the alleged markets to purchase health care services; (d) the barriers to entry or to expansion of capacity in any of the relevant markets and whether defendants' conduct caused or contributed to these alleged barriers to entry or expansion; (e) whether IBC's and CCH's contracts or contract provisions for purchase of health care services have had an actual anticompetitive effect in any relevant markets; (f) whether, as alleged, CCH has been forced to enter various contractual arrangements with IBC; (g) whether IBC has engaged in anticompetitive conduct, including, as alleged, by bundling its health benefit services, requiring most-favored customer pricing, and "intimidating" or "threatening" CCH as a supplier of health care service and/or employers and other customers of health benefits to enter into anticompetitive contracts; (h) whether any of IBC's acquisitions and/or combinations identified in the Complaint were designed to gain or maintain monopoly or monopsony power or actually resulted in a substantial diminution on competition in any of the alleged markets; (i) whether CCH

has suffered antitrust injury and has standing to assert these alleged violations; (j) whether CCH has suffered injury in fact as a result of IBC's alleged unlawful conduct; (k) whether defendants have performed all conditions and promises under their separate agreements; (l) whether plaintiff has performed all conditions and promises under its agreements or has breached any of those agreements; (m) whether during contract negotiations or the performance of any contract between IBC and/or the other defendants and CCH, any of the parties have failed to deal fairly and in good faith; and (n) the parties' respective claims for damages.

      **b.**      **Timing, Form, or Requirement For Disclosures under Rule 26(a), Agreed Upon Discovery Plan, and Plan for Dispositive Motions and Experts**

With due consideration of the likely numerous issues for discovery, as briefly outlined above and further framed by the pleadings, the parties have agreed to the following discovery and motion schedule and jointly propose, together with language for inclusion in the Court's initial Rule 16 Scheduling Order, the following:

    1.    The parties will exchange their Rule 26(a)(1) disclosures within fourteen (14) days of the Court's June 27 pre-trial conference. Afterwards, all non-expert discovery shall proceed forthwith and continue in such manner as will assure that all requests for and responses to discovery will be served and noticed so as to be completed by no later than August 1, 2003.

    2.    At the end of non-expert discovery, expert disclosures shall be made in the following sequence: Plaintiff in support of its claims and Defendants in support of their counterclaims shall make Rule 26(a)(2)(B) disclosures by October 1, 2003. Defendants in their defense to Plaintiff's claims and Plaintiff in its defense to Defendants' counterclaims shall make Rule 26(a)(2)(B) disclosures by December 19, 2003. Any opinions and supporting evidence intended solely to contradict or rebut the same subject matter identified by another party shall be

disclosed by no later than January 30, 2004. Expert depositions shall be completed by March 31, 2004.

    3.    Dispositive motions shall be filed no later than May 14, 2004. Responses shall be due by June 15, 2004, and replies by June 30, 2004.

    **c.**    **What Changes Should be Made in the Limitations on Discovery Imposed Under the Rules or by Local Rule, and What Other Limitations Should be Imposed**

The parties agreed that the limitations on depositions set forth in Rule 30(a)(2)(a) and 30(d)(2) should not apply to this case. They agreed also, however, that some limitations in another form or number may be appropriate and agreed to continue discussions on this issue after the scheduled exchange of Rule 26(a)(1) disclosures.

    **4.**    **Any Other Orders That Should be Entered by the Court Under Rule 26(c) or Under Rules 16(b) and (c)**

At the Rule 26(f) conference, the parties agreed that a protective order authorized under Rule 26(c) should be entered to protect the confidentiality of nonpublic and competitively-sensitive information that may need to be disclosed in the course of discovery. The parties will prepare a protective order for approval by the Court.

Finally, the parties agreed at the conference to propose that, in the Court's discretion, the Scheduling Order include a final pre-trial conference after the filing of dispositive motions, at which time a trial would be scheduled as soon as practicable.

Respectfully submitted this 24th day of June, 2002.

_____
Lewis R. Olshin, Esq.
Wayne A. Mack, Esq.
DUANE MORRIS LLP
4200 One Liberty Place
Philadelphia, PA  19103
Attorneys for Plaintiff


_____
Thomas A. Leonard, Esq.
Paul S. Diamond, Esq.
William J. Leonard, Esq.
OBERMAYER, REBMANN,
MAXWELL & HIPPEL, LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1895


_____
John DeQ. Briggs, III, Esq.
James G. Kress, Esq.
Kenneth W. Donnelly, Esq.
Howrey, Simon, Arnold & White, LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2402

Attorneys for Defendants