IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CHESTER COUNTY HOSPITAL<br><br>v.<br><br>INDEPENDENCE BLUE CROSS,<br>QCC INSURANCE COMPANY,<br>KEYSTONE HEALTH PLAN EAST, and<br>KEYSTONE MERCY HEALTH PLAN | NO. 02-CV-2746 |

### ORDER

AND NOW this ____ day of _____, 2002, upon consideration of Defendants' Motion For Sanctions Pursuant To Federal Rule of Civil Procedure 11 and Plaintiff's response thereto, it is hereby **ORDERED** AND **DECREED** that:

1. Plaintiff, Chester County Hospital, is directed to pay the counsel fees and costs incurred in presenting the Motion for Sanctions and in opposing Plaintiff's Complaint recently filed against Defendants; and

2. Plaintiff, Chester County Hospital, is directed to pay into Court a specific monetary sum sufficient to deter Plaintiff from filing pleadings with the Court that are known to be false.

_____
Padova    J.

388965

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CHESTER COUNTY HOSPITAL<br><br>v.<br><br>INDEPENDENCE BLUE CROSS,<br>QCC INSURANCE COMPANY,<br>KEYSTONE HEALTH PLAN EAST, and<br>KEYSTONE MERCY HEALTH PLAN | NO. 02-CV-2746 |

### DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO RULE 11

Defendants, Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East and Keystone Mercy Health Plan, by their undersigned counsel, hereby move for the imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure against Plaintiff Chester County Hospital ("CCH") for false statements knowingly made in its Complaint (Copy attached as Exhibit "A") recently filed with this Court (Civil Action No. 02-CV-2746). In support of the Motion, Defendants have submitted a Memorandum of Law, which they respectfully incorporate herein.

WHEREFORE, Defendants respectfully request that this Court enter an Order imposing sanctions on CCH for authorizing, filing, and pursuing its Complaint. Defendants request that the sanctions be in an amount equivalent to Defendants' reasonable attorneys' fees and costs incurred in presenting this Motion for Sanctions and in opposing CCH's Complaint. Defendants further request the Sanction of a specific monetary sum, paid into Court, sufficient to deter Plaintiff from filing pleadings with the Court that are known to be false. Upon the Court's direction, Defendants will provide the Court with a listing of the relevant fees and costs.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

BY: *Thomas A. Leonard*
    THOMAS A. LEONARD
    PAUL S. DIAMOND
    WILLIAM J. LEONARD
    WILLIAM K. PELOSI
    H. DAVID SEIDMAN
    One Penn Center, 19th Floor
    1617 John F. Kennedy Boulevard
    Philadelphia, PA 19103
    (215) 665-3000

HOWREY SIMON ARNOLD & WHITE LLP

    JOHN DeQ BRIGGS
    HOWARD T. ROSENBLATT
    ERIK T. KOONS
    1299 Pennsylvania Avenue, N.W.
    Washington, DC 20004
    (202) 383-7015


    Attorneys for Defendants,
    Independence Blue Cross,
    Keystone Health Plan East,
    QCC Insurance Company, and
    Keystone Mercy Health Plan

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CHESTER COUNTY HOSPITAL<br><br>v.<br><br>INDEPENDENCE BLUE CROSS,<br>QCC INSURANCE COMPANY,<br>KEYSTONE HEALTH PLAN EAST, and<br>KEYSTONE MERCY HEALTH PLAN | NO. 02-CV-2746 |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS

Defendants, Independence Blue Cross ("IBC"), QCC Insurance Company, Keystone Health Plan East and Keystone Mercy Health Plan (collectively "Defendants"), by their undersigned counsel, hereby file their Memorandum of Law In Support of their Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure against Plaintiff Chester County Hospital ("CCH") for the false statements knowingly made by CCH in its Complaint (Copy attached as Exhibit "A") recently filed with this Court (Civil Action No. 02-CV-2746).

### Introduction

CCH has filed an antitrust complaint against IBC that is premised upon facts CCH knows to be false. In essence, CCH has alleged that IBC, using its "monopolistic power," compelled CCH to enter into reimbursement contracts severely below CCH's costs – contracts that would, unless rescinded by the Court, drive CCH out of business.

Defendants have responded, inter alia, by asserting that CCH willingly entered into its contracts with IBC, by denying any allegation of "monopoly," and by asserting that CCH's financial woes are entirely the result of its own mismanagement: spending over $35 million on

388965

an extravagant, wasteful capital expansion program. As set forth below, in marketing bonds to pay for that program, CCH lauded those very same IBC contracts on which its complaint is based, telling potential bond buyers that contracts were favorable and would allow CCH to make money. Thus, CCH's Complaint is premised on known falsehoods. These extraordinary misrepresentations compel the imposition of sanctions.

## ARGUMENT

### A. The Standard For Imposing Rule 11 Sanctions

Under Rule 11, an attorney, by signing a pleading, motion, or other paper certifies: (1) that the attorney has read the document; (2) that the attorney has made a reasonable inquiry into the contents of the document and concluded that it is well grounded in both fact and law; and (3) that the attorney has not acted in bad faith in signing the document. See Garr v. U.S. Healthcare, 22 F.3d 1274, 1278 (3d Cir. 1994). The Rule requires an inquiry reasonable under the circumstances into whether the factual contentions have evidentiary support. See Id. Sanctions are warranted when the claimant exhibits a "deliberate indifference to obvious facts." Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998); O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996); Collins v. Walden, 834 F.2d 961 (11th Cir. 1987). "It is well-recognized that the central purpose of Rule 11 is to discourage the filing of pleadings, motions and other papers that are frivolous, legally unreasonable or without factual foundation." Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir.N.J. 1988) (*quoting* Zaldivar v. Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986) and Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986)).

Where a represented party itself knew that the filing or signing was improper, that party is subject to Rule 11 sanctions. See F.R.C.P. 11(c). See also CTC Imports & Exports v.

Nigerian Petroleum Corp., 951 F.2d 573 (3d Cir. Pa. 1991) (sanctions imposed on a represented party who knew, prior to filing its complaint, that the validity of documents provided to the court and counsel were highly questionable). A represented party may be sanctioned for either misrepresenting key facts or for knowingly bringing and pursuing claims devoid of evidentiary support. See Union Planters Bank v. L & J Dev. Co., 115 F.3d 378, 384-85 (6th Cir. 1997). "The Rule imposes an obligation on counsel and client analogous to the railroad crossing sign, 'Stop, Look and Listen.' It may be rephrased, 'Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation ... ." Acernese v. KDF Fluid Treatment, 1995 U.S. Dist. LEXIS 14992, 31 (E.D.Pa. 1995) (*quoting* Gaiardo v. Ethyl Corp., 835 F.2d 479, 482 (3d Cir. 1987)). See also Martin v. Farmers First Bank, 151 F.R.D. 44 (E.D.Pa. 1993); Ross v. Jolly, 151 F.R.D. 562 (E.D.Pa. 1993); Dover Steel Co. v. Hartford Accident and Indemnity Co., 151 F.R.D. 570 (E.D.Pa. 1993) (finding that Rule 11 has been violated requires Court to impose sanctions). See also, Frantz v. United States Powerlifting Federation, 836 F.2d 1063 (7th Cir. 1987) (Rule 11 must not bar the courthouse door to people who have some support for a complaint, yet the need for discovery does not excuse the filing of a vacuous complaint.).

B.  **CCH's Complaint Warrants Rule 11 Sanctions Because It Is Based On Known Falsehoods**

Effective November 2000, IBC and CCH entered into a five (5) year managed care agreement that established payment rates for services CCH provided to IBC users. The gravamen of CCH's Complaint is that IBC, exercising its "monopoly power," *coerced* CCH into signing these contracts – contracts whose grossly inadequate reimbursement rates would drive CCH out of business. In its Complaint, CCH explicitly alleges:

> 23.   For the contract beginning November 1, 2000, the Hospital proposed new rates to IBC that would have helped to stabilize the Hospital's fiscal condition. IBC refused the proposed increase and would only agree to a five year contract providing for an increase in inpatient and outpatient rates in the first year of only about one third of what the Hospital requested .... Facing the alternative of immediate financial disaster if the Hospital refused to contract with the IBC Group, the Hospital had no choice but to accept the terms **imposed** by IBC.
>
> 43.   IBC has used ... [its] market power ... to impose '**take it or leave it**' pricing terms in its agreements with ... the Hospital, thereby affording compensation that is below fair market rates and below the hospitals' costs, in some cases even their variable costs. ... In November 2000, for example, the Hospital had no meaningful choice but to sign contracts with the IBC Group on a '**take it or leave it**' basis on compensation terms that are oppressive.
>
> 65.   ... [T]he IBC Group has caused injury to the Hospital, through, among other things, use of the resulting market power to **insist** on pricing terms that do not cover plaintiff's costs, [and] that **threaten its viability** ... .
>
> 82.   ... [T]he Hospital had no meaningful choice as to the pricing terms of the Agreements, they are so one-sided as to be **oppressive**, and ... the Agreements are unconscionable and contrary to the public interest and should be reformed or rescinded.

(Complaint at ¶¶ 23, 43, 65, & 82 (emphasis supplied)).

In January, 2001 – immediately after CCH entered into its contracts with IBC – the Hospital sought to market a $23 million Revenue Bond (Attached as Exhibit "B") to pay for its capital expansion program. In audited public financial documents and integrated disclosure

388965                                          4

statements – signed by CCH President H. L. Perry Pepper – the Hospital painted an entirely different picture than that described in the instant Complaint. CCH described itself as a successful, thriving, solvent institution. Most significantly, CCH lauded its contracts with IBC:

> Over the past two years, the Hospital has **successfully negotiated significant increases** in its two largest managed care contracts. In November 1999, the Hospital signed a renegotiated six-year agreement with Aetna. In October 2000, the Hospital entered into a new five-year contract with Blue Cross. ... **Based upon the contracts renegotiated to date, management expects that managed care reimbursement will be slightly at or above current costs for care.**

(Bond at p. A-26 (emphasis supplied)). Just as significant, CCH told prospective investors that it was under *less* pressure than before to agree to lower reimbursement rates:

> Downward pressure on reimbursement rates as the result of competition among providers for managed care contracts has decreased substantially in recent years.

(Bond at p. A-26). To the extent the Hospital had been under pressure to accept lower reimbursement rates, CCH told investors that the source of that pressure was largely statutory:

> In recent years the Hospital has experienced slight increases in inpatient utilization, more significant growth in outpatient and ancillary services and a small reduction in its average length of stay ("ALOS"). Pressure on third-party rates of reimbursement, particularly for inpatient services, has constrained revenue growth from higher patient volumes. These pressures emanate from the balanced Budget Act of 1997 ("BBA") and its impact on Medicare reimbursement and from efforts by managed care organizations, who principally reimburse the Hospital for inpatient services to subscribers on a per diem basis, to limit admissions and reduce the length of stay through concurrent utilization review and other measures.

(Bond at p. A-20). These statements to prospective investors – made contemporaneously with the negotiation of the IBC contracts, and subject to the anti-fraud provisions of the securities laws – absolutely contradict the allegations of the Complaint.

This is not a case in which a minor inconsistency came to light only after an exhaustive review of voluminous sets of historically antiquated records. On the contrary, CCH entered into the Hospital Revenue Bond less than eighteen (18) months before filing the instant Complaint. Moreover, even a cursory reading of CCH's Bond Disclosure Documents would reveal this highly material inconsistency, which practically leaps off the pages. The Hospital Revenue Bond was obviously intended to convince prospective buyers that the IBC contracts (so denigrated in the instant Complaint) were a material benefit to CCH, supporting the issuance of a $23 million Hospital Revenue Bond. Either CCH is lying to this Court, or it lied to its bondholders.

Courts have not hesitated to impose sanctions in similar cases. In <u>CTC Imports & Exports v. Nigerian Petroleum Corp.</u>, the Third Circuit affirmed the Eastern District Court's imposition of Rule 11 sanctions on a represented party who knew prior to filing its complaint that the validity of the documents provided to the Court and its counsel were highly questionable. 951 F.2d 573 (3d Cir. Pa. 1991). <u>See</u> <u>Horizon Unlimited, Inc. v. Silva</u>, 1999 U.S. Dist. LEXIS 13320, 19 (E.D.Pa. Aug. 31, 1999) (sanctions imposed on a client whose representative agent made misrepresentations to counsel and the Court). <u>See also</u> <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1118 (11th Cir. 2001) ("A client is subject to sanctions when it is clear that he is the 'mastermind' behind the frivolous case."); <u>Elliott v. M/V Lois B.</u>, 980 F.2d 1001 (5th Cir.1993) (affirming sanctions against party for misrepresentation in pleading); <u>Calloway v. Marvel Entertainment Group, Div. of Cadence Indus. Corp.</u>, 854 F.2d 1452 (2d Cir.N.Y. 1988) (client and counsel held jointly and severally liable for engaging in a coordinated effort to mislead the Court: a factual misrepresentation is an example of wrongful conduct for which a represented party may be sanctioned in addition

to, or instead of, counsel), *rev'd on other grounds*, Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120 (1989). Accordingly, CCH should be sanctioned, and Defendants should be awarded the full costs incurred as a result of the Rule 11 violations.

In addition, CCH should be required to pay an appropriate fee to the Court. Such a sanction is specifically contemplated by the Advisory Committee Notes to Rule 11's 1993 amendments. The Court is obviously the best arbiter of the time, expense, and inconvenience imposed on it as a result of CCH's frivolous lawsuit. It bears noting, however, that a 1982 study concluded that a single hour spent by a federal judge on a case costs taxpayers about $600. See Kevin P. Roddy, RICO LAW REPORTER, Vol. 5, No. 5 (1987). Many courts have used this number as a formula for imposing sanctions. Id. (citing decisions employing formula).

## CONCLUSION

For all of the above-stated reasons, Defendants respectfully request that this Court enter an Order imposing Sanctions on CCH. Defendants request that the Sanction be in an amount equivalent to Defendants' reasonable attorneys' fees and costs incurred in responding to CCH's Complaint. Defendants further request the Sanction of a specific monetary sum, paid into Court, sufficient to deter Plaintiff from filing pleadings with the Court that are known to be false. If the Court so directs, Defendants will provide the Court with a listing of the relevant fees and costs.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

BY: *Thomas A. Leonard*
THOMAS A. LEONARD
PAUL S. DIAMOND
WILLIAM J. LEONARD
WILLIAM K. PELOSI
H. DAVID SEIDMAN
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
(215) 665-3000

HOWREY SIMON ARNOLD & WHITE LLP

JOHN DeQ BRIGGS
HOWARD T. ROSENBLATT
ERIK T. KOONS
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-7015

Attorneys for Defendants,
Independence Blue Cross,
Keystone Health Plan East,
QCC Insurance Company, and
Keystone Mercy Health Plan

## CERTIFICATE OF SERVICE

I hereby certify that I have caused to be served a true and correct copy of Defendants' Motion for Sanctions Pursuant to Rule 11 and supporting memorandum upon the following counsel via hand delivery on the date indicated below:

>Lewis R. Olshin, Esquire
>Duane Morris LLP
>One Liberty Place, Suite 4200
>Philadelphia, PA 19102

_____
Thomas A. Leonard

Dated: June 17, 2002

306169