IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE CHESTER COUNTY HOSPITAL | : | CIVIL ACTION |
| | : | NO. 02-2746 |
| v. | : | |
| | : | |
| INDEPENDENCE BLUE CROSS, | : | |
| QCC INSURANCE COMPANY, | : | |
| KEYSTONE HEALTH PLAN EAST, and | : | |
| KEYSTONE MERCY HEALTH PLAN | : | |

PLAINTIFF'S OPPOSITION TO BLUE CROSS OF NORTHEASTERN
PENNSYLVANIA'S MOTION FOR A PROTECTIVE ORDER

Plaintiff, The Chester County Hospital (the "Hospital"), by its attorneys, respectfully submits this Opposition to Blue Cross of Northeastern Pennsylvania's (BCNEPA) Motion for a Protective Order.

BCNEPA fails to inform this Court of a critical fact that renders its motion highly improper: BCNEPA's outside counsel initiated this dispute only after the firm's in-house counsel – Edwin Goodlander – did not dispute the relevance of the information requested, explicitly stated that BCNEPA would not have a significant number of documents responsive to the Hospital's subpoena, and agreed to respond in good faith to the Hospital's subpoenas, as reflected in his February 4 letter:

> This will confirm our agreement that the date upon which [BCNEPA] is required to produce documents in response to the Subpoena . . . has been extended to March 14, 2003. This will also confirm our agreement that the corporate deposition of [BCNEPA], originally scheduled for March 18, 2003, will be postponed until a later date to which we shall mutually agree. In addition, [BCNEPA] will produce by February 16, 2003, pleadings in the case brought against it by Highmark.

Februry 4, 2003 Letter from Edwin R. Goodlander, Esq. to Daniel A. Kotchen, Esq., Tab B of Daniel A. Kotchen's Declaration, attached as Exhibit 1.[1]

BCNEPA refused to honor this agreement only after its outside counsel indicated that, before responding to the subpoenas, she needed to discuss this case with IBC and Highmark – both of which have failed to produce a single document in this case. And after these conversations, BCNEPA itself refused to produce any documents and instead filed its motion.

This motion should be denied – and the Hospital awarded its costs in opposing it – for three reasons. First, BCNEPA fails to explain how its motion is legitimate in light of BCNEPA's (1) agreement regarding the Hospital's subpoenas and (2) representation that it would not have many documents responsive to the Hospital's document subpoena. Rather than addressing this issue head on, BCNEPA disingenuously represents to this Court that:

> Mr. Goodlander and CCH's counsel had preliminary discussions about narrowing the broad scope of the subpoenas. However, to date, the parties have been unable to agree.

BCNEPA Memorandum of Law in Support of its Motion ("BCNEPA Memo") at 3.

Second, BCNEPA's motion is frivolous on its face. Its arguments are so vague and general – i.e., refusing to produce any agreements between BCNEPA and IBC because some "may" exist that may not relate to this case, but failing to identify the types of agreements that do exist – that it fails to meet the standard for a protective order set forth in the very cases upon which it relies. See, e.g., United States v. Dentsply Int'l,

---

[1] Only one issue relating to BCNEPA's motion was not explicitly resolved in this initial agreement: whether BCNEPA was required to produce pleadings filed, pursuant to a private agreement, under seal in a related litigation. The Hospital addresses this issue on pages 11-12 of this opposition.

2

Inc., 187 F.R.D. 152, 158 (D. Del. 1999) ("'Broad allegations of harm, unsubstantiated by specific examples,' do not support a showing of good cause [for a protective order.]" (quotation omitted) (cited on p. 8 of BCNEPA's Memo). In this regard, BCNEPA (1) objects on the basis of relevance, but fails to explain how requested information is irrelevant, (2) objects on the basis of burden, but fails to delineate specific facts to substantiate why each request imposes an undue burden, (3) objects on the basis of confidentiality, but fails to explain why the Protective Order's protections are either insufficient now or cannot be modified to provide sufficient protection, (4) objects on the basis that a private confidentiality agreement protects requested information filed with a court under seal, but ignores controlling case law holding that private parties cannot agree to which documents will be protected from discovery, and (5) objects on the basis that certain information may be available from IBC, but again ignores controlling case law rejecting the legitimacy of such an objection.

Third, BCNEPA has not met its obligation, under Fed. R. Civ. P. 26(c) (and E.D. Pa. L. R. 26.1(f)), to endeavor in good faith to resolve this discovery dispute prior to filing its motion. BCNEPA's counsel, Ms. Miller, and the Hospital's counsel, Mr. Kotchen, had one substantive conversation (on February 12) to discuss the Hospital's subpoenas.[2] Far from a good faith negotiation, however, this discussion lasted no more than five minutes and entailed Ms. Miller shouting at Mr. Kotchen, engaging in ad hominem attacks, and hanging up. See Daniel A. Kotchen's February 12 Letter to

---

[2] Ms. Miller and Mr. Kotchen had two previous conversations. On February 7, 2003, Ms. Miller called Mr. Kotchen to inform him that she would assist BCNEPA in responding to the Hospital's subpoenas and indicated that she first needed to discuss the case with IBC. On February 10, 2003, Ms. Miller called Mr. Kotchen seeking Highmark's counsel's name and number to discuss the subpoenas. Both calls lasted less than five minutes.

3

Melanie Miller, attached as Exhibit 2.  Immediately after this conversation, Mr. Kotchen informed Ms. Miller (by letter) that he did not understand her position regarding the subpoenas and was amenable to further discussing the issue, provided that such discussions were conducted professionally.  Id.  Ms. Miller declined.  Ms. Miller's conduct falls far short of the federal rules' requirement to try to resolve disputes in good faith, and it certainly is not consistent with her representation to this Court that BCNEPA and the Hospital engaged in "much negotiation" and that the Hospital "refused to resolve the [subpoena] deficiencies."  BCNEPA Memo at 2.

## ARGUMENT

Failing to cite one case in which a protective order was used to effectively quash a subpoena, BCNEPA nonetheless moves for such an order so that it "is not required to respond to" the Hospital's subpoenas.  BCNEPA's Proposed Order.  As the movant, BCNEPA bears the burden of demonstrating that good cause exists for issuing such an order and must be specific about the harm it will suffer absent the relief it seeks; broad allegations of harm are not sufficient to meet its burden:

> "Good cause [for a protective order] is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure.  The injury must be shown with specificity." (citation omitted)  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a good cause showing.  (citations omitted)  The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order.  (citation omitted)

Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-787 (3d Cir. 1994).

BCNEPA's motion fails to meet this standard.  As opposed to articulating any injury with specificity, BCNEPA relies on five vague, unsubstantiated arguments:  (a) relevance, (b) overbreadth, (c) confidentiality, (d) responsive documents are protected by

4

a private confidentiality agreement, and (e) documents can be obtained from IBC. BCNEPA Memo at 5. We address each in turn.

### A. Requested Information from BCNEPA Is Reasonably Calculated to Lead to the Discovery of Admissible Evidence.

Under Fed. R. Civ. P. 26(b)(1), a party can obtain discovery if the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." This Court broadly construes relevancy during discovery and permits discovery requests if there is any possibility that requested information bears on the general matter of an action:

> Relevancy is to be broadly construed and is not limited to the precise issues set out in the pleadings or to the merits of the case. (citation omitted) Instead, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action.

McCurdy v. Wedgewood Capital Management Co., No. 97-4304, 1998 U.S. Dist. LEXIS 18875, at *22 (E.D. Pa. Nov. 16, 1998).

The burden of showing that the requested discovery is not relevant is on the party resisting discovery. Id. at 21 (citing In re Bell Atlantic Securities Litigation, 1993 WL 514408 (E.D. Pa. 1993) (unreported)).

Even though BCNEPA bears the burden of meeting this standard, it articulates no reason why any information the Hospital seeks is irrelevant, but only claims that the subpoenas do not merit a response because they seek information "without regard to [its] relevance." See BCNEPA Memo at 1, 5, 9. BCNEPA fails to cite a single case in which any such vague, unsubstantiated argument justified the relief it seeks. Nonetheless, for this Court's edification, the Hospital will explain why information from BCNEPA is relevant and material to this action.

5

In two respects, information from BCNEPA is relevant to the Hospital's claim that IBC has unlawfully acquired and maintained market power. First, the Hospital challenges under Section 1 of the Sherman Act agreements between IBC and its potential competitors. See Amended Complaint at ¶¶ 45-55, 75. One such agreement is the Highmark Joint Operating Agreement (JOA) with IBC. The Hospital believes this agreement restrains competition, and IBC alleges that "the JOA and related documents have nothing to do with competition." Response of Defendants to Plaintiff's Motion for Leave to Amend the Complaint, filed on January 31, 2003, at ¶ 3. Discovery surrounding two competition-related disputes involving similar or identical Highmark JOAs will help the Hospital, IBC, this Court, and a jury understand the nature, purpose, provisions, and effects of the JOA, and whether the agreement either restrains or is unrelated to competition. The first of these disputes involved Highmark and Capital Blue Cross, where Highmark's JOA had to be terminated in order for these companies to compete.[3] The second dispute involved Highmark and BCNEPA. The Hospital understands that this dispute centered on whether the Highmark JOA precluded BCNEPA from offering – independent from Highmark – a competitive HMO product in Northeastern Pennsylvania under the "First Priority Health" trade name. Highmark claimed its JOA precluded this competitive offering; BCNEPA claimed that it did not. Ultimately, the parties were ordered by the Pennsylvania Superior Court to arbitrate this dispute with the Blue Cross Blue Shield Association (BCBSA). Highmark Inc. v. Hospital Service Association of America, 2001 Pa. Super. 278 (Sept. 21, 2001).

---

[3] The Hospital describes this dispute on pages 6-9 of its Memorandum of Law in Support of its Motion for Leave to Amend the Complaint, filed on January 16, 2003.

Other agreements involving BCNEPA exist that are relevant to the Hospital's claim that IBC has entered into agreements that restrict competition, including IBC's and BCNEPA's Agency Agreement and Participation Agreement.

Second, BCNEPA is relevant to the Hospital's case as either a potential or actual competitor to IBC. The Hospital understands that no meaningful competition exists between BCNEPA and IBC, at least in the Greater Philadelphia area, and alleges that the two companies "are party to agreements . . . that likely discourage or eliminate competition between the firms." Amended Complaint at ¶ 54. BCNEPA, however, identifies IBC as a "direct competitor" and states that it has a "competitive and marketing strategy for the Greater Philadelphia Area." BCNEPA Memo at 8. BCNEPA documents are therefore critical to understanding the extent of competition between these firms, the ability of these firms to compete in light of their agreements, BCNEPA's future plans to compete in Greater Philadelphia and any restraints IBC's conduct imposes on these plans, whether the firms perceive themselves as each other's closest competitors (as do Highmark and Capital Blue Cross), the firms' market shares, the geographic scope of the firms' product offerings, and – to the extent BCNEPA sells hospital benefits in the Greater Philadelphia Area – reasons why it has not contracted with the Hospital in establishing a provider network.

### B. BCNEPA's Unsubstantiated Burden Objections Are Contrary to Mr. Goodlander's Representations.

Similar to its relevance objection, BCNEPA makes broad objections to the breadth of the Hospital's requests but fails to articulate specifically how these requests impose an undue burden. Accordingly, its objections have no merit, not only because they do not meet the substantiation requirements set forth in Pansy, but also because this

7

Court has recognized that "'discovery in antitrust litigation is most broadly permitted and the burden or cost of providing the information sought is less weighty a consideration than in other cases.'" New Park Entertainment LLC v. Electric Factory Concerts, Inc., No. 98-775, 2000 U.S. Dist. LEXIS 531, at *11 (E.D. Pa. Jan. 13, 2000) (citation omitted). See also Callahan v. A.E.V. Inc., 947 F. Supp. 175, 179 (W.D. Pa. 1996) ("discovery in an antitrust case is necessarily broad because allegations involve improper business conduct. Such conduct is generally covert and must be gleaned from records, conduct, and business relationships." (citations omitted)).

Ignoring Mr. Goodlander's representations that BCNEPA would not have many responsive documents, BCNEPA objects to six requests on the basis that they are overbroad.

First, BCNEPA objects to Request No. 2, requesting "documents relating to the Defendants," on the basis that it would have to search too many documents to discern which ones are responsive. BCNEPA Memo at 5-6. In other words, it objects to the search process itself, not the number of responsive documents called for by the request. Prevailing on this argument would effectively end document discovery in federal court cases, as any request could be construed as requiring that a corporation search "hundreds of thousands of pages" of documents, as BCNEPA argues. BCNEPA Memo at 6. BCNEPA can limit this process by identifying and searching only those people or departments that are likely to have responsive documents. It does not have to search every document in the company's files. To the extent BCNEPA legitimately believes even that process is unduly burdensome, the Hospital remains open to negotiating the scope of this process. But in order to engage in meaningful negotiations the Hospital

8

needs to understand the types of responsive documents BCNEPA has and the number of departments (or people) that have these documents.  BCNEPA, though, fails to articulate this information.

Second (and similar to above), BCNEPA objects to Request No. 3, seeking "documents relating to Chester County Hospital," on the basis that the search process is too burdensome.  BCNEPA Memo at 6.  In light of the fact that BCNEPA does not contract with the Hospital, it is difficult to imagine how this request could be considered burdensome.  BCNEPA's arguments certainly are not enlightening, as it fails to identify the types of documents that it would have relating to the Hospital.  Nonetheless, BCNEPA can limit the search process by identifying those who are likely to have responsive documents and search their files.

Third, BCNEPA objects to Request No. 4, seeking documents relating to the Hospital's suit against IBC, as overbroad.  BCNEPA Memo at 6.  BCNEPA appears to misinterpret the scope of this request.  The Hospital is not seeking documents relating to any issue raised in the Amended Complaint, but only documents that relate to the lawsuit itself – such as documents that discuss or refer to the suit.  It is difficult to imagine that BCNEPA would have many documents responsive to this request, and (again) BCNEPA does not discuss whether it does.

Fourth, BCNEPA objects to Request No. 5, seeking documents relating to competition for healthcare financing products and services in the Greater Philadelphia Area, as being burdensome in that it "could include potentially every document in BCNEPA's files, given that BCNEPA's business is to compete in the healthcare industry."  BCNEPA Memo at 7.  But the Hospital understands that BCNEPA does not

9

compete in the Greater Philadelphia Area, at least with regard to offering hospital benefits. And BCNEPA offers no information by which to assess its competitive offerings in the Greater Philadelphia Area. At any rate, the Hospital will narrow this request to documents relating to hospital benefits insurance offerings in the Greater Philadelphia Area.

Fifth, BCNEPA objects to Request No. 9, seeking documents relating to any agreements between BCNEPA and the Defendants, on the grounds that BCNEPA "may" have agreements with the Defendants that do not relate to the Hospital's suit. BCNEPA Memo at 6. Of course, BCNEPA does not identify what types of agreements, or how many agreements, it has with the Defendants, further confirming its failure to articulate the type of specificity necessary to justify a protective order.[4]

Sixth, BCNEPA objects to Request No. 10, seeking documents relating to communications between BCNEPA and any insurer competing in the Greater Philadelphia Area, on the grounds that certain communications "may" exist that are unrelated to the Hospital's suit. BCNEPA Memo at 6. Again, we have no way of knowing what types of communications exist or how often such communications are made. This lack of specificity in no way justifies the issuance of a protective order.

### C. BCNEPA's Confidentiality Concerns Can Be Addressed With the Existing Protective Order.

BCNEPA objects to producing a witness in response to the Hospital's 30(b)(6) subpoena or to producing documents in response to Request No. 6 of the document subpoena because the information sought is "confidential" or, in the case of Request No.

---

[4] In light of the fact that BCNEPA identifies IBC as a "direct competitor" it is difficult to imagine that many agreements exist between the firms. And BCNEPA is careful not to identify the agreements that do exist.

10

6, "highly confidential." BCNEPA Memo at 8, 9. But these are precisely the categories of documents that are accorded specific treatment under the Protective Order, which strictly limits who can access documents so designated. BCNEPA argues that the Hospital cannot "legitimately contend that the [Protective Order] adequately protects BCNEPA's interests," but offers no explanation as to why. We submit that the Protective Order sufficiently protects BCNEPA because it imposes strict limitations on who can see "confidential" and "highly confidential" documents. To the extent BCNEPA is concerned that IBC's in-house counsel will have access to such documents and can specifically articulate a harm resulting from such disclosure (which it has not), BCNEPA can seek to preclude these counsel from such access. This was precisely the outcome in Dentsply, the case upon which BCNEPA relies. Dentsply, 187 F.R.D. at 162. But this confidentiality concern does not justify effectively quashing the subpoenas, as BCNEPA seeks.

### D. BCNEPA's Private Confidentiality Agreement Cannot Shield Documents from Discovery.

BCNEPA objects to producing pleadings (from a suit with Highmark surrounding the JOA) because they are covered by a private confidentiality agreement with BCBSA, requiring that the documents be filed with a court under seal. BCNEPA Memo at 8-9. Private confidentiality agreements, however, cannot serve to shield requested information from discovery. Burda Media, Inc. v. Blumenberg, No. 97 Civ. 7167, 1999 U.S. Dist. LEXIS 9240, at *9 (S.D.N.Y. June 17, 1999) ("Although the Settlement Agreement contains a confidentiality provision, and the Settlement Materials were filed under seal, litigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil

11

Procedure by stipulation." (citing cases)); Tribune Co. v. Purcigliotti, No. 93 Civ. 7222, 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996) ("the mere fact that the settling parties agreed to maintain the confidentiality of their agreement cannot serve to shield it from discovery." (citing cases)). "A confidentiality provision in a settlement agreement may only be enforced in a separate contract action." Jackson v. The Delaware River and Bay Authority, 224 F. Supp. 2d 834, 840 n. 5 (D.N.J. 2002) (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 778 (3d Cir. 1994)). Accordingly, BCNEPA cannot rely on its private confidentiality agreement with BCBSA to frustrate the Hospital's legitimate discovery efforts. To the extent the requested documents merit confidential treatment, BCNEPA can so designate them under the existing Protective order, and the Hospital and IBC will be precluded from publicly disclosing this information.[5]

### E. That Several Documents May Be Obtainable from IBC Does Not Render the Hospital's Subpoenas or Any Specific Request Objectionable.

Finally, BCNEPA urges this Court to effectively quash the Hospital's document subpoena because it seeks documents that may be obtainable from IBC itself. BCNEPA Memo at 5. BCNEPA does not identify which requests may elicit duplicative documents, but we assume it refers to Request No. 9, seeking documents relating to agreements between BCNEPA and IBC. A risk that this request may elicit several documents IBC may produce does not justify either quashing the subpoena or the request itself. The request is broader than seeking merely the agreements themselves (it seeks documents "relating to" the agreements, including internal documents not shared with IBC) and

---

[5] That responsive pleadings are under seal in a courthouse (pursuant to stipulation from the parties) does not shield them from discovery, as a presumptive right of public access attaches to these documents. Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 998 F.2d 157 (3d Cir. 1993). Accordingly, BCNEPA cannot legitimately refuse – on the basis that the documents are under seal – to produce these documents from its own files.

12

cannot be framed to eliminate the possibility of duplication and at the same time call for all relevant documents from BCNEPA. In a similar circumstance, this Court has rejected such an argument in a motion to quash a subpoena, stating:

> While there may be some duplication between defendants' and the third parties' production of documents, there are sure to be many other documents in the possession of the third parties not in the possession of the defendants. Practically, there is no way for the plaintiff to frame its request to eliminate the possibility of duplication and at the same time ensure that it receives all of the documents its seeks from third parties.

New Park Entertainment LLC v. Electric Factory Concerts, Inc., No. 98-775, 2000 U.S. Dist. LEXIS 531, at *15-16 (E.D. Pa. Jan. 13, 2000).

## CONCLUSION

For the foregoing reasons, the Hospital opposes Blue Cross of Northeastern Pennsylvania's Motion for a Protective Order and, because BNEPA's motion is frivolous, seeks its costs in opposing the motion.

Respectfully Submitted,

_____
Lewis R. Olshin
Wayne A. Mack
J. Manly Parks
Keith J. Verrier
Duane Morris LLP
One Liberty Place
Philadelphia, Pennsylvania 19103-7396

Richard A. Feinstein
Daniel A. Kotchen
Kevin R. Anthony
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

Attorneys for
THE CHESTER COUNTY HOSPITAL

**CERTIFICATE OF SERVICE**

I, Keith J. Verrier, Esquire, hereby certify that a true and correct copy of the foregoing Plaintiff The Chester County Hospital's Opposition to Blue Cross of Northeastern Pennsylvania's Motion for a Protective Order, has been served, on February 27, 2003, upon the following counsel of record as follows:

*Via Hand Delivery:*

Melanie Miller, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103
*Counsel for Blue Cross of Northeasters Pennsylvania*

Paul S. Diamond, Esquire
Thomas A. Leonard, Esquire
Obermayer, Rebmann, Maxwell & Hippel, LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103
*Counsel for Defendants*

*Via Federal Express:*

John DeQ. Briggs, III, Esquire
Howrey, Arnold, Simon & White, LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004-2402
*Counsel for Defendants*

_____
Keith J. Verrier