IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE CHESTER COUNTY HOSPITAL | : | CIVIL ACTION |
| | : | NO. 02-2746 |
| v. | : | |
| | : | |
| INDEPENDENCE BLUE CROSS, | : | |
| QCC INSURANCE COMPANY, | : | |
| KEYSTONE HEALTH PLAN EAST, and | : | |
| KEYSTONE MERCY HEALTH PLAN | : | |

## PLAINTIFF THE CHESTER COUNTY HOSPITAL'S MOTION TO MODIFY THE PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c)(7) and Local Rule of Civil Procedure 26.1, Plaintiff, The Chester County Hospital, by and through its undersigned counsel, hereby moves to modify the Protective Order. In support of this Motion, Plaintiff relies upon the attached Memorandum of Law and the exhibits attached thereto.

Respectfully Submitted,

_____
Lewis R. Olshin
Wayne A. Mack
J. Manly Parks
Keith J. Verrier
Duane Morris LLP
One Liberty Place
Philadelphia, Pennsylvania 19103-7396

Richard A. Feinstein
Daniel A. Kotchen
Kevin R. Anthony
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

Attorneys for
THE CHESTER COUNTY HOSPITAL

PH2\732404.24

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE CHESTER COUNTY HOSPITAL | : | CIVIL ACTION |
| | : | NO. 02-2746 |
| v. | : | |
| | : | |
| INDEPENDENCE BLUE CROSS, | : | |
| QCC INSURANCE COMPANY, | : | |
| KEYSTONE HEALTH PLAN EAST, and | : | |
| KEYSTONE MERCY HEALTH PLAN | : | |

### PLAINTIFF THE CHESTER COUNTY HOSPITAL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO MODIFY THE PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c)(7) and Local Rule of Civil Procedure 26.1, Plaintiff, The Chester County Hospital ("The Hospital"), by and through its undersigned counsel, hereby moves to modify the Court's January 24, 2003, Protective Order (the "Order").

### Introduction

The Hospital files this Motion as a result of the objections of four insurers that operate in the five-county Philadelphia area, Aetna, Cigna, Coventry, and Multiplan (the "insurers"), to document subpoenas issued by the Hospital. These insurers have refused to produce two categories of documents – strategic plans and hospital contracts that contain reimbursement rates – unless certain changes to the Order are made.

The Order defines the category "highly confidential" as information or the contents of any document which satisfies the definition of "confidential information," and "(a) which the Disclosing Entity contends is either proprietary or a trade secret, or (b) which reveals health care provider reimbursement rates or the negotiation of such reimbursement rates with health care providers." See Order at ¶ 7 attached as Ex. A.

The Hospital seeks a modification to the Order limiting disclosure of category (a) material designated "highly confidential" by the insurers to Defendant Independence Blue Cross ("IBC") in-house counsel who are *not* involved in making competitive business decisions. Second, the Hospital seeks a modification to the Order restricting disclosure of category (b) material designated by the insurers as "highly confidential," the most competitively sensitive information – hospital contracts containing reimbursement rates, to outside counsel. The Hospital also seeks a number of other less fundamental but important changes to the Order.

## Background

On May 8, 2002, the Hospital filed this lawsuit against IBC, alleging, among other things, that IBC violated the antitrust laws by acquiring and abusing market power in the five-county Philadelphia area. During the course of discovery, the Hospital issued subpoenas to Aetna, Cigna, Coventry, and Multiplan, insurers operating in the Philadelphia area, seeking their business plans, hospital contracts, and employer contracts. *See* Subpoenas attached as Ex. B. Each of these insurers objected to the Hospital's requests on relevance/burden grounds and confidentiality grounds.

The Hospital negotiated the scope of its subpoenas with the insurers and resolved the relevance/burden objections. The insurers' confidentiality objections, however, have not been resolved. There are two barriers to their production. First, the insurers seek to restrict category (a) material designated "highly confidential" to IBC in-house counsel not involved in making competitive business decisions. Second, they seek to restrict access to category (b) information designated "highly confidential," the most competitively sensitive information, to outside counsel only. The insurers also a seek a number of other less fundamental but important changes to the Order. IBC has been unwilling to agree to modify the Order to accommodate the insurers' confidentiality concerns.

**Discussion**

1.  **The Order Should Be Modified to Restrict Disclosure of Category (a) Material Designated "Highly Confidential" by the Insurers to IBC In-House Counsel *Not* Involved in Making Competitive Business Decisions.**

The same balancing test – risk of injury without the modification versus the need for the information – that is used in determining whether to grant protective orders should be applied by courts considering modifications to them. See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 790 (3rd 1994). The party seeking the modification must demonstrate that "good cause," i.e., a clearly defined and serious injury, exists for the change. Id. at 786.

"Prohibiting disclosure of confidential information to in-house counsel may be appropriate when in-house counsel is involved in 'competitive decision making.'" See U.S. v. Dentsply Int'l, Inc., 187 F.R.D. 152, 159-60 (D. Del. 1999) (citing U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468-69 (Fed. Cir. 1984). "Competitive decision making" means participating or advising in any or all of a client's decisions made in light of information about a competitor. Dentsply, 187 F.R.D. at 159-60.

The question is whether in-house counsel would have difficulty compartmentalizing knowledge gained from confidential information when participating in competitive business decisions. See Motorola Inc. v. Interdigital Tech. Corp., 1994 U.S. Dist. Lexis 20714, *10-11 (D. Del. 1994) (citing Carpenter Tech. Corp. v. Armco., Inc., 132 F.R.D. 24, 27-28 (E.D. Pa. 1990). If there is a risk that in-house counsel could inadvertently disclose confidential information, prohibiting their access to it is appropriate. See Dentsply, 187 F.R.D. at 159-62; Motorola, 1994 U.S. Dist. Lexis at *10-13; Carpenter, 132 F.R.D. at 27-28.

In Dentsply, the Court granted a third-party's motion for a protective order prohibiting disclosure of confidential information to the defendant's general counsel because his affidavit alluded to his involvement in making competitive business decisions. 187 F.R.D. at 159-62. In

3

Motorola, the Court amended the protective order to include a "Chinese Wall" separating the defendant's in-house counsel involved in the litigation from other in-house counsel to avoid the inadvertent disclosure of confidential information during the defendant's prosecution of patents in the subject area of the plaintiff's patents. 1994 U.S. Dist. Lexis at *10-13.

In Carpenter, the Court granted the defendant's motion for a protective order in part and denied it in part based on the wording of affidavits of the plaintiff's in-house counsel. 132 F.R.D. at 27-28. The Court denied the protective order against one in-house lawyer, Peltz, because his affidavit stated he had "absolutely no involvement" in business decisions. Id. The Court granted the protective order against another in-house lawyer, Welty, because his affidavit stated he had "no direct responsibility or authority over competitive decisions." Id. The Court concluded that Welty's affidavit created the risk of inadvertent disclosure of confidential information because if Welty was not involved in making competitive business decisions, his affidavit would have used the same language as Peltz's. Id.

IBC admits that at least three of its in-house attorneys, Paul Tufano, General Counsel, Ellie Thompson, Deputy General Counsel, and Mark Dianno, Senior Counsel, are involved in making competitive business decisions. In a letter dated April 25, 2003, Keith Verrier, outside counsel for the Hospital, confirmed that "Mr. Tufano is involved in all aspects of IBC's business." (*See* Letter Verrier to Diamond dated April 25, 2003, attached as Ex. C). In a letter dated April 29, 2003, Paul Diamond, outside counsel for IBC, stated:

> "1. Ms. Thompson is Deputy General Counsel in charge of litigation;
>
> 2. Although Ms. Thompson and Mr. Dianno are not involved in negotiating health care reimbursement rates, they are involved in counseling their client respecting competitive business decision-making, as they understand those terms."

(*See* Letter from Diamond to Verrier dated April 29, 2003, attached as Ex. D).

4

As a result of Mr. Tufano's, Ms. Thompson's, and Mr. Dianno's indisputable involvement in competitive business decisions, there is a clear risk that the insurers' highly confidential information within category (a) could be inadvertently disclosed. Modifications to the Order prohibiting their access to this highly confidential information are therefore appropriate. Specifically, the Order should be changed to prohibit disclosure of category (a) material designated by the insurers as "highly confidential" to Mr. Tufano, Ms. Thompson, Mr. Dianno, and any other IBC in-house counsel with competitive business decision-making capacity.

> 2. **The Order Should Be Modified to Include a Designation Restricting Disclosure of Category (b) Information Designated "Highly Confidential" by the Insurers, Which Is the Most Competitively Sensitive Information, to Outside Counsel Only.**

The Hospital is also sensitive to the insurers' concerns that access to the most competitively sensitive information – hospital contracts containing reimbursement rates – be restricted to outside counsel only. In <u>Ball Memorial Hospital, Inc., et al. v. Mutual Hospital Ins., Inc.</u>, the Seventh Circuit upheld a decision that similar price data – prices bid by hospitals to obtain contracts with Blue Cross Blue Shield of Indiana – were "unquestionably sensitive trade secrets," access to which was appropriately restricted to trial counsel only. 784 F.2d 1325, 1345-46 (7th Cir. 1986).

The Seventh Circuit's decision rested on the fact that the plaintiffs, 80 hospitals, were competitors who could potentially use the price information in future negotiations. <u>Id</u>.; <u>see also</u> <u>C.A. Muer Corp. v. Big River Fish Co.</u>, 1998 U.S. Dist. LEXIS 12639 at * 10-12 (E.D. Pa. 1998) (Angell, M.J.) (requiring attorneys' eyes only condition for release of confidential commercial documents in litigation between two competitors). To meet the insurers' similar concerns concerning the disclosure of their price information to IBC, the Hospital proposes an additional

5

designation to the Order restricting disclosure of category (b) information designated "highly confidential" by the insurers, which is the insurers' most competitively sensitive information, to outside counsel only.

### 3. The Order Should Be Modified to Incorporate Other Less Fundamental But Important Changes Proposed by the Insurers.

Finally, the insurers propose a number of other less fundamental changes to the Order. The Hospital agrees that these changes are important and therefore moves to modify the Order accordingly. These proposed changes include the following:

    a.    With regard to the insurers, their strategic business plans and hospital contracts shall be considered highly confidential under the Order;

    b.    Material designated as highly confidential by the insurers may not be disclosed to IBC or the Hospital, orally or otherwise, irrespective of settlement negotiations;

    c.    The protections of Paragraph 10(a) shall apply with equal force to Cigna, Aetna, Multiplan, and Coventry as they do to IBC;

    d.    Paragraph 11 of the current Order, addressing the filing of confidential and highly confidential information under seal, shall apply to any summary judgment motion;

    e.    The insurers shall have the same notice and opportunity to object to the disclosure of confidential and highly confidential information to (1) deponents, and (2) pre-trial hearing and trial witnesses that they currently have with regard to (3) non-testifying experts;

    f.    Counsel for each party shall maintain a list of all persons to whom any third party confidential or highly confidential information is disclosed and the agreements signed by such persons, and shall provide counsel for a Disclosing Entity upon request with a copy of the list and signed agreements;

    g.    In the event that a party objects to an insurers' designation of confidential or highly confidential information or documents, the procedural burden of moving the Court for relief shall be placed on the objecting party;

    h.    Any outside counsel to whom an insurers' highly confidential information is to be disclosed shall be provided with a copy of the Order (as modified), and be advised, and agree, that they are bound by the Order;

6

    i.      No more than three (3) copies shall be made of documents produced by Aetna without Aetna's express consent;

    j.      At the conclusion of this litigation, the parties shall return to Aetna all documents produced by Aetna, and confirm in writing that as to those documents the Order has been abided; and

    k.      Any notices that are to be provided to Aetna under the Order shall be sent via facsimile and 1st Class mail to: James C. Crumlish III, Elliott Reihner Siedzikowski & Egan P.C., 925 Harvest Drive, Suite 300, Blue Bell, PA 19422; Facsimile Number: (215) 977-1099.

## Conclusion

For all of the foregoing reasons, The Chester County Hospital respectfully moves the Court for an Order granting its Motion to Modify the Protective Order and to modify the Order according to the attached Plaintiff's Proposed Modifications to the Protective Order.

Respectfully Submitted,

_____
Lewis R. Olshin
Wayne A. Mack
J. Manly Parks
Keith J. Verrier
Duane Morris LLP
One Liberty Place
Philadelphia, Pennsylvania 19103-7396

Richard A. Feinstein
Daniel A. Kotchen
Kevin R. Anthony
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

Attorneys for
THE CHESTER COUNTY HOSPITAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE CHESTER COUNTY HOSPITAL | : | CIVIL ACTION |
| | : | NO. 02-2746 |
| v. | : | |
| | : | |
| INDEPENDENCE BLUE CROSS, | : | |
| QCC INSURANCE COMPANY, | : | |
| KEYSTONE HEALTH PLAN EAST, and | : | |
| KEYSTONE MERCY HEALTH PLAN | : | |

### PLAINTIFF'S PROPOSED MODIFICATIONS TO THE PROTECTIVE ORDER

AND NOW, this _____ day of _____ 2003, upon consideration of Plaintiff The Chester County Hospital's Motion to Modify the Protective Order, it is hereby ORDERED that the Motion to Modify is GRANTED.  It is further ORDERED that:

1. Paragraph 10 of the Protective Order shall be modified as follows:

   j. With respect to that "highly confidential" information which third-party insurers designate as proprietary or a trade secret:

      (i) Paul Tufano, Ellie Thompson, and Mark Dianno, in-house counsel for Defendant, shall not have access to this class of material designated "highly confidential."

      (ii) Defendant shall attach to the Order a list of in-house counsel not involved in "competitive decision making" and only those attorneys shall have access to this class of material designated "highly confidential."

      (iii) for the purpose of this paragraph (j), "Competitive decision making" shall mean participating or advising in any or all of a client's decisions made in light of information about a competitor.

   k. With respect to that "highly confidential" information which third-party insurers designate as revealing health care provider reimbursement rates or the negotiation of such reimbursement rates with health care providers.

      (i) access to this class of information designated "highly confidential shall be restricted to outside counsel for the parties and according to the terms of paragraphs 10e-10i of the Order.

2.     The Protective Order shall be modified to incorporate the following changes:

    a.     With regard to the insurers, their strategic business plans and hospital contracts shall be considered highly confidential under the Order;

    b.     Material designated as highly confidential by the insurers may not be disclosed to IBC or the Hospital, orally or otherwise, irrespective of settlement negotiations;

    c.     The protections of Paragraph 10(a) shall apply with equal force to Cigna, Aetna, Multiplan, and Coventry as they do to IBC;

    d.     Paragraph 11 of the current Order, addressing the filing of confidential and highly confidential information under seal, shall apply to any summary judgment motion;

    e.     The insurers shall have the same notice and opportunity to object to the disclosure of confidential and highly confidential information to (1) deponents, and (2) pre-trial hearing and trial witnesses that they currently have with regard to (3) non-testifying experts;

    f.     Counsel for each party shall maintain a list of all persons to whom any third party confidential or highly confidential information is disclosed and the agreements signed by such persons, and shall provide counsel for a Disclosing Entity upon request with a copy of the list and signed agreements;

    g.     In the event that a party objects to an insurers' designation of confidential or highly confidential information or documents, the procedural burden of moving the Court for relief shall be placed on the objecting party;

    h.     Any outside counsel to whom an insurers' highly confidential information is to be disclosed shall be provided with a copy of the Order (as modified), and be advised, and agree, that they are bound by the Order;

    i.     No more than three (3) copies shall be made of documents produced by Aetna without Aetna's express consent;

    j.     At the conclusion of this litigation, the parties shall return to Aetna all documents produced by Aetna, and confirm in writing that as to those documents the Order has been abided; and

    k.     Any notices that are to be provided to Aetna under the Order shall be sent via facsimile and 1st Class mail to: James C. Crumlish III, Elliott Reihner Siedzikowski & Egan P.C., 925 Harvest Drive, Suite 300, Blue Bell, PA 19422; Facsimile Number: (215) 977-1099.

2

3.     Except as set forth in this Order, the terms of the Protective Order dated January 24, 2003, shall remain in full force & effect.

        BY THE COURT:

        _____
        JOHN R. PADOVA,         J.