## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CHESTER COUNTY HOSPITAL | : |
| v. | : |
| INDEPENDENCE BLUE CROSS, QCC INSURANCE COMPANY KEYSTONE HEALTHPLAN EAST, and KEYSTONE MERCY HEALTH PLAN | : NO. 02-CV-2746 |

### ORDER

NOW, THIS _____ day of July, 2003, in consideration of Non-Party Aetna Inc.'s ("Aetna") Appeal of the July 7, 2003 and July 16, 2003 Orders Modifying the Protective Order and any responses thereto, IT IS HEREBY ORDERED THAT:

1.  Aetna's Motion to Intervene is GRANTED.

2.  Paragraph 10 of the January 24, 2003 Protective Order will be modified so that no employees of Chester County Hospital ("CCH") or Independence Blue Cross ("IBC") shall be provided access to any highly confidential information of the Insurers.

3.  The parties shall provide to the Insurers any documents containing Insurer's confidential and proprietary information produced in this litigation so that the Insurers may, within five (5) days of receipt of the documents, designate the same as "Highly Confidential – Non-Party," which documents shall only be provided to outside counsel for the parties, the parties' experts and any deponents to whom the Insurers do not object or to whom the Court authorizes disclosure.

4.  Documents marked "Highly Confidential – Non-Party" shall only be utilized in connection with a deposition after the Insurers have had notice of a party's

intent to utilize documents designated "Highly Confidential – Non-party" five (5) days in advance of any documents being provided to any such deponent.

5.    Aetna's counsel, Elliott Reihner Siedzikowski and Egan P.C. shall, subject to the terms of the Protective Order, have access to every deposition taken in the instant litigation so Aetna's counsel has reasonable means to determine the appropriateness of the parties' utilization and disclosure of Aetna's confidential and proprietary information.

Padova, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| THE CHESTER COUNTY HOSPITAL | : | |
| vi. | : | |
| | : | NO. 02-CV-2746 |
| INDEPENDENCE BLUE CROSS, QCC INSURANCE COMPANY KEYSTONE HEALTHPLAN EAST, and KEYSTONE MERCY HEALTH PLAN | : | |

**NON-PARTY AETNA INC'S APPEAL OF THE COURT'S JULY 7, 2003 AND
JULY 16, 2003 ORDERS MODIFYING THE
JANUARY 24, 2003 PROTECTIVE ORDER**

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.1(IV)(a), non-party Aetna, Inc. ("Aetna") hereby appeals the July 7, 2003 and July 16, 2003 Orders entered by Magistrate Judge Smith that modify the January 24, 2003 Protective Order previously entered by the Court.   Specifically, Aetna appeals the provisions of the July 7, 2003 and July 16, 2003 Orders that provide access to Aetna's admittedly extremely confidential and proprietary information to the controller of Aetna's largest competitor in Southeastern Pennsylvania, Independence Blue Cross ("IBC").   Additionally, Aetna hereby seeks protection of its confidential and proprietary information produced by other non-parties as well as limits on the use of its confidential and proprietary information in connection with depositions.

On May 30, 2003, pursuant to Federal Rules of Civil Procedure 24, 26 and 45(c)(3)(B)(i), Aetna moved this Court to intervene in this action for the limited purpose of seeking to modify the January 24, 2003 Protective Order so as to preclude the disclosure of certain information requested in a subpoena IBC served upon Chester

County Hospital ("CCH"), including contracts, rate schedules, payment rates or other financial terms of contracts between Plaintiff and non-party Aetna (or any subsidiary, affiliate, or acquired corporation of Aetna, including but not limited to Prudential Healthcare). The relief requested by Aetna is necessary and appropriate because the document requests seek the disclosure of admittedly highly confidential, proprietary and trade secret information to the controller for Aetna's direct competitor, IBC.

In light of IBC's representations that the non-party Insurers' trade secrets will be utilized at "most if not all" of the depositions in this litigation, Aetna further seeks prior notice if a party intends to disclose Aetna's trade secrets at a deposition so that Aetna may, if necessary, object to such disclosure. Because there are two categories of "highly confidential" documents, one that may be accessed by IBC's in-house counsel and another containing Aetna's confidential and proprietary information, to which in-house counsel is not to be provided access, Aetna requests that the Court establish a separate designation, such as "Highly Confidential – Non-Party" so as to avoid any potential confusion and potential inappropriate disclosure of such documents. Finally, Aetna seeks the right to review the documents containing its proprietary information so that it may, if appropriate, designate such documents "Highly Confidential – Non-Party." Aetna also seeks all other relief the Court deems appropriate.

In further support of this Appeal, Aetna incorporates by reference the accompanying Memorandum of Law.

OF COUNSEL:

Respectfully submitted,

ELLIOTT REIHNER SIEDZIKOWSKI
  & SIEDZIKOWSKI & EGAN, P.C.

JOHN M. ELLIOTT
JAMES C. CRUMLISH III
JOHN P. ELLIOTT
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
P.O. Box 3010
Blue Bell, PA 19422
(215) 977-1000
Counsel for Non-party
Aetna Inc.

DATED: July 21, 2003

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

vii.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY
KEYSTONE HEALTHPLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

: : : : : : : : : : : :

NO. 02-CV-2746

## NON-PARTY AETNA INC'S MEMORANDUM IN SUPPORT OF APPEAL OF THE COURT'S JULY 7, 2003 AND JULY 16, 2003 ORDERS MODIFYING THE JANUARY 24, 2003 PROTECTIVE ORDER[1]

Non-party Aetna Inc. ("Aetna"), by and through its undersigned counsel, hereby submits this Memorandum of Law in support of its Appeal of the Court's July 7, 2003 and July 16, 2003 Orders (collectively, the "Modification Orders") modifying the January 24, 2003 Protective Order.[2] Aetna seeks, pursuant to Federal Rules of Civil Procedure 24, 26 and 45(c)(3)(B)(i), to protect the disclosure of its admittedly confidential and proprietary, trade secret information, including but not limited to its contracts and rate and fee schedules, from an important employee of its primary competitor in the Southeastern Pennsylvania market, Independence Blue Cross ("IBC").[3] Aetna, in addition to incurring substantial expenses in this litigation to which it is not a party, faces substantial and irreparable harm if this extremely sensitive information, which IBC's

---

[1] See Exhibit "A" (January 24, 2003 Protective Order); Exhibit "B" (July 7, 2003 Order); Exhibit "C" (July 16, 2003 Order).

[2] Aetna hereby incorporates by reference its May 30, 2003 Memorandum in Support of its Motion to Intervene and for a Protective Order as if fully set forth herein.

[3] As all Defendants in the above captioned litigation are related to IBC, Aetna refers to all of the Defendants as IBC, consistent with the January 24, 2003 Protective Order entered by the Court. See January 24, 2003 Protective Order at ¶ 10(b).

counsel admits is proprietary, trade secret and analogous to the health insurance industry's "formula for Coca-Cola," is provided to IBC's controller. The protections afforded by the January 24, 2003 Protective Order and the Modification Orders are not sufficient, *inter alia*, in that they do not protect Aetna's confidential and proprietary information from disclosure to the IBC's controller.[4]

IBC has not articulated a legitimate reason why a key financial employees needs access to Aetna's confidential and proprietary information. IBC's only proffered justification for Mr. Nolan's access to such information, i.e., that it needs Mr. Nolan to report to IBC's Board of Directors, is belied by the fact that counsel of record for IBC is a member of that Board, and only serves to demonstrate that IBC has no substantial need, other than perhaps seeking a competitive advantage, for seeking access to Aetna's highly confidential information. Nor has IBC articulated how their claims or defenses will be prejudiced if their controller is not allowed access to Aetna's confidential and proprietary trade secret information.

Additionally, given IBC's counsel's representations at the July 7, 2003 argument that the non-party insurers', including Aetna's, confidential and proprietary information "is going to be used in most if not all" of the three dozen depositions scheduled before the discovery deadline, Aetna seeks further protections to ensure that no party improperly utilizes depositions as a vehicle to circumvent the protections of the Protective Order and improperly disclose Aetna's trade secrets. In light of the admittedly confidential and

---

[4] The Court's July 7, 2003 Order granted access to Aetna's highly confidential information to CCH's controller, Paul Vanore, in addition to IBC's controller, Joseph Nolan. However, in a July 16, 2003 letter to the Court, CCH represented that "counsel for Chester County Hospital has determined that it will not provide access to any highly confidential documents designated by insurers other than IBC to Paul Vanore." See Exhibit "D" (7/16/03 letter from Lewis R. Olshin Esq. to The Honorable Charles B. Smith). Accordingly, on the issue of access to Aetna's highly confidential information by the parties' employees, this Appeal focuses on IBC's controller's access to Aetna's highly confidential information.

2

proprietary, trade secret nature of this information, Aetna will suffer extreme economic and competitive harm if such information is disclosed to anyone other than the parties' outside counsel and experts subject to the restrictions already imposed on such persons by the Protective Order and Modifying Orders.

## I.    BACKGROUND

On November 8, 2003, Plaintiff served a subpoena upon Aetna seeking, *inter alia*, Aetna's contracts with hospitals, which contain highly sensitive contract terms, rate schedules and documents detailing negotiations between CCH and Aetna. Such information is uniformly considered in Aetna's industry to be confidential and proprietary as are the reimbursement rates negotiated between Aetna and those hospitals. On November 25, 2002, Aetna, through the undersigned counsel, objected to the disclosure of such information pursuant to the Federal Rules of Civil Procedure based upon, *inter alia*, the confidential and proprietary nature of the information.[5] Aetna carbon copied Defendant's counsel on its November 25, 2002 objection letter. Although both parties had notice of Aetna's substantive objections, including its concerns relating to the confidential and proprietary nature of the information the parties were seeking in discovery, the parties did not provide Aetna with any notice that they intended to seek a Protective Order from the Court. The failure to notify Aetna of their intent to move for a protective order deprived it of the opportunity to advise the Court of *Aetna's* legitimate and appropriate confidentiality objections to the subpoena and the extent to which Aetna would suffer irreparable harm as a result of the disclosure of its highly sensitive

---

[5] Aetna also objected to Plaintiff's subpoena based upon, among other things, deficiencies in the subpoena and the over breadth and burdensome nature of the subpoena. Although the issues relating to CCH's subpoena upon Aetna are not directly relevant to the issue of the Aetna's confidential and proprietary documents CCH intends to produce to IBC, Aetna reserves its right to pursue those objections if continuing negotiations with Plaintiff's counsel regarding those issues cannot be satisfactorily resolved.

information.    On January 24, 2003, without Aetna present and without notice to the Court of Aetna's concerns, the Court entered a Protective Order in the above captioned litigation.

As noted in the affidavit of Robert Franzoi, attached hereto as Exhibit "E," IBC operates a managed care company in the Commonwealth of Pennsylvania that directly competes with Aetna.    In fact, as Plaintiff alleges in the Amended Complaint, and Defendants cannot in good faith deny, IBC and Aetna are direct competitors.  See e.g. HealthLeaders Research, "Pennsylvania Health Plan Data – 2 – HMO Financials (January 1 – September 20, 2002) copyright 2003 HealthLeaders, Inc.   As Aetna's direct competitor, IBC also engages in contracting with providers and hospitals.   If Aetna's independently negotiated rates with these hospitals are disclosed to IBC, "it could use that information to negotiate more favorable rates, and undermine Aetna's negotiating strategies."  See Exhibit "E" at ¶ 6.    Accordingly, Aetna always provides for the confidentiality of its contract terms and rates in its contracts and prohibits the dissemination of any such material to any third party except for a third-party administrator designated by Aetna. Id. at ¶ 8.

After the Protective Order was entered, Aetna continued to negotiate in good faith with Plaintiff's counsel at the Boies firm in relation to the subpoena CCH served on Aetna.   In addition to discussions relating to the scope of CCH's subpoena, Aetna also drafted a Confidentiality Stipulation that addressed the issues relevant to this Motion. According to Plaintiff, IBC would not agree to the protections sought by Aetna.

On Friday, May 23, 2003, Aetna received, via Federal Express, a letter dated May 22, 2003 from Lewis Olshin of Duane Morris and attached documents that CCH

represented that it intended to produce. Mr. Olshin's letter stated "[w]e understand that you objected to the production of these documents pursuant to the Protective Order. IBC has raised the issue with the Court and we have been advised to inform you that in the event that you fail to file a motion with the United States District Court for the Eastern District of Pennsylvania by May 30, 2003, we will be required to produce the attached documents to IBC." See Exhibit "F" hereto.[6]   Although Mr. Oshlin represented that "the documents which we intend to produce have all been marked 'highly confidential,'" over one-hundred and fifty of those documents, containing, *inter alia*, Aetna's contracts and rates and bates stamped CCH 0029906-CCH 0029962 and CCH 0030212-CCH 0030329 contained no confidentiality designation whatsoever, further highlighting the dangers Aetna faces if a revised Protective Order is not entered.

On May 30, 2003, Aetna filed a Motion to Intervene and to Modify the Protective Order ("Aetna's May 30, 2003 Motion"). On June 3, 2003, this Court referred Aetna's May 30, 2003 Motion to Magistrate Judge Smith. CCH responded to Aetna's Motion on June 6, 2003. On June 12, 2003, Magistrate Judge Smith entered an Order setting a June 16, 2003 as the date for responding to, *inter alia*, Aetna's May 30, 2003 Motion. On June 18, 2003, Magistrate Judge extended the date for responding to the pending non-party insurer's motions until June 23, 2003.

On June 19, 2003, IBC's counsel, via a letter to Magistrate Judge Smith, stated "[w]ith the Court's permission, defendants propose to file our answer to all outstanding

---

[6] Any production of documents by CCH over Aetna's objections would be in direct violation the express contractual obligations it assumed in its contracts with Aetna. Apparently rather than honoring those contractual obligations, CCH agreed to produce the documents attached to Mr. Olshin's May 22, 2003 letter to Aetna thus placing the onus and expense of pursuing this Motion to Intervene and for a Protective Order on non-party Aetna. This course of conduct illustrates the inherent conflict of interest between CCH's contractual obligations and its economic interests as a party to this litigation.

Motions promptly after the conference if the conference is not successful." See Exhibit "G" (6/19/03 letter from Paul S. Diamond, Esq. to Magistrate Judge Smith). On that same date, counsel for Aetna responded to IBC's "proposal" and informed the Court that Aetna believed the hearing would be more productive if the parties fully briefed the issues raised by the non-party insurers. See Exhibit "H" (6/19/03 letter from James C. Crumlish III to Magistrate Judge Smith). Despite Aetna's objection and no specific ratification of IBC's proposal by Magistrate Judge, IBC did not file a response.[7]

IBC's unilateral decision not to respond to Aetna's May 30, 2003 Motion placed Aetna in the unenviable position of attempting to protect its trade secrets from its largest competitor in the Southeastern Pennsylvania region without the benefit of knowing IBC's positions relating to the confidentiality issues or what legal authority IBC may assert in support of such a position. Had IBC responded to Aetna's and the other non-party insured's motions, Aetna would have known that IBC had withdrawn its insistence that its in-house counsel have access to Aetna's confidential and proprietary information and instead sought to designate Joseph Nolan as a corporate representative to be provided access to Aetna's trade secrets. Moreover, perhaps IBC would have articulated why any internal employee, with allegedly no responsibilities relating to contracting, rate negotiation or other "decision making" responsibilities, needs access to Aetna's most sensitive documents.

The documents that CCH intends to produce pursuant to its May 22, 2003 letter, and which both CCH and IBC are seeking from other sources as well, "are among

---

[7] Accordingly, while non-party Aetna was afforded only one week in which to file a Motion to Intervene and for a Protective Order, Defendant IBC failed to respond to that Motion even though it had twenty-three days in which to respond. Magistrate Judge never entered the proposed Order attached to IBC's June 19, 2003 letter.

Aetna's most sensitive, confidential and proprietary information." See Exhibit "E" hereto at ¶ 4-5. These documents include: Aetna's Hospital Service Agreement with CCH, numerous Ancillary Service Agreements (e.g. relating to Diagnostic Radiology and Imaging Services), correspondence between Aetna and CCH relating to the negotiation and status of such contracts, CCH's internal analysis of the economic effects of its contracts with Aetna (including specific analyses of the rates contained in those contracts), CCH's internal analyses of the potential effect of Aetna contract proposals (including specific analyses of the rates proposed by Aetna), spreadsheets detailing rates paid for treating Aetna patients (with the patient names redacted), Addendum's to existing contracts between CCH and Aetna with revised rate schedules, and a July 15, 1999 analysis (with attached supporting documentation) listing IBC's rates, Aetna's rates and a column captioned "% of Difference" detailing the difference between IBC's rates and Aetna's rates.[8]

On July 7, 2003, Magistrate Judge Smith heard argument on the pending motions. At that July 7, 2003 hearing, counsel for IBC admitted that Aetna's rates were confidential, proprietary and trade secrets. See Exhibit "I" (Transcript of 7/7/03 hearing) at 8 ("I absolutely agree that the information they are seeking to protect, it is proprietary, it is trade secret."); Id. at 9 (". . . our rates are proprietary. They are absolutely right. This is our formula for Coca Cola."). Id. at 9-10. Counsel for IBC also asserted that "[w]e have about three dozen depositions that are going to be taking place within the extended discovery for 90 days. I expect that this material is going to be used in most if not all of these depositions." Id. at 8.

---

[8] In recognition that the documents Bates Numbered CCH 0029260 through CCH 0029265 contain IBC's confidential and proprietary information (as well as Aetna's), the undersigned counsel retained exclusive control over these documents and subsequently returned those documents to Plaintiff's counsel.

When pressed to articulate why IBC's controller needed access to Aetna's admitted trade secrets, IBC's only stated justification for Mr. Nolan's access to Aetna's trade secrets was that it chose Mr. Nolan because he can report to IBC's Board of Directors about the status of the litigation. Exhibit "I" at 12-13. Specifically, IBC's counsel stated, "[w]e have chosen him very deliberately as senior management and the hospital board who can advise them as to the progress of the litigation so that the client can make a reasonably informed decision . . . . he can advise them as to whether or not he thinks the litigation is of the nature that the [sic] the case should settle, should seek summary judgment, if and when we proceed to trial whether they have a chance to win at trial or not . . . ." Id. Neither the proffer offered by IBC's Senior Counsel, Mark Dianno, nor the affidavit submitted by Mr. Nolan, as required by the Court, indicate that Mr. Nolan has any legal or other special training that would allow him to provide guidance to IBC's board. Id. at 31-32; Exhibit "J" (7/10/03 Affidavit of Joseph Nolan). Moreover, IBC's counsel of record in this case, Thomas A. Leonard, Esquire is a member of IBC's Board. See Exhibit "K" (IBC's 2002 Annual Report) at 24.

On July 7, 2003, Magistrate Judge issued an Order Modifying the Protective Order. See Exhibit "B" (7/7/03 Order). This Order adopted many of CCH's proposals in Paragraph 2 of its Motion to Modify the Protective Order, proposals with which the non-party insurers substantially agreed, and also allowed IBC's and CCH's Controllers, Joseph Nolan and Paul Vanore to have access to Aetna's trade secrets. Via a July 16, 2003 Order, in response to a July 11, 2003 letter request from the parties, Magistrate Judge Smith issued an Order clarifying his July 7, 2003 Order. See Exhibit "C" (7/16/03 Order) and Exhibit "L" (7/11/03 letter from Paul S. Diamond to Magistrate Judge Smith).

8

On July 16, 2003, CCH informed the Court that it would not provide the Insurer's "highly confidential" information to its controller, Paul Vanore. See Exhibit "D."

As more fully set forth below, Aetna respectfully requests that it be permitted to intervene and that a protective order be issued prohibiting disclosure of Aetna's confidential and proprietary information to the parties' controllers. Moreover, given IBC's stated intention to widely use Aetna's trade secrets in depositions, where many if not most of the deponents have no first hand knowledge of Aetna's rates or how they are calculated, Aetna also seeks additional provisions to the Protective Order, including access to all depositions taken in this litigation, that will ensure that the parties do not utilize depositions as a vehicle to make an end-around the protections afforded Aetna and the other non-party insurers in the Protective Order. Because many documents containing Aetna's trade secrets may be produced by parties other than Aetna, Aetna requests that the Court modify the procedures for designating material "highly confidential" so that Aetna may so designate such documents. Finally, because two categories of "highly confidential" documents now exist, i.e., one group of documents (those that do not contain the insurer's confidential and proprietary information) to which IBC's in-house counsel may have access, and a second category of documents that IBC's in-house counsel may not have access (the non-party insurer's confidential and proprietary information), Aetna further requests that the Court create a separate designation category, such as "Highly Confidential – Non-Party" so as to eliminate any confusion and to reduce the potential for inadvertent disclosure of Aetna's confidential and proprietary information.

## II.  LEGAL ARGUMENT

### A.  Aetna Is Entitled To Intervene In This Matter For The Limited Purpose Of Protecting Its Confidential And Proprietary Information From Disclosure.

Federal Rules of Civil Procedure 24(a)(2) and 24(b) entitle Aetna to intervene in this matter for the limited purpose of protecting its confidential and proprietary trade secret information from disclosure. Rule 24(a)(2) provides that a non-party has a *right* to intervene "when the [non-party] claims an interest relating to the property or transaction which is the subject matter of the action and the [non-party] is so situated that the disposition of the action may as a practical matter impair or impede the [non-party's] ability to protect that interest, unless the [non-party's] interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2). The threshold for establishing an interest is fairly low, because:

> [t]o bar intervention for collateral discovery issues merely because they do not concern the subject matter of the overall action would in many cases defeat the general purpose of intervention...Without the right to intervene in discovery proceedings, a third party with a claim of privilege in otherwise discoverable materials could suffer the obvious injustice of having his claim erased or impaired by the court's adjudication without even being heard.

United States v. United Tel. and Tel. Co., 642 F.2d 1285, 1292 (D.C.Cir.1980)(citations omitted). Courts thus interpret Rule 24(a)(2) as providing a non-party the right "to intervene for the limited purpose of protecting [its] interest in the confidentiality requested" by a party during discovery. Blum v. Schlegel, 150 F.R.D. 38, 39 (W.D.N.Y.1993)(non-party had right to intervene to protect from disclosure confidential information sought from party to litigation through discovery); see also H.L. Hayden of N.Y. Inc. v. Siemens Med. Sys., Inc. 797 F.2d 85 (2d Cir.1986)(non-party has right to

intervene pursuant to Rule 24(a)(2) to protect from disclosure its own confidential information or work product in which only the litigants possess an interest); American Telephone & Telegraph Co., 542 F.2d at 1291(non-party had right to intervene to protect from disclosure to party-competitor information that non-party claimed was its work product, where party competitor sought information during discovery from other party to litigation); Formulabs, Inc. v. Hartley Pen Co., 275 F.2d 52 (9th Cir.1960)(non-party had right to intervene in discovery stage of a case to prevent disclosure of its trade secret information which party to litigation possessed).

Under Rule 24(b), a court *may permit* non-party intervention when a non-party's "claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b). "The permissive intervention rule is to be construed liberally, with all doubts resolved in favor or permitting intervention." Koprowski v. Wistar Inst. Of Anatomy and Biology, 1993 WL 332061 at *2 (E.D.Pa. Aug. 19, 1993). When a non-party seeks to intervene only for the purposes of challenging discovery-related matters, and not in an effort to become a party to the litigation, courts especially "should relax the requirement of a common question of law or fact..." in favor of permitting limited intervention. United States v. Dentsply Int'l, Inc., 187 F.R.D. 152, 157 (D.Del.1999) (holding that non-party met "common question" requirement merely by challenging the validity of the Order of Confidentiality entered in the litigation) (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 778 (3d Cir.1994)); see also Videon Chevrolet Inc. v. General Motors Corp., 19995 WL 395925, No. 91-4202 at *1 (E.D. Pa. June 28, 1995)("The proper method for a non-party to seek modification of a protective order is through permissive intervention under Fed. R. Civ. P. 24(b)")(citing Pansy, supra.).

11

In the instant case, IBC admits that the information that Aetna seeks to protect is proprietary and trade secret information. See Exhibit "I" at 8-10. Moreover, the information that Aetna seeks to protect qualifies as a trade secret under applicable Pennsylvania and Third Circuit precedent. Courts have applied Rule 24 (b) to allow non-parties to intervene in order to safeguard confidential and proprietary information from disclosure in the course of litigation. See, e.g., Dentsply, 187 F.R.D. at 157-58 (allowing non-party seeking to protect its confidential and proprietary information from disclosure "to intervene for purposes of bringing to the Court's attention its view with respect to what should be contained in the protective order.") Accordingly, the Court should allow Aetna to intervene for the limited purpose of seeking modification to the Protective Order and otherwise seek to protect its confidential and proprietary, trade secret information.

**B.    AUSHC is Entitled to a Protective Order Prohibiting Disclosure of its Confidential and Proprietary Information.**

**i.    The Information Aetna Seeks to Protect is Admittedly Proprietary and Trade Secret and Also Qualifies as Such Under Applicable Pennsylvania and Third Circuit Law.**

At the July 7, 2003 Argument, IBC's counsel admitted to the confidential, proprietary and trade secret nature of the information IBC seeks to provide to its controller. Specifically, IBC stated that: "I absolutely agree that the information they are seeking to protect, it is proprietary, it is trade secret . . . . our rates are proprietary. They are absolutely right. This is our formula for Coca Cola." See Exhibit "I" at 8-10. Accordingly, the trade secret and confidential and proprietary nature of the information Aetna seeks to designate "highly confidential" is not disputed.

12

Even absent IBC's admissions, Aetna's contract, rates and documents detailing the negotiations of the same are trade secrets that warrant Court protection.[9]  Applicable Pennsylvania law and Third Circuit precedent mandates such a conclusion.   Recently, the Pennsylvania Superior Court concluded that a HMO's financial and other confidential and proprietary information are entitled to protection as trade secrets. Dibble v. Penn State Geisenger Clinic Inc. et al, 806 A.2d 866, 872 (Pa. Super 2002).   After applying the factors set forth in Tyson Metal Products, Inc v. McCann, 546 A.2d 119, 121 (Pa. Super. 1998) and SI Handling Systems, Inc. v. Heisley, 753 F.2d 1244, 1266 (3d Cir. 1985), the Dibble court concluded, consistent with the facts of the instant case,

> that the documents contain formulas and compilations of data and information which unmistakably reflect their intended secrecy and value to the HMO and that the information could create a competitive disadvantage for the HMO if disclosed to other managed care companies or the public.  Moreover, the HMO has clearly taken numerous measures to safeguard the information and has closely held the information to itself.  We conclude that the subject documents are confidential and must remain so.

Dibble, 806 A.2d at 872.

Disclosure of Aetna's trade secrets to its largest competitor in the Southeastern Pennsylvania region would place Aetna at a distinct competitive damage.  See Exhibit "E" (Affidavit of Robert J. Franzoi).  For example, the rate schedules, contracts and other financial information concerning Aetna contracts that CCH intends to produce are some of the most closely guarded confidential and proprietary business information that the company possesses. See Exhibit "E" at ¶ 5.  These rate schedules are the result of individually negotiated contracts with providers, and disclose what Aetna agrees to pay

---

[9] See Aetna's May 30, 2003 Memorandum in Support of Its Motion to Intervene and for a Protective Order at 11-15.

13

CCH for certain medical services rendered. Id. at ¶ 4. If such information is disclosed to competitors, such as IBC, or even potential competitors, the information could aid them in their efforts to compete with Aetna, negotiate rates that are more favorable and thereby undermine Aetna's negotiating strategies. Id. at ¶ 6. This is especially true where, as here, CCH intends to produce documents detailing CCH's negotiations with Aetna.

Accordingly, in light of IBC's admissions, and applicable Pennsylvania and Third Circuit law, the information Aetna seeks to protect as "highly confidential" is clearly confidential and proprietary and of the nature of a trade secret.

> ii. **Aetna Has Met Its Burden of Proving Good Cause For the Relief It Seeks and IBC Cannot Demonstrate Any Substantial Need For Granting Its Controller Access to Aetna's Highly Confidential Information**

The Federal Rules of Civil Procedure provide for the issuance of a protective order upon a movant's showing of good cause. See Fed.R.Civ.P. 26(c). Indeed, a Court is specifically authorized to enter a protective order "that a trade secret or other confidential research, development, or commercial information not be revealed...." Fed.R.Civ.P.26(c). While the party seeking a protective order bears the burden of establishing good cause for its issuance, courts will issue protective orders to restrict the disclosure of materials that, if released, would place the party at a competitive disadvantage. See Essex Wire Corp. v. Eastern Electric Sales Co., 48 F.R.D. 308, 310 (E.D.Pa. 1969). Indeed, courts have prohibited discovery into "financial information when it may be revealed to business rivals, especially when the information would be collateral and not direct proof of the plaintiff's claims." United States of America v. Federation of Physician and Dentists, 63 F.Supp.2d 475, 479 (D.Del.1999); see Miles v. Boeing Corp., 154 F.R.D. 112, 114 (E.D.Pa.1994) (emphasis added)("Competitive

14

disadvantage is a type of harm cognizable under Rule 26, **and it is clear that a court may issues a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage.**"); Ball Memorial Hospital Inc. v. Mutual Hosp. Ins., 784 F.2d 1325, 1345 (7th Cir.1986)(insurance provider's data on prices bid by hospitals and the calculations the insurance provider performed was confidential for fear that the hospitals could use the comparative price information to raise their prices or collude in future years.)

In the instant case, Aetna has clearly demonstrated that "good cause" exists for the issuance of a Protective Order precluding disclosure of Aetna's confidential and proprietary information to IBC's controller. The disclosure of this closely guarded and highly confidential information to its competitor, IBC, will clearly place Aetna at a competitive disadvantage. See Exhibit "E" (Affidavit of Robert J. Franzoi).

Where sensitive, confidential business information is sought in discovery, the party opposing the protective order bears the burden of establishing substantial need for the material that cannot be met without undue hardship. Act, Inc. v. Sylvan Learning Sys. Inc., 1999 U.S. Dist. LEXIS 7055 at *8 (E.D.Pa. May 14, 1999)(O'Neill, J.) (no discovery of confidential business information where disclosure would expose to serious commercial harm and disadvantage); see also AT&T Corp. v. Universal Communs. Network, Inc., 1999 U.S. Dist. LEXIS 5651 (E.D. Pa. April 14, 1999)(Fullam, Sr. J.).

As set forth above, there can be no dispute that the information sought by IBC is Aetna's confidential business information and of the type that is protected from disclosure by the Federal Rules of Civil Procedure and controlling case law. IBC can establish no substantial need for its controller to have access to its confidential and

15

proprietary information. IBC's only proffered "substantial need" relates to the need for Mr. Nolan to report to IBC's Board. IBC has never averred that Mr. Nolan has any type of specialized legal knowledge that provides him an expertise that would allow him to inform the board about the complex issues involved in this antitrust litigation. The specious nature of IBC's stated "substantial need" is demonstrated by the fact that IBC's counsel of record, Thomas A. Leonard, Esq., is a member of the IBC Board. Mr. Leonard, who has access to Aetna's confidential and proprietary information under the terms of the Protective Order as currently modified, clearly, by virtue of his legal training and familiarity with the complex legal issues of this case, is in a better position to provide the Board with the advice it would need to reach an informed decision about any stage of this litigation. Moreover, IBC has never articulated why access to specific reimbursement rates, such as Aetna's, is necessary, even for people with a legal background, for purposes of providing a Board of Directors with an accurate portrayal of the progress of litigation and issues associated therewith. The lack of a reasonable articulated substantial need on behalf of IBC increases the possibility that IBC's sole reason for seeking access for its employees to Aetna's highly confidential information is to place Aetna at a competitive disadvantage.

Moreover, as Aetna's information is only relevant to the antitrust claims at issue in this matter, such information is not subject to factual or legal issues on which IBC's controller, or any other IBC employee, may need to provide guidance. Rather, the resolution of these antitrust issues will be decided by the credibility of the parties' experts.[10]  IBC is represented by the Obermayer firm, a firm with significant litigation

---

[10]In recognition that the parties' experts may need access to Aetna's confidential and proprietary information in order to formulate opinions relating to the validity, or lack thereof, of CCH's antitrust claim,

and health care experience. There is no reason why the Obermayer firm cannot, without the aid of IBC's controller, competently prepare and present an antitrust expert for trial and keep IBC's Board of Directors informed regarding the status and options relating to this litigation. Accordingly, a protective order prohibiting IBC's controller's access to this information is necessary and appropriate.

### C. Use of Aetna's "Highly Confidential" Information Should Be Limited at Deposition So As to Avoid Inappropriate Disclosure in Violation of the Spirit of the Protective Order

At the July 7, 2003 Hearing, IBC represented to the Court that "[w]e have about three dozen depositions that are going to be taking place within the extended discovery for 90 days. I expect that this material is going to be used in most if not all of these depositions." Exhibit "I" at 8. Aetna submits that there is no legitimate basis for questioning any fact witness about Aetna's rates or other "Highly Confidential" information, where the witness at issues has no first hand knowledge of such information.[11] For example, many of the scheduled deponents are most likely IBC employees who have no knowledge of how Aetna and a particular hospital negotiated its rates. While such people may be able to provide testimony relevant to how IBC negotiates its rates, disclosure of Aetna's rates to such a person at deposition, which IBC's counsel indicated is likely if not certain, would only serve to place Aetna at a

---

Aetna agrees, subject to execution of an appropriate non-disclosure agreement by any expert, to allow the parties' experts, designated for the purposes of opining on the relevant market relating to alleged antitrust violations in the above captioned litigation or the alleged effects of IBC's alleged practices upon the same, access to this highly sensitive information.

[11] Aetna concedes that its rates may be a legitimate area of examination when examining, for example, CCH employees who negotiated those rates with Aetna, because such individuals have first hand knowledge regarding how such rates were negotiated. However, outside of such employees of CCH and the parties' experts, Aetna does not believe that there is any legitimate basis for revealing its confidential and proprietary trade secrets during depositions conducted in this litigation.

competitive disadvantage without producing any reliable, or even admissible, testimony relating to the issues of this litigation.

In light of IBC's counsel's statements, Aetna is highly skeptical of how its trade secrets will be used during the prosecution of this case, including at deposition. Accordingly, Aetna requests that it be provided with five (5) days notice before any of Aetna's "highly confidential" documents are disclosed to a deponent so that Aetna may provide the Court with specific objections relating to the use of such documents and copies of every deposition taken in this case so that Aetna's outside counsel can monitor how its trade secrets are being utilized during this litigation.[12]

### D. Aetna Should Be Provided the Opportunity to Review and Designate All Documents Containing Its "Highly Confidential" Information

Paragraph 2(A) of the July 7, 2003 Order states: "Documents that include proprietary and trade secret information from third-party insurers (the "Insrers") shall be marked 'highly confidential information' **by the Disclosing Entity."** Exhibit "B" at 1 (emphasis added).  Both of the parties to this litigation have, despite knowledge of Aetna's objections to disclosure of its confidential and proprietary information, subpoenaed other entities, *ex parte* to Aetna, seeking, *inter alia*, Aetna's trade secrets.[13] Accordingly, many of the documents that may be produced during this litigation may be produced by entities other than Aetna. Under the Protective Order, as currently modified, if a particular hospital produces documents without marking them as "Highly

---

[12] Aetna's outside counsel would, of course, sign an affidavit consistent with the Protective Order and would not provide in-house counsel or Aetna employees access to such information, just as counsel previously addressed the inadvertent disclosure of IBC's rate information by CCH.

[13] Aetna's concerns are heightened by the extremely broad nature of both the subpoena served upon it as well as those subpoenas Aetna has seen that were served upon non-party providers.

Confidential," Aetna would have no means of protecting its trade secrets from unlimited disclosure, including to IBC's internal personnel.  Accordingly, Aetna hereby requests that the Court order the parties to provide Aetna's counsel with copies of all Aetna documents or documents containing Aetna's information, so that counsel may, if appropriate, designate such documents "Highly Confidential – Non-Party," so as to insure that Aetna is not prejudiced by responses to the parties' subpoenas of other non-parties *ex parte* to Aetna.[14]

> ### E. Because There Are Now Two Categories of "Highly Confidential" Documents, One Category to Which IBC's In-House Counsel Has Access and Another, Which Contains Aetna and the Non-Party Insurer's Confidential Information, a Separate Designation Should Be Created So as to Avoid Confusion and Potential Inadvertent Disclosure

Finally, as noted in IBC's counsel's July 11, 2003 letter to the Court indicates, under the Protective Order as modified, there are two categories of documents, both of which are currently designated as "highly confidential." See Exhibit "L." One category of "highly confidential" documents, those which are "highly confidential," but which "have nothing to do with the insurers," can be accessed by IBC's in-house counsel. Id.; see also Exhibit "A" at ¶ 10(b). The second category of "highly confidential" documents is encompasses documents produced by the Insurers, to which IBC's in-house counsel is not permitted access.  In order to eliminate confusion, and possible inadvertent disclosure, Aetna requests that the Court create a second category of "highly

---

[14] Given the nature of Plaintiff's claims, this litigation will be document intensive. With so many documents being produced by so many different entities, Aetna's trade secrets could be, even with the parties' best intentions, improperly designated or not designated at all. Practically speaking, once such information is disclosed, it cannot be "unlearned." Accordingly, due to the competitive disadvantage such an improper designation, such as Duane Morris' inadvertent failure to designate one hundred and fifty pages of the documents it intended to produce to IBC, could cause Aetna, Aetna seeks some means to insure that its trade secrets are properly designated "highly confidential." Because the parties' counsel has duties to their respective clients, and therefore do not represent Aetna's interests, Aetna requests that its outside counsel be allowed to review and appropriately designate its information.

confidential" documents that could be designated "Highly Confidential – Non-Party," which would help eliminate any potential confusion with regard to who should be granted access to such documents.

## III.     CONCLUSION

Accordingly, Aetna respectfully submits that this Court must enter a protective order prohibiting the disclosure of Aetna's confidential and proprietary information to IBC's controller. Aetna further requests the protection from inappropriate disclosure during depositions, an opportunity to make sure that depositions are not used for improper means, the ability to review and designate its own trade secrets as "Highly Confidential" and any other relief the Court deems appropriate.

Respectfully submitted,

OF COUNSEL:

ELLIOTT REIHNER SIEDZIKOWSKI
& SIEDZIKOWSKI & EGAN, P.C.

JOHN M. ELLIOTT
JAMES C. CRUMLISH III
JOHN P. ELLIOTT
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
P.O. Box 3010
Blue Bell, PA 19422
(215) 977-1000
Counsel for Non-party
Aetna Inc.

DATED: July 21, 2003

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day a copy of the foregoing is being served upon the person and in the manner indicated below:

### VIA FIRST CLASS MAIL

Honorable Charles B. Smith
United States District Court for the
Eastern District of Pennsylvania
U.S. Courthouse, Room 3006
601 Market Street
Philadelphia, PA 19106

**Attorneys for The Chester County Hospital**
Lewis R. Olshin, Esquire
Duane, Morris LLP
One Liberty Place
Philadelphia, PA 19103-7396

Daniel A. Kotchen, Esquire
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

**Attorneys for Independence Blue Cross, QCC Insurance Company, Keystone
Health Plan East, and Keystone Mercy Health Plan**
William J. Leonard, Esquire
Obermayer Rebmann Maxwell & Hippel, LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895

Howard T. Rosenblatt, Esquire
Howrey Simon Arnold & White LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

**Attorneys for Capital Blue Cross**
Mark J. Oberstaedt, Esquire
Archer & Greiner PC
One S. Broad Street
Suite 1620
Philadelphia, PA 19107

**Attorneys for Highmark, Inc.**
Natalie Chetlin Moritz, Esquire
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219

**Attorneys for Blue Cross of Northeastern Pennsylvania**
Melanie A. Miller, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

**Attorneys for Wellspan Health System**
Neil C. Schur, Esquire
Stevens & Lee
111 N. 6th Street
P. O. Box 679
Reading, PA 19603

**Attorneys for CIGNA**
Kevin C. McClay, Esquire
Jones Day
51 Louisiana Avenue, NW
Washington, DC 19103

**Attorneys for Health Net**
Katie A. Gummer, Esquire
McCarter & English, LLP
Mellon Bank Center
1735 Market Street, Ste 700
Philadelphia, PA 19103

**Attorneys for Coventry Health Care of Delaware**
Robert W. Hayes, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

**Attorneys for Multiplan, Inc.**
Brian T. Must, Esquire
Metz Schermer & Lewis
11 Stanwix St., 18th Floor
Pittsburgh, PA 15222

_____
JOHN P. ELLIOTT

DATED:       July 21, 2003