IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

## ORDER

**AND NOW** this _____ day of _____, 2003, upon consideration of Non-Party Aetna

Inc.'s Appeal of the Court's July 7, 2003 and July 16, 2003 Orders Modifying the January 24,

2003 Protective Order,  Non-Party MultiPlan Inc.'s Statement of Objections and/or Notice of

Appeal From the Magistrate Judge's Order Denying Multiplan's Motion to Intervene and/or

Motion for Protective Order (Doc. No. 54) and Motion to Quash, Motion to Intervene and/or

Motion for Protective Order (Doc. No. 83), and any responses thereto, it is hereby **ORDERED**

that Aetna and Multiplan's appeals are **DENIED**.

**IT IS FURTHER ORDERED** that Aetna and Multiplan shall produce all documents

responsive to Plaintiff and Defendants' document subpoenas within ___ days from the date of

this Order.

                                                      PADOVA        J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL     :
                                  :
       v.                             :
                                  :
INDEPENDENCE BLUE CROSS,     :     CIVIL ACTION NO. 02-CV-2746
QCC INSURANCE COMPANY,      :
KEYSTONE HEALTHPLAN EAST,    :
and KEYSTONE MERCY HEALTH PLAN   :

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MAGISTRATE SMITH'S JULY 7
AND JULY 16, 2003 ORDERS MODIFYING THE
<u>JANUARY 24, 2003 PROTECTIVE ORDER</u>

      Defendants, Independence Blue Cross, QCC Insurance Company, Keystone HealthPlan

East, and Keystone Mercy Health Plan (collectively referred to herein as "IBC"), respectfully

submit this Memorandum in support of Magistrate's Smith's Orders dated July 7, 2003 and July

16, 2003, modifying the Court's January 24, 2003 Protective Order.  As discussed below, the

appeal of non-parties, Aetna, Inc. ("Aetna") and MultiPlan, Inc. ("MultiPlan"), are without merit.

## I.   <u>INTRODUCTION</u>

      Aetna and MultiPlan seek to bar IBC from obtaining and using important evidence in this

case.  IBC stands accused of using its alleged "monopoly" over the sale of health care insurance

to create a "monopsony" that has "illegally" depressed hospital reimbursement rates.  In such a

case, it is critical that IBC learn its competitors' business plans and reimbursement rates.  In

dragging their feet, raising innumerable objections, insisting on "safeguards" intended only to

create yet more delays, and otherwise obstructing discovery, those competitors seek to abuse the

litigation process.  To date, this obstructive behavior has caused the parties to put critical hospital

and other non-party depositions "on hold."  Because these depositions cannot be completed until

the competitors' documents are provided and analyzed, it appears that these insurers have succeeded in making it impossible to complete discovery before the October 1st cut-off. The "relief" the insurers seek here is guaranteed to embroil those depositions in endless disputes respecting which witnesses may be shown what documents, how documents must be marked, and the like. IBC submits that Judge Smith has afforded the insurers every reasonable protection. Accordingly, IBC implores the Court promptly to reject Aetna and MultiPlan's objections, and thus allow the completion of all non-party document discovery as soon as possible.

## II.  FACTS

### A.    The Insurers Seek "Safeguards" In Addition to Those in the Protective Order

With little more than two months remaining until the close of discovery, CCH still has not produced the rates or contracts it has with other insurers. IBC raised this issue in a teleconference with the Court on May 21, 2003. The Court instructed CCH to inform insurers that objected to the production of their information that if they did not seek protective relief by a given deadline, CCH would be required to produce the documents in question. Subsequently, Aetna, MultiPlan, CIGNA, Health Net, and Coventry filed motions seeking to protect their confidential information. CCH supported the insurers' motions.

The insurers all sought to modify the provision of the Protective Order that allows IBC's in-house legal counsel to see documents marked "highly confidential." The insurers argued that their rates, contracts, and business plans were trade secrets and should not be shown to anyone at IBC who is involved in competitive decision-making. The insurers also sought numerous other changes to the Protective Order designed to preserve the confidentiality of their competitively sensitive information. For example, the insurers sought to (a) restrict outside counsel for

eighteen months from handling any matters in which the highly-confidential information of an insurer might be relevant; (b) extend the provisions for filing motions under seal to motions for summary judgment; (c) compel the parties to give notice and an opportunity to object before insurers' highly-confidential documents could be shown to witnesses or experts; (d) require counsel for the parties to maintain, and make available upon request, a list of persons to whom confidential information is disclosed and the confidentiality agreements they executed; (e) shift the procedural burden of challenging a confidentiality designation to the actual litigants; (f) require outside counsel to read and be bound by the modified Protective Order; (g) require that insurers be served with copies of all subpoenas seeking production of their highly-confidential information; (h) limit the number of copies that can be made of documents produced by insurers; and (i) order return or destruction of all documents produced by non-party insurers at the conclusion of this litigation.  (From the insurers original motions to modify the Protective Order: Aetna's Proposed Order at ¶¶ 1-6; Multiplan's Motion and Memorandum at p. 8; Coventry's Proposed Order at ¶¶ 3-7; Health Net's Motion at ¶ 16; Cigna's Proposed Order at ¶¶ 1-3).

### B.    IBC Proposes a Compromise to Obviate the Need for Further Litigation

This Court referred the insurers' motions to Judge Smith for resolution.  By June 12, 2003, IBC counsel Paul Diamond had proposed to counsel for Aetna, CIGNA, HealthNet, and CCH (he was unable to reach Coventry's lawyer) a compromise that would enable discovery to continue without delay.  Mr. Diamond specifically advised that IBC would forego disclosure of the subject materials to IBC's in-house counsel, and instead would limit disclosure to IBC Controller, Joseph Nolan, who would have no involvement (presently and for an agreed to period of time) in competitive decision making.  Counsel for Aetna and MultiPlan agreed to review the

proposal with their clients, but did not subsequently respond with either an acceptance or rejection of IBC's proposal.

Mr. Diamond subsequently wrote to Judge Smith, informing him that IBC had proposed a compromise. (The letter is attached to Aetna's Memorandum at Exhibit G). He asked Judge Smith to schedule a conference to help resolve the matter, and requested that IBC be permitted to defer answering the insurers' motions pending the outcome of the conference. Judge Smith scheduled a conference in the matter for July 7, 2003.

That conference opened with CCH announcing that IBC's proffered compromise "goes a long way to meet the requirements of the case law and . . . some of the concerns expressed by the insurers." (N.T. July 7, 2003 at p. 5, ln. 13-16, Attached to Aetna Memorandum at Exhibit I.) Mr. Diamond then reported to Judge Smith what he had told the insurers' counsel almost a month before: that IBC was proposing to exclude all IBC personnel -- even three in-house lawyers who were integral to its defense team -- from seeing *any* highly-confidential insurer information, in exchange for allowing Mr. Nolan access to such information. Mr. Diamond explained that Mr. Nolan was not involved in competitive decision-making. He argued that the insurers were actually seeking to prohibit anyone at IBC from reviewing their rates and business plans. Mr. Diamond further argued that in a case where the relief sought included the break-up of the company and damages in excess of $20,000,000 trebled, a defendant has the right to see and hear more than just the recommendations of its outside counsel. (N.T. July 7, 2003 at pp. 6-10)

In response, counsel for Aetna acknowledged its true intentions:

> [Aetna's Counsel]: I would have to agree with Mr. Diamond's characterization of our position. We don't believe that anybody at IBC should have access to our rates.

(N.T. July 7, 2003 at p. 11)

C.    **Judge Smith Gives the Insurers Virtually All the Protections They Request.**

Given the potentially-critical nature of the insurers' information, and the seriousness of

this case, Judge Smith accepted IBC's argument and authorized Mr. Nolan, a trusted member of

IBC Senior Management, to see highly-confidential information from IBC's competitors.  First,

however, Judge Smith ordered Mr. Nolan to take an oath promising not to be involved in any

competitive decision making for two years, and never to use any insurer's confidential

information except in IBC's defense of this litigation.  (See Order dated July 7, 2003, attached as

Exhibit "A.")  Mr. Nolan promptly submitted the required affidavit.  (Copy attached as

Exhibit "B.")

Having allowed extremely limited access to the insurers' highly-confidential information,

Judge Smith took extraordinary precautions to ensure that the information would be protected.

He granted the insurers virtually every safeguard they sought (described at p. 3, supra).  By

Order dated July 7, 2003, Judge Smith ordered no less than nine different protections, all

designed to preserve the insurers' trade secrets.  One week later, Judge Smith entered a second

Order, dated July 16, 2003, clarifying his July 7 Order, to make it clear that the Nolan

compromise only applied to the highly-confidential information of third-parties, as opposed to

the highly-confidential information of the parties themselves.  (Copy attached as Exhibit "C.")

The July 16, 2003 clarifying Order had no impact whatsoever on the non-party insurers (and is

not the subject of the instant appeals).

CIGNA, Health Net, and Coventry were apparently satisfied with the Court's July 7,

2003 Order.  However, on July 21, 2003, Aetna and MultiPlan appealed Judge Smith's Order to

this Court.  Their filings make clear that they object to *anyone* at IBC seeing *any* confidential

information of non-party insurers. In addition, they are now seeking rights, such as participation in depositions, that they never sought from Judge Smith.


### III.  LEGAL ARGUMENT

**A.      The Court Should Affirm Judge Smith's Order Unless It Is Clearly Erroneous Or Contrary To Law**

A magistrate judge's order with respect to non-dispositive, pretrial matter should be affirmed unless it is found to be "clearly erroneous or contrary to law." Heintz Corp. v. Judson, 1995 U.S. Dist. LEXIS 16328 (E.D.Pa. 1995) (Padova, J.); F.R.Civ.P. 72(a). Under the clearly erroneous standard, the reviewing court must accept the magistrate judges determination unless it is (1) completely without minimal evidentiary support, or (2) bears no rational relation to the evidence presented. Haines v. Liggett Group Inc., 975 F.2d 81, 92 (3d Cir. 1992).

Under this standard, the Court should affirm Judge Smith's July 7, 2003 Order.


**B.      Aetna and MultiPlan Have Waived Arguments And Demands Raised Here For The First Time**

Needless to say, a magistrate judge cannot commit a clear error with respect to arguments that were not raised before him in the first place. Cooper Hospital/University Medical Center, 183 F.R.D. 135, 142 (D. N.J., 1998) ("parties who litigate before a Magistrate Judge must raise any and all arguments before the Magistrate Judge, or waive their right to assert the arguments before the district court on appeal"). See Walton v. Mental Health Ass'n, 168 F.3d 661, 672 (3d Cir. 1999) ("[A]bsent exceptional circumstances, an issue not raised in the district court will not be heard on appeal.") (citing Altman v. Altman, 653 F.2d 755, 758 (3d Cir. 1981) ("district court should not be reversed on grounds not argued before it") (citing Walker v. Sinclair Refining Co., 320 F.2d 302, 305 (3d Cir. 1963)); Haines, 975 F.2d at 93 (it is an abuse of discretion for a court

reviewing the ruling of a magistrate judge to consider evidence not before the magistrate judge).

Accordingly, the numerous demands for relief the insurers raise here for the first time are not

properly before this Court. These include the demands that: (1) IBC perform the insurer's job of

identifying the insurers' confidential records; (2) IBC be barred from using the confidential

information at depositions except with Aetna's agreement; (3) that Aetna's counsel becomes a

permanent fixture at every deposition that takes place in this case; and (4) that Aetna's counsel

have access to all deposition transcripts, "so Aetna's counsel has reasonable means to determine

the appropriateness of the parties' utilization and disclosure of Aetna's confidential and propriety

information." (Aetna's Proposed Order at ¶5; Aetna's Motion at p. 2; Aetna's Memorandum at

pp. 2-3, 9, 17 n. 11, 18-19, 19 n. 14.)

Putting aside that these requested "protections" are obviously intended only to obstruct

discovery, they are waived. Aetna offers two "excuses" for failing to seek the protections earlier.

First, IBC allegedly did not, before the July 7 hearing, inform Aetna that "IBC had withdrawn its

insistence that its in-house counsel have access to Aetna's confidential and proprietary

information and instead sought to designate Joseph Nolan as a corporate representative to be

provided access to Aetna's trade secrets." (Aetna Memorandum at p.6)

This is, of course, nonsense. As described above, Mr. Diamond informed Aetna's

counsel of the Nolan proposal weeks before the July 7 hearing. Indeed, Aetna agreed to allow

IBC additional time to respond to Aetna's motion to intervene while Aetna's client considered

the proposal. (See June 16, 2003 stipulation referring to the agreement of Aetna, attached as

Exhibit "D.") Further, "Exhibit G" to Aetna's Memorandum is Mr. Diamond's June 19 letter to

Judge Smith, which includes the following statement:

> I have communicated with counsel to four of the insurers (Aetna,
> CIGNA, MultiPlan, and HealthNet) and proposed to them a

> compromise by which their proprietary information would not be
> disclosed to any IBC in-house counsel. (I have been unable to
> reach Coventry's counsel.) All counsel agreed to review my
> proposal with their clients. None has yet told me that his client has
> accepted or rejected the proposal.

Plainly, Aetna knew about the Nolan proposal well before July 7. Accordingly, it cannot

"excuse" its belated request for relief on IBC's alleged "failure" to propose the compromise

before July 7.

Aetna also seeks to evade waiver by arguing that it learned on July 7 that all the insurers'

highly confidential documents would likely be used at most, if not at all, of the depositions that

had not yet occurred. (Aetna Memorandum at p.2) It is difficult to understand how this "excuses"

or even relates to Aetna's waiver. If Aetna believed the extremely limited disclosure of its

documents required Aetna's counsel to be present at every deposition, it should have said so to

Judge Smith. Its failure to seek this relief until now simply underscores that Aetna will do what it

can to obstruct discovery of this vital evidence. Indeed, IBC is confident that should this Court

reject Aetna's appeal, Aetna will manufacture entirely new issues before the Third Circuit. Like

the claims it raises here for the first time, those claims will be waived. See Walton v. Mental

Health Ass'n, 168 F.3d 661, 672 (3d Cir. 1999) ("[A]bsent exceptional circumstances, an issue not

raised in the district court will not be heard on appeal.") (citing Altman v. Altman, 653 F.2d 755,

758 (3d Cir. 1981) ("district court should not be reversed on grounds not argued before it") (citing

Walker v. Sinclair Refining Co., 320 F.2d 302, 305 (3d Cir. 1963)).

473479

8

C.    **Judge Smith Carefully Balanced the Parties' Need for the Insurers'**
     **Information and the Confidentiality of that Information**

Aetna and MultiPlan complain that no affidavits were filed and no hearings were held to establish "need" for anyone at IBC to see competitor rates and business plans. With this sleight of hand, the insurers seek to reverse the burden of persuasion here.

The Third Circuit has decreed that the party seeking confidentiality must show why that confidentiality is necessary:

> [P]rotective orders over discovery materials and orders of confidentiality over matters relating to other stages of litigation have comparable features and raise similar policy concerns …whether confidentiality is granted at the discovery stage or any other stage of litigation, including settlement, good cause must be demonstrated.

Pansy v. Borough of Stroudsburg, 23 F.3rd 772, 786 (3rd Cir. 1994). In Heintz this Court, applying Pansy, affirmed Magistrate Smith's order allowing a party to show trade secrete information to a particular expert. The Court underscored that the party seeking confidentiality had the burden to show good cause for those protections, and that the burden extended to each and every document the party wanted to protect and to the specific person that the party wanted to keep the document from. Id. at *11 and *24. The Court required the party seeking the protection to show that a "specific and definite injury" would result from showing "Specially Confidential" documents to the person in question. Id. at *24. Where the person in question is being bound by a protective order (as Mr. Nolan is here), the Court held that it would not assume that the protective order would not be effective based merely on the producing party's stereotyped and conclusory statements. Id. at *20-22.

Courts have held that where a party seeks a protective order that actually impinges on attorney-client communications and the ability of the client to understand the evidence on which the case will be decided, the burden on the party seeking the protection is even greater:

> District courts must be … chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor.  Such orders arguably trench upon constitutional interests at least as important as those infringed by restrictions on public dissemination of information.

Charles Phillips v. District of Columbia, 697 F.2d 1115, 1119-20 (D.C. Cir. 1983).  "Courts must be extremely cautious in issuing protective orders that restrict the ability of counsel to confer with his or her client during trial and/or the preparations for trial."  C & L Sales, Inc. v. Kev Don Industries, Inc., 1987 U.S. Dist. LEXIS 5876, *5 (D. Kan. June 15, 1987).

> … every litigant has a powerful interest in being able to retain and consult freely with an attorney.  Insofar that the fair administration of justice requires that all parties to a controversy be fully and equally informed of their entitlements, the public has a similarly important interest in preserving the ability of each disputant to confer with his lawyer.  **The public interest is reinforced by the value we place on the right of every litigant to participate in the process whereby justice is done – to understand and become involved in the proceeding, not to be compelled to passively await its outcome.**  Regardless of whether these considerations are deemed to be inherent in the principle of due process, they must be accorded considerable weight by a trial judge when considering the propriety of issuing a protective order FED R. CIV. P. 26 (c).

Charles Phillips, 697 F.2d at 1119-20 (emphasis supplied).  In deciding whether a party should be foreclosed from seeing important evidence obtained by the party's attorney, the analysis is similar to the one used when determining whether information obtained in discovery may be shielded from public dissemination.  Id. at 1120.  The court must evaluate any such restriction in light of three criteria: (1) the harm posed by the disclosure must be substantial and serious; (2)

473479                                      10

the restraining order must be narrowly drawn and precise; and (3) there must be no means of protecting the confidential information which allows the attorney to share the information with the client.  See id.; accord, C & L Sales, 1987 U.S. Dist. LEXIS at *5.

Here, neither Aetna nor MultiPlan have remotely met their burden--they have not even addressed how showing Mr. Nolan the disputed documents would harm them.  Nor did they do so when they were before Judge Smith.  Rather, they rely here on the same cases they cited below--decisions which stand for the unremarkable proposition that where a party can show a need to obtain confidential information in discovery, it can get that information subject to some sort of a protective order.  See Glenmede Trust Co. v. Hutton, J., 56 F.3d 476 (3rd Cir. 1995) (must show good cause to meet Pansy standard to obtain protective order); Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3rd Cir. 1994) (discussed supra); Leucadia, Inc. Applied Extrusion Tech., Inc., 998 F.2d 157 (3rd Cir. 1993) (on request for protective order, threshold question is whether documents contain trade secrets); Smith v. BIC Corp., 869 F.2d 194 (3rd Cir. 1989) (party disclosing trade secrets was entitled to an order limiting use to the litigation at hand); Ball Memorial Hospital, Inc. v. Mutual Hospital, 784 F.2d 1325, 1345-46 (7th Cir. 1986) (trial counsel receiving trade secret information may be barred from representing hospitals for 18 months in other matters as a condition of receiving the information); AT&T Corp. v. Universal Communications Network, Inc., 1999 U.S. Dist. LEXIS 5651 (E.D.Pa 1999) (to reduce burden, discovery from third party's CEO will first take the form of written questions); Act Inc. v. Sylvan Learning System, Inc., 1999 U.S. Dist. LEXIS 7055 (E.D.Pa. 1999) (party need not disclose confidential information where relevance is merely arguable); Mycogen Plant Science, Inc. v. Monsanto Co., 164 F.R.D. 623 (E.D.Pa. 1996) (where a party can show a need to obtain confidential information in discovery, it can get that information subject to some sort of a

protective order); <u>Miles v. Boeing Co.</u>, 154 F.R.D. 112 (E.D.Pa. 1994) (party disclosing

confidential commercial information is entitled to order limiting the disclosures of that

information to the opposing party, its attorneys and experts, and the court); <u>Staff Builders of Phil.</u>

<u>V. Koschitzki</u>, 1989 WL 46284 (E.D.Pa. 1989) (third-party need not disclose confidential

information where relevance is dubious); <u>Essex Wire Corp. v. Eastern Elec. Sales Co.</u>, 48 F.R.D.

308 (E.D.Pa. 1969) (party disclosing trade secrets is entitled to a protective order limiting the

other sides use of the information to the litigation); <u>United States v. Federation of Physicians and</u>

<u>Dentists</u>, 63 F.Supp.2d 475 (D. Del. 1999) (third party does not need to disclose sensitive,

private information where relevance of information is marginal); <u>Dibble v. Penn State Geisinger</u>

<u>Clinic, Inc.</u>, 806 A.2d 866 (Pa.Super. 2002) (HMO was entitled to an order preventing the

opposing party from disseminating its trade secrets to those not involved in the litigation).

Similarly, Aetna and MultiPlan's demand that IBC produce "affidavits" setting out its

need to review competitor rates and business plans confuses factual and legal issues. CCH has

alleged that IBC is a monopolist, that it has no significant competitors, and that there are barriers

to entry in the health care insurance market in the five county Philadelphia region. It is difficult

to conceive of evidence more closely related to these allegations than the analyses and business

plans of IBC's competitors and would-be competitors in the relevant market. <u>United States</u>

<u>Football League v. National Football League</u>, 605 F.Supp. 1448, 1461 (S.D.N.Y. 1985) (business

plans, economic organization, and prospective market position are particularly relevant in

antitrust cases).

Likewise, CCH's allegation that IBC's "monopsony" power has "illegally" depressed the

reimbursement rates the Hospital receives from IBC makes it imperative to discover what IBC's

competitors pay the Hospital. For instance, as the Court may well recall, in its Rule 11 Motion

(which IBC intends to renew at the completion of discovery), IBC pointed out that in its Bond Prospectus, CCH touted its "successful negotiations" for managed care agreements in 2000. This was completely at odds with the allegations in CCH's Amended Complaint that it was "coerced" into signing an "unconscionable" contract with IBC in 2000.

CCH responded to this by arguing that it was referring in the Prospectus to managed care *contracts*—not just the IBC contract. In light of this "defense," CCH's contract with Aetna— CCH's second largest managed care provider—is critically important. If Aetna's reimbursement rates are approximately the same (or lower) than IBC's, then CCH has misrepresented either in its Amended Complaint or its Bond Prospectus. The documents CCH had produced thus far— which refer to the Aetna rates without actually providing them—strongly suggest that Aetna's rates are very similar to IBC's (See CCH document nos. 16604, 16622, 16644, 16660, 16666, 16826, and 16627.) Obviously, it is critically important for IBC to learn precisely what those rates are.

Similarly, CCH has alleged that IBC's "monopsony" has caused a region-wide depression in reimbursement rates (Amended Complaint at ¶¶ 17, 23, 43). In these circumstances, IBC must be able to compare its rates to those of its competitors throughout the Delaware Valley. "The price data are unquestionably relevant, and parties are entitled to information as important as this was." Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., Inc., 784 F.2d 1325, 1347 (7th Cir. Ind. 1986) (citing Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556 (7th Cir. 1984) (antitrust action brought by hospitals to enjoin implementation of Blue Cross Blue Shield PPO). In a case that is largely about health care provider reimbursement rates, it is astounding that no party yet knows what those rates actually are in the Philadelphia region.

Lastly, Aetna and MultiPlan disingenuously argue that there is no need for Mr. Nolan to see the evidence because outside counsel, Thomas Leonard, is on the Board of IBC. This argument seeks to prejudice both IBC and IBC's outside counsel. As required by the Rules of Professional Conduct, Mr. Leonard is, first and foremost, an advocate here. Moreover, neither Mr. Leonard nor any other IBC Board Member could be described as IBC's Senior Management – those who, at the highest level, run IBC day to day and are thoroughly familiar with all aspects of its operations. On the contrary, as one of 35 directors (and one of 34 outside directors), Mr. Leonard is himself advised by IBC's Senior Management.

IBC Senior Management selected Mr. Leonard and his firm to represent the Company in this litigation. In that role, Mr. Leonard and his firm will advise and make recommendations to the Company. That is the role of outside counsel. The client, not the outside lawyers, however, must make the ultimate decisions on those recommendations. A member of IBC's Senior Management, Mr. Nolan, is not directly involved in the litigation, and is vastly more knowledgeable than Mr. Leonard about IBC's business. He reports directly to IBC's Chief Financial Office and, as Controller, has a firm grasp on the financial operations of the company. If Mr. Nolan is not allowed to see the potentially critical evidence at issue, IBC will not have a single "hands on" member of its Senior Management with sufficient knowledge to evaluate intelligently counsel's advice as this case progresses. IBC's outside counsel will be similarly compromised by being forced to become not just the trial lawyers, but the litigation managers, and the decision-makers.

In the present circumstances, where Aetna and CIGNA did not even attempt to meet their burden of proof while before Judge Smith, and where it would clearly have been impossible for

473479                                    14

them to do so had they made the attempt, IBC should not be made to suffer such prejudice.  The

Court should reject the appeals of Aetna and Cigna so that discovery in this matter can resume.

## IV.  <u>CONCLUSIONS</u>

For all the foregoing reasons, IBC respectfully requests that this Court affirm the Orders

of Magistrate Smith dated July 7, 2003 and July 16, 2003.


Respectfully submitted,


_Paul S. Diamond_

Thomas A. Leonard
Paul S. Diamond
William J. Leonard
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103
(215) 665-3000

John DeQ. Briggs
James G. Kress
HOWREY SIMON ARNOLD & WHITE LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004


Dated: _7/29/03_

**EXHIBIT "A"**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHESTER COUNTY HOSPITAL,    :    NO. 2:02-cv-02746-JRP
          Plaintiff    :
                    :
VS.    :
                    :
INDEPENDENCE BLUE CROSS, et al., :
          Defendants    :

**FILED**

JUL - 7 2003

MICHAEL E. KUNZ, Clerk

By _____ Dep. Clerk

<u>O R D E R</u>

AND NOW, this 7th day of *July*, 2003, upon consideration of the Motion to Intervene and for Protective Order by Multiplan, Inc. (Doc. No. 54), the Motion for Protective Order by CIGNA (Doc. No. 55), the Motion to Intervene and for Protective Order by Aetna, Inc. (Doc. No. 56), the Motion to Intervene and for Protective Order by Coventry Healthcare of Delaware (Doc. No. 66), the Motion to Intervene and for Protective Order by Health Net of the Northeast, Inc. (Doc. No. 67), the Motion to Intervene, for Protective Order and to Quash by MultiPlan, Inc. (Doc. No. 83), the Motion to Modify Protective Order by Plaintiff Chester County Hospital (Doc. No. 57), and all Responses thereto, it is hereby ORDERED that:

    1.  The Protective Order entered between the parties in this matter and signed by the Court on January 24, 2003, is hereby MODIFIED as follows:

        A.  Documents that include proprietary and trade secret information from third-party insurers (the "Insurers") shall be marked "highly confidential information" by the Disclosing Entity;

        B.  Paragraph 10 of the Protective Order shall be modified as follows:

            j.  The only IBC employee or officer to whom highly

confidential information may be disclosed is Joseph Nolan. The only Chester County Hospital employee or officer to whom highly confidential information may be disclosed is Paul Vanore. Neither Mr. Nolan nor Mr. Vanore will be involved in "competitive decision making" for a period of two years from the date of this Order. For purposes of this paragraph, "competitive decision making" shall mean participating or advising in any or all of IBC's or Chester County Hospital's decisions made in light of information about a competitor. Both Mr. Nolan and Mr. Vanore shall submit an affidavit within five (5) days from the date of this Order stating that they shall use the highly confidential information in no way other than for purposes of the current litigation.

C.   With regards to the Insurers, their strategic business plans and hospital contracts shall be considered "highly confidential" under the Order;

D.   Material designated as highly confidential by the Insurers may not be disclosed to IBC, orally or otherwise, except under the conditions set forth under paragraph (b) above, irrespective of settlement negotiations;

E.   The protections of Paragraph 10(a) shall apply with equal force to the Insurers, including CIGNA, Aetna, MultiPlan, Coventry and Health Net;

F.   Paragraph 11 of the current protective order, addressing the filing of confidential and highly confidential information under seal, shall apply to any summary judgment motions;

G.   The Insurers shall have the same notice and opportunity to object to the disclosure of confidential and highly confidential information to (1) deponents, (2) pre-trial hearing and trial witnesses, and (3) non-testifying consultants and experts;

H.   Counsel for each party shall maintain a list of all persons to whom any third party confidential or highly confidential information is disclosed and the agreements signed by such persons, and shall provide counsel for a Disclosing Entity upon request with a copy of the list and signed agreements;

I.   In the event that a party objects to an Insurer's good faith designation of confidential or highly confidential information, the procedural burden of moving the Court for relief shall be placed on the

party-litigant;

J.   Any outside counsel to whom an Insurer's highly confidential information is to be disclosed shall be provided with a copy of the Order (as modified), and be advised, and agree, that they are bound by the Order;

K.   The Insurers shall receive forty-eight hours advance notice regarding any subpoenas issued by either party seeking the Insurers' highly confidential information.

L.   No more than six (6) copies shall be made of documents produced by the Insurers without the Insurers' express consent;

M.   At the conclusion of this litigation, the parties shall either destroy or return to the Insurers all documents produced by the Insurers, and confirm in writing that as to those documents the Order has been abided;

N.   Any notices that are to be provided to Aetna under the Order shall be sent via facsimile and 1st Class mail to: James C. Crumlish III, Elliott Reihner Siedzikowski & Egan P.C., 925 Harvest Drive, Suite 300, Blue Bell, PA 19422; Facsimile Number: (215) 977-1099.

2.   Plaintiff's Motion to Compel Return of Confidential Documents Inadvertently Disclosed to Aetna is DENIED AS MOOT;

3.   The aforementioned Motions to Intervene and for Protective Orders filed by the non-party Insurers are DENIED by reason of the relief already afforded by this Order.

It is so ORDERED.

**ENTERED**

JUL - 8 2003

CLERK OF COURT

BY THE COURT:

_____
CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

**EXHIBIT "B"**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL    :    CIVIL ACTION
    :    NO. 02-2746
       v.    :
    :
INDEPENDENCE BLUE CROSS,    :
QCC INSURANCE COMPANY,    :
KEYSTONE HEALTH PLAN EAST, and    :
KEYSTONE MERCY HEALTH PLAN    :

## AFFIDAVIT OF JOSEPH F. NOLAN

Joseph F. Nolan, being duly sworn according to law, deposes and says:

1.    I, Joseph F. Nolan, am currently Vice President Controller of Independence Blue Cross.

2.    I take this affidavit in accordance with the Order of July 7, 2003 of United States Magistrate Judge Charles B. Smith (the "Order").

3.    In accordance with paragraph 10 J of the Protective Order, I agree that to the extent I am given access to any highly confidential information as defined by the Protective Order, I will only use the highly confidential information for purposes of the current litigation.

4.    Further, I am not involved in "competitive decision making" as that term is defined in the Order and I agree not to be involved in participating or advising in any or all of Independence Blue Cross's decisions made in light of the highly confidential information I receive in this litigation about a competitor for a period of 2 years from the date of the Order.

_____
Joseph F. Nolan

July 10, 2003

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHESTER COUNTY HOSPITAL,
          Plaintiff

     VS.

INDEPENDENCE BLUE CROSS, et al.,
          Defendants

NO. 2:02-cv-02746-JRP

**FILED**

JUL 16 2003

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

O R D E R

AND NOW, this *16th* day of *July*, 2003, the Court clarifies its July 7, 2003 Order in this matter as follows:

10(j). The only IBC employee or officer to whom highly confidential information of insurers other than IBC may be disclosed is Joseph Nolan. The only Chester County Hospital employee or officer to whom highly confidential information of insurers other than IBC may be disclosed is Paul Vanore. Neither Mr. Nolan nor Mr. Vanore will be involved in "competitive decision making" for a period of two years from the date of this Order. For purposes of this paragraph, "competitive decision making" shall mean participating or advising in any or all of IBC's or Chester County Hospital's decisions made in light of information about a competitor. Both Mr. Nolan and Mr. Vanore shall submit an affidavit within five (5) days from the date of this Order stating that they shall use the highly confidential information in no way other than for purposes of the current litigation. The restrictions in paragraph 10(b) otherwise remain unchanged.

It is so ORDERED.

BY THE COURT:

**ENTERED**

JUL 16 2003

CLERK OF COURT

_____
CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

**EXHIBIT "C"**

**EXHIBIT "D"**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL          :
                                      :
       v.                             :
                                      :
INDEPENDENCE BLUE CROSS,      **FILED**   CIVIL ACTION NO. 02-CV-2746
QCC INSURANCE COMPANY,
KEYSTONE MERCY HEALTH PLAN

JUN 18 2003

MICHAEL E. KUNZ, Clerk

By _____ Dep. Clerk

Rec'd
~~FILED~~

JUN 16 2003

MICHAEL E. KUNZ, Clerk

By _____ Dep. Clerk

**STIPULATION**

       The recently filed motions listed below are based on substantially identical facts

and issues of law. The parties to this litigation, and the non-parties who filed three of the

below motions (Aetna, CIGNA, and MultiPlan), are attempting to negotiate a resolution

of the motions. To facilitate that negotiation, the parties stipulate that June 23, 2003 shall

be the response date for all the motions. Counsel for Defendants have obtained the

consent of counsel for Aetna, CIGNA and MultiPlan to this extension.

   1. Plaintiff The Chester County Hospital's Motion to Modify the Protective Order

   2. (MultiPlan, Inc.'s) Motion to Intervene and/or Motion for Protective Order and
      Supporting Memorandum

ENTERED

JUN 19 2003

CLERK OF COURT

464418

3. Third Party's (CIGNA's) Objection and Motion for Protective Order and Memorandum in Support

4. Non-Party Aetna Inc.'s Motion to Intervene and for a Protective Order

Lewis R. Olshin
Duane Morris LLP
One Liberty Place, Suite 4200
Suite 4200
Philadelphia, PA 19103-7396
Attorneys for Plaintiff,
The Chester County Hospital

Thomas A. Leonard
Paul S. Diamond
William J. Leonard
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center, 19th Floor
Philadelphia, PA 19103-1895
Attorneys for Defendants,
Independence Blue Cross, QCC Insurance
Company, Keystone Health Plan East,
and Keystone Mercy Health Plan

APPROVED AND SO ORDERED:

_____ J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL                :
                                           :
        v.                                 :
                                           :
INDEPENDENCE BLUE CROSS,                    :     CIVIL ACTION NO. 02-CV-2746
QCC INSURANCE COMPANY,                      :
KEYSTONE MERCY HEALTH PLAN                  :


## CERTIFICATE OF SERVICE

    I hereby certify that I have caused to be served a true and correct copy of the

above Stipulation upon the following counsel via Facsimile and First Class Mail on the

date indicated below:

| | |
|---|---|
| Lewis R. Olshin, Esquire<br>Duane Morris LLP<br>One Liberty Place, Suite 4200<br>Philadelphia, PA 19102 | Christopher T. Koegel, Esquire<br>JONES DAY<br>51 Louisiana Avenue, NW<br>Washington, DC 20001 |
| James C. Crumlish, III, Esquire<br>Elliott Reihner Siedzikowski & Egan, P.C.<br>Union Meeting Corporate Center V<br>P.O. Box 3010<br>925 Harvest Drive<br>Blue Bell, PA 19422 | Brian T. Must, Esquire<br>METZ LEWIS<br>11 Stanwix Street<br>18th Floor<br>Pittsburgh, PA 15222 |

_William K. Pelosi_

William K. Pelosi

Dated:  June 16, 2003

464418

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

CA No.  2:02CV2746

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Defendants' Memorandum In Support of

Magistrate Smith's July 7 and July 16, 2003 Orders Modifying the January 24, 2003 Protective

Order was served, this 29th day of July, 2003 upon each of the parties listed below as follows:

**VIA HAND DELIVERY**
Lewis R. Olshin, Esq.
Duane Morris, LLP
One Liberty Place, Suite 4200
Philadelphia, PA 19103-7396

**VIA FACSIMILE & FEDERAL EXPRESS**
Richard A. Feinstein, Esquire
Daniel A Kotchen, Esq.
Boies, Schiller & Flexner, LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Facsimile No. (202) 237-6131

**VIA HAND DELIVERY**
John M. Elliott, Esquire
James C. Crumlish, III, Esquire
John P. Elliott, Esquire
Elliott Reihner Siedzikowski & Egan, P.C.
Union Meeting Corporate Center V
P.O. Box 3010
925 Harvest Drive
Blue Bell, Pennsylvania 19422

**VIA FACSIMILE & FEDERAL EXPRESS**
Brian T. Must, Esquire
Metz Lewis, LLC
11 Stanwix Street
18th Floor
Pittsburgh, PA 15222
Facsimile No. (412) 918-1199

_____
H. DAVID SEIDMAN

473917