IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

## O R D E R

**AND NOW**, this _____ day of _____, 2003, upon consideration of

Defendants, Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East,

and Keystone Mercy Health Plan's motion to compel Phoenixville Hospital ("Phoenixville") to

produce documents, and any response thereto, it is hereby **ORDERED** and **DECREED** that:

1.  The Motion is **GRANTED.**

2.  Phoenixville shall produce all of the documents requested in Defendants'
    subpoena to Phoenixville, which it has not yet produced, at the offices of
    Obermayer Rebmann Maxwell & Hippel LLP, within ten (10) days of the date of
    this Order.

3.  Phoenixville shall pay to Defendants reasonable attorneys' fees and costs incurred
    in the preparing, filing, and presenting this motion, within ten (10) days of the
    date of this Order.

BY THE COURT:

_____
                                    **J.**

484347

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

## DEFENDANTS' MOTION TO COMPEL PHOENIXVILLE HOSPITAL TO PRODUCE DOCUMENTS

For the reasons set forth in the accompanying memorandum of law, Defendants,

Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East, and Keystone

Mercy Health Plan, submit this motion for an Order compelling Phoenixville Hospital

("Phoenixville") to produce documents.

**WHEREFORE**, Defendants, Independence Blue Cross, QCC Insurance Company, Keystone

Health Plan East, and Keystone Mercy Health Plan, respectfully request that the Court enter an

order compelling Phoenixville: (1) to produce all of the documents requested in defendant's

subpoena to Phoenixville within ten (10) days of the date of this Order; and (2) to pay to

484347

Defendants, within ten (10) days of the date of this Order, reasonable attorneys' fees and costs incurred in the preparing, filing, and presenting this motion.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

BY: _Paul S. Diamond_

THOMAS A. LEONARD
PAUL S. DIAMOND
WILLIAM J. LEONARD
WILLIAM K. PELOSI
H. DAVID SEIDMAN
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
(215) 665-3000

HOWREY SIMON ARNOLD & WHITE LLP

JOHN DeQ BRIGGS
JAMES G. KRESS
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-7015

Attorneys for Defendants,
Independence Blue Cross,
Keystone Health Plan East,
QCC Insurance Company, and
Keystone Mercy Health Plan

Dated: September 30, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL PHOENIXVILLE HOSPITAL TO PRODUCE DOCUMENTS

Defendants, Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East and Keystone Mercy Health Plan (collectively "IBC"), respectfully submit this memorandum of law in support of IBC's motion to compel Phoenixville Hospital ("Phoenixville") to produce documents.

## PRELIMINARY STATEMENT

In this immensely complex antitrust case, Plaintiff, the Chester County Hospital ("CCH"), alleges that IBC has monopoly power in the market for health care insurance in Chester, Delaware, Bucks, Montgomery, and Philadelphia counties (the "Southeastern Pa. Counties"). CCH further alleges that IBC "leverages" this "monopoly power" to gain "monopsony power," by which it "compels" hospitals in the Southeastern Pa. Counties, including CCH, to accept reimbursement rates that are substantially below the competitive levels. (Amended Complaint at ¶ 23.) CCH claims that because IBC "squashed the Hospital's freedom of choice," CCH was forced into contracts with IBC that assured CCH would suffer annual operating losses threatening its existence. (Amended Complaint at ¶¶ 23-28.)    CCH has

484347

further alleged that it suffers this annual operating loss at the hands of IBC despite allegedly having one of the least expensive cost structures of any hospital in the region. (Amended Complaint at ¶ 28.)

IBC has alleged in its Counterclaim that CCH's problems are caused by its own mismanagement, including a misguided twenty million dollar capital expansion project in 2001 for unneeded cardiovascular, obstetrics, and oncology services. CCH also wasted millions of dollars redesigning its Emergency Room facilities. (Counterclaim at ¶¶ 10-20.) As part of IBC's defense and Counterclaim, IBC seeks to show that: (a) many area hospitals are profitable even though their rates are below CCH's because they are better managed; and (b) there has been no material reduction in the output of hospital services. Rather, hospitals throughout the Philadelphia area, including CCH, have been expanding the scope of services offered.

Of the various hospitals with which CCH competes, Phoenixville is potentially significant to this litigation: Phoenixville, like CCH, is a small community acute care hospital located in Chester County.

## IBC'S DISCOVERY REQUESTS ARE RELEVANT TO ITS DEFENSE AND COUNTERCLAIM

It is imperative that IBC discover how comparable hospitals, such as Phoenixville, have prospered under precisely the same circumstances that CCH claims are putting it out of business. Of particular importance are Phoenixville's strategic planning, reimbursement rates, and cost

information.  The following chart shows that all IBC's discovery requests at issue here fall into

one of four categories.

| Request No. | Description | Importance |
|---|---|---|
| 9, 10 | Contracts with other Healthcare Insurers, including reimbursement rates and the related contract negotiation files. | To demonstrate that IBC's rates and approach to contracting with hospitals are competitive and proper. To refute CCH's claim that IBC prevents providers from accepting lower rates from other insurers than IBC, thus artificially inflating the cost of healthcare. |
| 1(d), 2, 3-10 | Utilization, cost, and profitability information respecting Phoenixville and other area hospitals. | Refute CCH's claim that it is one of the region's most efficient providers of hospital services, and that IBC is generally driving hospitals out of business in the Philadelphia Market. |
| 1 (a-c), 2, 8 | Strategic planning information— documents that analyze both Phoenixville's operations or Phoenixville's competitive marketplace. | To prove that CCH has financial difficulties because CCH failed to plan as well as its competitor hospitals.  To prove that other hospitals – including those with reimbursement rates lower than CCH – are profitable and expanding their services. |
| 11 | Funding, participation in, planning for, or assessment of the present litigation | Regional hospitals such as Phoenixville have at least an indirect interest in this litigation.  To the extent the present litigation is the product of a regional strategy to increase hospital reimbursement costs, that fact and any assessments of such a strategy are obviously significant and discoverable. CCH has indicated that it will depose Phoenixville. |

## IBC CANNOT OBTAIN THIS IMPORTANT DISCOVERY
## FROM PHOENIXVILLE WITHOUT THE COURT'S INTERVENTION

IBC issued a subpoena *duces tecum* (the "Subpoena"), almost three months ago, on July 3, 2003 commanding Phoenixville to produce documents on July 18, 2002. (Subpoena attached hereto as Exhibit "A.")  In response to the Subpoena, Phoenixville agreed to produce the requested documents, excluding Phoenixville's contracts with non-party insurers.  (E-mail dated Wednesday, July 19, 2003, attached hereto as Exhibit "B.")  Phoenixville did not object to producing any of the other subpoenaed documents.

On August 22, 2003, IBC received Phoenixville's production.  This production did not include many requested documents – often entire categories of documents – in addition to the non-party insurer documents.   These deficiencies were the subject of multiple conversations with Phoenixville and were ultimately enumerated in a letter dated September 11, 2003.  They are as follows:

(1)     Phoenixville produced a few strategic planning documents, but nowhere near the set of documents demanded.  Notably, it did not produce any plans for 1999-2001 – the critical years during which CCH responded to competition for obstetric, oncology, and cardiac cases with its financially aggressive expansion programs.

(2)     Phoenixville produced a single market share trend report, but provided none of the service line level data that was specifically requested, and that would have been part of Phoenixville's own strategic planning regarding those service lines.  The service lines in question were those involved in CCH's disastrous capital expansion program.

(3)     Phoenixville did not produce any of the requested documents that analyzed how hospitals in the Southeastern Pa Counties were competing and the effect of that competition.

(4)     Phoenixville did not produce the requested executive and summary level financial data.

(5)     Phoenixville did not produce any of the profitability analysis by insurance payor that was requested.

(6)     Phoenixville produced some utilization, patient count, and average length of stay data for the University of Pennsylvania Health System in general, but did not provide this data for *Phoenixville*.  It is the Phoenixville data that was requested, not aggregate University of Pennsylvania Health System data.

(7)     Phoenixville provided cost data for the University of Pennsylvania Health System in general, but not *Phoenixville's* cost data, which is what IBC sought in its subpoena.

(8)     Phoenixville, in response to an earlier subpoena from CCH, produced several thousand pages comprising its files on negotiating provider agreements with IBC, but as stated above, refused to provide the files regarding its negotiations and contracts with non-IBC healthcare insurers.

(Letter attached as Exhibit "C.")

As the Court knows, there has already been extensive litigation - - culminating in the August 19th Amended Protective Order - - to resolve non-party confidentiality issues.  On August 27, 2003, IBC informed Phoenixville of the Amended Protective Order, and urged that Phoenixville should now produce its non-party insurer documents, along with the other documents missing from Phoenixville's initial production.  (Letter attached hereto as Exhibit "D.")   On September 3, 2003, Phoenixville agreed to produce the non-party insurer contracts, and asked that IBC identify the documents Phoenixville had not produced. (September 3, 2003, e-mail, attached hereto as Exhibit "E.")

Even though Phoenixville must have known which documents it did not produce, IBC wrote back identifying the categories of documents with great particularity.  (Exhibit "C.").  On September 15, 2003, Phoenixville responded by stating: "am still working on production. deposition now scheduled.  fuller report tomorrow, i hope." (*sic*) (E-mail attached hereto as Exhibit "F.")

Not having received the promised supplemental production by September 17, 2003, IBC demanded that Phoenixville immediately produce its documents, and stated that unless IBC received the documents at least six days before Phoenixville's deposition (then scheduled for September 25, 2003), Phoenixville's deponent would be required to appear for a second deposition following receipt of those documents.    (E-mail attached hereto as Exhibit "G.")  In response to IBC's September 17, 2003 e-mail, Phoenixville replied, "am still waiting for one last call back and will be in touch after lunch" (*sic*) (E-mail attached hereto as Exhibit "H.") Nevertheless, Phoenixville, again, failed to contact IBC.

Two days later, having still not heard from Phoenixville, IBC telephoned Phoenixville, but the call was not returned.  Instead, Phoenixville responded by e-mail stating, "Hope to have more definitive information to you as to whether there are further responsive documents forthcoming, by late Monday afternoon." (September 19, 2003, e-mail, attached hereto as Exhibit "I.")  No documents arrived on Monday.  The deposition that had been scheduled for September 25 was postponed by CCH on September 22.

On Wednesday, September 24th, Phoenixville stated that it hoped to "resolve any issues" it had with IBC's discovery request, and "to be back to [IBC] late Monday [September 29th]." (September 24, 2003 email attached hereto at Exhibit "J".)   The next day, IBC informed Phoenixville that if its document production was not complete by Monday, September 29th, IBC would move to compel on Tuesday, September 30th. (September 25, 2003 email attached hereto at Exhibit "K".)

After the close of business on September 29th, Phoenixville notified IBC that it would "attempt" to produce documents at some unspecified date. (September 29, 2003 e-mail attached as Exhibit "L.")  To date, Phoenixville has provided IBC with no documents.  IBC believes that

Phoenixville is not acting in good faith, and that without the Court's intervention Phoenixville will continue to produce nothing to IBC.  Accordingly, IBC has moved to compel.

## THE COURT SHOULD COMPEL PHOENIXVILLE HOSPITAL TO PRODUCE THE DOCUMENTS SOUGHT BY IBC

To put it kindly, there is no justification for Phoenixville's failure to produce the documents in question. Phoenixville's sole objection to producing documents applied only to its negotiation files with other insurers.  Phoenixville explicitly acknowledged that the Court's Amended Protective Order resolved that objection, and that it would produce those documents. Phoenixville did not claim that any of the requested documents were privileged.  All Phoenixville has done is repeatedly promise to produce the documents and then fail utterly even to attempt to fulfill those promises.  These actions are certainly without excuse or justification. Therefore, an order to compel is appropriate under Federal Rule of Civil Procedure 45(c), as is an award of reasonable expenses and attorneys' fees under Rule 37(a)(4)(A).

## CONCLUSION

For the foregoing reasons, IBC respectfully requests that the Court grant this motion and compel Phoenixville to produce the documents demanded by IBC's subpoena within ten (10) days of the date of this Order, and direct Phoenixville to pay to IBC, within ten (10) days of the date of this Order, reasonable attorneys' fees and costs incurred in the preparing, filing, and presenting of this motion.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

BY: *Paul S. Diamond*

THOMAS A. LEONARD
PAUL S. DIAMOND
WILLIAM J. LEONARD
WILLIAM K. PELOSI
H. DAVID SEIDMAN
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
(215) 665-3000

HOWREY SIMON ARNOLD & WHITE LLP

JOHN DeQ BRIGGS
JAMES G. KRESS
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-7015

Attorneys for Defendants,
Independence Blue Cross,
Keystone Health Plan East,
QCC Insurance Company, and
Keystone Mercy Health Plan

Dated: September 30, 2003

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

CA No.  2:02CV2746

### CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Defendants' Motion To Compel Phoenixville

Hospital To Produce Documents and Memorandum of Law in support thereof was served, this

30th day of September 2003 as follows:

**VIA HAND DELIVERY**
John M. Myers, Esquire
Montgomery Mccracken Walker & Rhoads
123 S Broad St
Philadelphia, Pa 19109
*Counsel for Phoenixville Hospital*

**VIA HAND DELIVERY**

Lewis R. Olshin, Esq.
Duane Morris, LLP
One Liberty Place, Suite 4200
Philadelphia, PA 19103-7396
*Counsel for Plaintiff,*
*Chester County Hospital*

**VIA FACSIMILE & FEDERAL EXPRESS**

Richard A. Feinstein, Esquire
Daniel A Kotchen, Esq.
Boies, Schiller & Flexner, LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Facsimile No. (202) 237-6131
*Counsel for Plaintiff,*
*Chester County Hospital*

PAUL S. DIAMOND

**EXHIBIT "A"**

AO88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

| EASTERN | DISTRICT OF | PENNSYLVANIA |

THE CHESTER COUNTY HOSPITAL

V.

INDEPENDENCE BLUE CROSS, ET AL.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 02-CV-2746

TO:  CUSTODIAN OF RECORDS
PHOENIXVILLE HOSPITAL
140 Nutt Road
Phoenixville, PA 19460

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED SCHEDULE "A"

| PLACE    OBERMAYER REBMANN MAXWELL & HIPPEL LLP, 1617 JFK Blvd., 19th Floor, Philadelphia, PA 19103 (215) 665-3000 | DATE AND TIME 7/18/2003 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    COUNSEL FOR DEFENDANTS | DATE 7/3/2003 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
H. DAVID SEIDMAN, ESQUIRE, OBERMAYER REBMANN MAXWELL & HIPPEL LLP, 1617 John F. Kennedy Blvd., 19th Floor, Philadelphia, PA 19103 (215) 665-3286

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 7/3/03 | Custodian of Records/Phoenixville Hosp. |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Peggy Reustle | Hand Delivered |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Herman Young | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on  7/3/03
                 DATE

Herman Young
SIGNATURE OF SERVER

2215 Arch St.
ADDRESS OF SERVER

Phila., PA 19103

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

  (1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

  (2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

  (B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

  (3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)  fails to allow reasonable time for compliance,
    (ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

      (iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or
      (iv)  subjects a person to undue burden.

    (B) If a subpoena

      (i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

  (1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

  (2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

## SCHEDULE A

## DESIGNATED DOCUMENTS TO PRODUCE
## FOR INSPECTION AND COPYING

## DEFINITIONS

A. "Phoenixville," or "you," or "your" shall mean the "Phoenixville Hospital," its successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates and any agent or person acting for or on its behalf.

B. "CCH" shall mean Plaintiff, The Chester County Hospital, its, successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates and any agent or person acting for or on its behalf.

C. "IBC" shall mean Defendants, Independence Blue Cross, Keystone Health Plan East, QCC Insurance Company, and/or Keystone Mercy Health Plan, and their agents, successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates.

D. A "Healthcare Insurer" shall mean any business (profit or non-profit) or governmental entity that makes payments for medical services rendered to individuals by medical service providers.

E. "Provider Agreements" shall mean the contracts between IBC and providers of medical services that, in part, set forth the prices that those providers will charge IBC for medical services covered under the IBC members' health benefit plans.

F. "Health Care Insurer Agreements" shall mean the contracts or other arrangements between you and any Health Care Insurer that provide for reimbursements to you for medical services that that you provide to the Health Care Insurer's members

G. "Five County Region" shall refer to the geographic region comprising Bucks County, Chester County, Delaware County, Montgomery County, and Philadelphia County, and any

county in Pennsylvania, Delaware, or New Jersey that shares a border with the above named counties.

H. "Five County Hospitals" shall mean any and/or all acute care hospitals located in Bucks County, Chester County, Delaware County, Montgomery County, and Philadelphia County, and in any county in Pennsylvania, Delaware, or New Jersey that shares a border with the above named counties.

I. "CCH Capital Expansion Projects" shall mean the Chester County Hospital's capital expansion projects, which included: the establishment of the Fern Hill Chester County Hospital Campus for Health and Well-Being; construction of a new maternal/infant health unit; construction and equipment for a new facility for radiation oncology services; renovation and expansion of the emergency department; and establishment of new cardiac services, including interventional cardiology and open heart surgery.

## INSTRUCTIONS

1. To the extent responsive documents are available in an electronic format, they shall be produced in an electronic format.

2. Wherever periodic information is demanded, it should be provided in all available time formats (e.g. monthly in addition to quarterly).

3. When a request asks for documents that "discuss" a given topic, that request is seeking both narrative and, if it exists, numeric information on the topic.

4. In producing the documents requested herein, segregate those documents into separate folders or boxes (as appropriate) numbered to correspond to the requests calling for their production.

5. If you maintain that any document was, but no longer is in existence, in your possession or subject to your control, state whether it (a) is missing or lost, (b) has been destroyed, (c) has been transferred to other persons voluntarily or involuntarily, or (d) has been otherwise disposed of. In each instance set forth the contents of the document, the location of any copies of the document and describe the circumstances surrounding its disposition, starting the date of its disposition, any authorization therefore, the person(s) responsible for such disposition, and the policy, rule, order, or other authority by which such disposition was made.

6.  Along with the response to each numbered document request, identify each person who participated in or supplied information with respect to the preparation of the response to the document request, specifying whether such person supplied relevant information, participated in the preparation of the response, or both. If the response to any document request contains information supplied by more than one person, specify the particular information supplied by each person.

7.  When a complete answer to a particular document request is not possible, the document request must be answered to the extent possible and a statement made indicating why only a partial answer is given and what must occur before a complete answer may be given.

8.  If you object to any portion of a document request, provide all information called for by that portion of the document request to which you do not object.

9.  These document requests shall be deemed continuing, so as to require additional answers if further information is obtained between the time the answers are served and the time of trial. Such additional answers shall be served not later than ten (10) days after such additional information is received or before trial, whichever is earlier.

10. If you withhold any information, including any document or communication, sought by any document request on the basis of a claim of privilege, work product or any reason, you must: (a) state the nature of the privilege claimed or the basis for withholding the information requested and as to the specific information withheld; (b) if pertinent, identify the attorney with respect to whom the privilege is claimed; (c) identify every communication or document which refers or relates to the information; (d) if pertinent, identify each person who heard or may have heard the communication; (e) if pertinent, identify each person who read, received, or possessed the document or a copy of the document; and (f) if pertinent, identify any portion of the document or communication that is not privileged.

11. In construing these definitions, instructions, and document requests:
    a.  The singular shall include the plural and plural shall include the singular.

    b.  A masculine, feminine or neuter pronoun includes the other genders.

    c.  "And" and "or" shall be construed both conjunctively and disjunctively to bring within the scope of the document requests any information which might otherwise be construed to be beyond its scope.

    d.  The past tense includes the present tense where the meaning is not distorted by a change of time.

    e.  All requests for production of anything that falls under the definition of a document, even if not requested using the word "document" (e.g. a request for "feasibility study") shall be constructed to include all drafts to the document. If a time limit accompanies the request (e.g. a request for "all feasibility studies

created before February 1, 2001") all drafts of the study created within the limit must be produced even if the final study was not created until after the time limit.

## TIME PERIOD

Unless otherwise indicated, the time period for these discovery requests is *January 1, 1998 to the present.*

## DOCUMENTS REQUESTED

1. Documents, other than routine administrative billing records, that reflect, refer or relate to Phoenixville's service lines for cardiovascular surgery, obstetrics, emergency services, and oncology, including but not limited to the following:

     a.  market share, annually;

     b.  patient demand for services;

     c.  strategic plans, including any planned, considered, actual, or proposed reduction or expansion in these service lines; and

     d.  financial performance (e.g. internal financial statements or management reports) by service line.

2. Documents that discuss, narratively or through numeric data, the competitive environment for Phoenixville's services, including the actual or potential impact on competition of CCH's Capital Expansion Projects with regard to the financial performance of any of the Five County Hospitals.

3. Documents that discuss, narratively or through numeric data, Phoenixville's costs of charitable services provided by service or procedure type to patients and/or community.

4. Documents comparing any or all hospitals located in the Five County Region, in terms of:

     a.  utilization rates;

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

468705

      b.  costs; and

      c.  operating margins.

5.  All cost and profitability analysis, by DRG and/or service line for inpatient and outpatient

services.

6.  Documents explaining how costs are assigned to each DRG or service line.

7.  All Medicare cost reports.

8.  Documents that reflect, refer or relate to any planned, considered, actual, or proposed

affiliations and/or mergers with any hospital system or network (e.g., The University of

Pennsylvania Health System) or any individual hospital(s) including but not limited to

CCH, or any discussions regarding same.

9.  Documents that discuss, narratively or through numeric data, the reimbursement rates set

forth in, and the profitability of, each of Phoenixville's Health Care Insurer Agreements,

(including but not limited to contracts, summaries and competitive analysis), but not routine

administrative billing records.

10. Documents that discuss, narratively or through numeric data, coverage denials by

Healthcare Insurers and/or associated appeals (including but not limited to contracts,

summaries and analysis), but not routine administrative records.

11. Any documents that refer, reflect or relate to:

      a.  the above captioned lawsuit;

      b.  any potential anti-trust litigation against IBC or any other Healthcare Insurer in

the Five County Region

      c.  the actual or potential funding of any actual or potential litigation against IBC or

any other Healthcare Insurer in the Five County Region.

**EXHIBIT "B"**

-----Original Message-----
**From:** Myers, John [mailto:jmyers@mmwr.com]
**Sent:** Wednesday, July 16, 2003 11:11 AM
**To:** William Leonard; 'Dan Kotchen (E-mail)'; 'sagoldberg@duanemorris.com'
**Cc:** Richman, Jessica
**Subject:** CCH deposition 7/24 #2

Each of you is advised that we will not, in the absence of a specific court order, produce the contracts with other insurers than bcbs. As you know, Aetna has refused permission. It is our position that, if there is one thing that is sure to eliminate competition in this area, it is to give BCBS any access to this information. For this case, these are the national security documents.

------------

As you all know, both sides have issued subpoenas and doc requests for this date, for phoenixville.

By Friday noon, the documents responsive to the bcbs subpoena will be available at my office, under the usual procedure. Bill Leonard has already suggested that this might not be soon enough for him to be prepared for his portion of the deposition.

As a non party here, we are interested in appearing only once. Actually, what I mean is that we will only appear once.

Please confirm by Thursday that the deposition will [or will not] go forward on the 24th, and confirm that the parties have agreed to whatever the plan is.

Thanks.

john
john myers
montgomery mccracken
    walker & rhoads

**EXHIBIT "C"**

LAW OFFICES

# OBERMAYER REBMANN MAXWELL & HIPPEL LLP

ONE PENN CENTER – 19TH FLOOR
1617 JOHN F. KENNEDY BOULEVARD
PHILADELPHIA, PA 19103-1895
(215) 665-3000
FAX (215) 665-3165
www.obermayer.com

*H. David Seidman, Esquire*
*Direct Dial: (215) 665-3286*
*Direct Fax: (215) 665-3018*
*E-mail: david.seidman@obermayer.com*

September 11, 2003

**VIA EMAIL (jmyers@mmwr.com) &**
**FIRST CLASS MAIL**
John M. Myers, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

> Re:    **Chester County Hospital v. Independence Blue Cross et al.**
>          **Case No. 02-CV-2746**

Dear John,

Defendants have reviewed Phoenixville Hospital's ("Phoenixville") production and have identified certain categories of subpoenaed documents that have not been produced. To help Phoenixville identify those categories of documents, Defendants have attached a table setting forth Defendants' requests, the documents Phoenixville produced in response to those requests, and the categories of documents not produced in response to the requests. The table does not include the insurer documents, which were also missing, but which you have agreed to produce now that the Amended Protective Order has been entered. If Phoenixville does not possess any requested category of documents, please indicate this explicitly.

In reviewing the attached table, please keep in mind the information that is essentially being sought. Once sufficient documents have been furnished to fully provide that information, there is no need to produce other documents that are cumulative or redundant. For example once Phoenixville provides a document setting forth its utilization ratio for cardiology services for a given time period, additional documents that provide no responsive information other than a restatement of that ratio need not be produced.

We require Phoenixville to complete its production by September 18, 2003. We further require written confirmation by September 15, 2003 that Phoenixville will produce the requested documents by the above deadline.

Please do not hesitate to call me with any questions.

Very Truly Yours,

/S/

H. DAVID SEIDMAN

HDS:kf

| DOCUMENT REQUEST | PHOENIXVILLE'S RESPONSE | DOCUMENTS TO BE PRODUCED |
|---|---|---|
| Strategic business plans—generally and by service line—and any plans to expand or cut services from 1998 to the present. | Phoenixville produced:<br><br>• "Hospital Strategic Plan FY 2002- FY 2005" (UPHS 03538-UPHS 03662);<br><br>• "Hospital Plan of Strategic Focus for FY 2003-FY 2005" (UPHS 03663-UPHS 03665); and<br><br>• "Summary of Phoenixville Hospital Strategic Plan for FY2002- FY2005, Summary of 1/2002 Presentation (UPHS 03666-UPHS 03678). | • Strategic business plans—generally and by service line—and any plans to expand or cut services from 1998 to 2002, which includes all plans, pro formas, and market analysis for the development and program growth for the following service lines: cardiovascular program; women's health program; cancer center; and orthopedic and physical therapy services -- as referenced in "Phoenixville Hospital Strategic Plan FY 2002- FY 2005" (UPHS 03538-UPHS 03662). |
| Summary level documents sufficient to show market share, from 1998 to the present, for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. | Phoenixville produced:<br><br>• "Market Share Trend Report: 1996 to June 2002: for Phoenixvlle/ Collegeville/Limerick" (UPHS 03827-03828).  (Note: This document only ranks hospital market share in percentages for total hospital services (not broken down by service line) for Phoenixville/Collegeville/Limerick for years 1996 through 2002.) | • Summary level documents sufficient to show market share, from 1998 to the present, for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. |
| Documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. | Phoenixville produced:<br><br>• Various summary level cost containment council data and did not produce any internally generated documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. | • Documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present.<br><br>• All Phoenixville cost containment reports from 1998 to the present, not otherwise produced. |
| Phoenixville's summary and executive level budgets and financial statements, including by department and service line, for each year from 1998 to the present. | • Not produced. | • Phoenixville's summary and executive level budgets and financial statements, including by department and service line, for each year from 1998 to the present. |
| Phoenixville's summary and executive level analysis of profitability by healthcare insurance payor. | • Not produced. | • Phoenixville's summary and executive level analysis of profitability by healthcare insurance payor. |

| DOCUMENT REQUEST | PHOENIXVILLE'S RESPONSE | DOCUMENTS TO BE PRODUCED |
|---|---|---|
| Phoenixville's utilization rates, including by line of service, for each year from 1998 to the present. | Phoenixville produced:<br><br>• various summary level cost containment council data for various years and did not produce any internally generated documents demonstrating its utilization rates, by line of service, for each year from 1998 to the present. | • Phoenixville's utilization rates, including by line of service, for each year from 1998 to the present. |
| Phoenixville's Patient counts including: inpatient admissions, outpatient admissions or visits, births, and patient days, for each year from 1998 to the present. | Phoenixville produced:<br><br>• Phoenixville produced "UPHS Phoenixville Hospital Patient Days and % Occupancy (Staffed & Available Beds) for period ending March 31, 2003 (UPHS 03537). This document contains data related to patient days, but it does not contain data related inpatient admissions, outpatient admissions or visits, or births. | • Your Patient counts including: inpatient admissions, outpatient admissions or visits, births, and patient days, for each year from 1998 to the present. |
| Phoenixville's average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. | Phoenixville produced:<br><br>• various cost containment council data that contained "average length of stay," which was not broken down by service line.<br><br>• University of Pennsylvania Health System Pennsylvania Hospital Averages by DRG FY 01 (UPHS 00297-UPHS 00309) | • Your average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology.<br><br>• NOTE: Phoenixville produced "University of Pennsylvania Health System Pennsylvania Hospital Averages by DRG FY 01" (UPHS 00297-UPHS 00309). This is the ALOS information Defendants request for Phoenixville Hospital (not just Pennsylvania Hospital) for each year from 1998 to the present.) |
| Phoenixville's costs of providing services, including by DRG code, for each year from 1998 to the present. | Phoenixville produced:<br><br>• University of Pennsylvania Health System Pennsylvania Hospital Averages by DRG FY 01 (UPHS 00297-UPHS 00309) (note this is the information we need – for Phoenixville Hospital (not just Pennsylvania Hospital) for each year from 1998 to the present.)<br><br>• various cost containment council data for various years that contained "average charges" for various procedures performed at Phoenixville Hospital. See e.g., "Hospital Performance Report: 21 Common Medical | • Phoenixville's costs of providing services, including by DRG code, for each year from 1998 to the present.<br><br>• NOTE: Phoenixville produced "University of Pennsylvania Health System Pennsylvania Hospital Averages by DRG FY 01" (UPHS 00297-UPHS 00309). This is the cost information Defendants request for Phoenixville Hospital (not just Pennsylvania Hospital) for each |

| DOCUMENT REQUEST | PHOENIXVILLE'S RESPONSE | DOCUMENTS TO BE PRODUCED |
|---|---|---|
| | Procedures and Treatments: Southeastern Pennsylvania (authored by the Pennsylvania Health Care Cost Containment Council) for period 1/1/99 through 12/31/99" (UPHS 00089-UPHS 00120); <br><br> • University of Pennsylvania Health System Pennsylvania Hospital Averages by DRG FY 01 (UPHS 00297-UPHS 00309) | year from 1998 to the present.) Defendants will also need this cost information for outpatient costs of providing services, which is not included in the above report. |
| Phoenixville's costs of providing charitable services to patients for each year from 1998 to the present. | • Phoenixville produced "Phoenixville Hospital Summary of Charity Care and Denials FY 2002 and FY 2003" (UPHS 03536). | • Phoenixville's costs of providing services, including by DRG code, for each year from 1998 to 2001. |

**EXHIBIT "D"**

LAW OFFICES

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

ONE PENN CENTER-19TH FLOOR

1617 JOHN F. KENNEDY BOULEVARD

PHILADELPHIA, PA 19103-1895

(215) 665-3000

FAX (215) 665-3165

H. David Seidman, Esquire
Direct Dial: (215) 665-3286
Direct Fax: (215) 665-3018
E-mail: david.seidman@obermayer.com

August 27, 2003

<u>VIA EMAIL (jmyers@mmwr.com) &</u>
<u>FIRST CLASS MAIL</u>
John M. Myers, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Avenue of the Arts
Philadelphia, PA 19109

> Re:    **The Chester County Hospital v. Independence Blue Cross et al.**
>           **Civil Action No. 02-CV-2746**

Dear John:

I am writing with regard to the document subpoena defendants served on Phoenixville Regional Hospital ("Phoenixville"), in the above-referenced matter. It has been almost two (2) months since defendants served their subpoena on Phoenixville. You are aware that on August 19, 2003, the Court entered its Amended Protective Order, providing extraordinary safeguards for any non-party's confidential information produced in the above referenced litigation. As all of Phoenixville's objections regarding the confidentiality of the subpoenaed documents have been resolved by the Court, there is no longer any credible basis for delaying the production of the subpoenaed documents. Phoenixville should simply mark its production "Non-Party Highly Confidential," and produce the subpoenaed documents immediately.

Furthermore, as you know, this case is largely about hospital reimbursement rates and operating costs. Given plaintiff's allegation that defendants force hospitals in Southeastern Pennsylvania to accept reimbursement rates for medical services that are less than the costs of providing those services, Phoenixville cannot credibly maintain its boilerplate objections to defendants' subpoena. Put simply, all of the categories of documents demanded are essential to defendants' defense in this matter.

As Phoenixville has known since July 3, 2003 that it would eventually have to produce the subpoenaed documents, it is reasonable to expect that those documents would by now be ready for production, and IBC requests that they be produced immediately.

479558

Because of the impending discovery deadline in this case, and the vast amount of deposition discovery awaiting completion of document discovery, we will need to file a motion to compel on or shortly after Wednesday, September 3, 2003, if we do not receive Phoenixville's complete production by that time.

Very truly yours,

H. DAVID SEIDMAN

HDS:kf

cc:    Brian T. Must, Esquire (via email: bmust@metzlewis.com)
       James C. Crumlish, III, Esquire (via email: JCC@erse.com)
       Kevin C. Maclay, Esquire  (via email: kmaclay@jonesday.com)
       Katie A. Gummer, Esquire (via email: kgummer@mccarter.com)
       Lewis R. Olshin, Esquire (via email: olshin@duanemorris.com)
       William J. Leonard, Esquire

479558

**EXHIBIT "E"**

**Seidman, David**

| | |
|---|---|
| **From:** | Myers, John [jmyers@mmwr.com] |
| **Sent:** | Wednesday, September 03, 2003 6:11 PM |
| **To:** | Seidman, David |
| **Subject:** | RE: (CCH V. IBC, ET AL.) IBC DOCUMENT SUBPOENA TO PHOENIXVILLE REGIONAL HOSPITAL (SEE ATTACHED DOCUMENT) |

I am not clear what documents you believe Phoenixville has withheld other than the insurance contracts with providers other than ibc. In light of Judge Padova's order, I have asked that these be supplied to me, and hope to advise of their availability as early as Monday [I will be out of town until then]. If you could be specific as to what you believe, other than this, that Phoenixville has withheld, that would expedite matters.

I will be reachable by email over the next two days, if you believe there are urgent matters.


john myers
montgomery mccracken
    walker & rhoads
123 s broad st
phila pa 19109
(215) 772.7535
fax        7620
jmyers@mmwr.com

**EXHIBIT "F"**

Seidman, David

---

**From:** Myers, John [jmyers@mmwr.com]
**Sent:** Monday, September 15, 2003 5:38 PM
**To:** Seidman, David
**Subject:** RE: (CCH v. IBC, ET AL.) IBC Document Subpoena to Phoenixville Hospital

am still working on production. deposition now scheduled.  fuller report
tomorrow, i hope.

> -----Original Message-----
> From: Seidman, David [mailto:David.seidman@obermayer.com]
> Sent: Thursday, September 11, 2003 5:13 PM
> To: jmyers@mmwr.com
> Subject: (CCH v. IBC, ET AL.) IBC Document Subpoena to Phoenixville Hospital

**EXHIBIT "G"**

Seidman, David

---

| | |
|---|---|
| **From:** | Seidman, David |
| **Sent:** | Wednesday, September 17, 2003 12:23 PM |
| **To:** | 'jmyers@mmwr.com' |
| **Cc:** | 'sagoldberg@duanemorris.com'; 'dkotchen@bsfllp.com' |
| **Subject:** | RE: (CCH v. IBC, ET AL.) IBC Document Subpoena to Phoenixville Hospital |

      I'm writing to follow-up on my voicemail message I left for you yesterday regarding IBC's document subpoena to Phoenixville Hospital. I have not heard back from you. As you know, CCH has scheduled Phoenixville's deposition for next Thursday (September 25, 2003). In order for IBC to take that deposition, and for your client to avoid being deposed a second time, IBC must receive Phoenixville's complete production (as detailed in my September 11, 2003 letter to you) — by this Friday (September 19, 2003).

      Please call me today and confirm that IBC will receive Phoenixville's complete production by this Friday (September 19, 2003).

Sincerely,

David

**EXHIBIT "H"**

**Seidman, David**

| | |
|---|---|
| **From:** | Myers, John [jmyers@mmwr.com] |
| **Sent:** | Wednesday, September 17, 2003 12:35 PM |
| **To:** | Seidman, David |
| **Subject:** | RE: (CCH v. IBC, ET AL.) IBC Document Subpoena to Phoenixville Hospital |

am still waiting for one last call back and will be in touch after lunch

**EXHIBIT "I"**

**Seidman, David**

| | |
|---|---|
| **From:** | Myers, John [jmyers@mmwr.com] |
| **Sent:** | Friday, September 19, 2003 4:20 PM |
| **To:** | 'sagoldberg@duanemorris.com'; Seidman, David |
| **Subject:** | chester co. |

gentlemen:

I hope to have more definitive information to you as to whether there are further responsive documents forthcoming, by late Monday afternoon.

john myers
montgomery mccracken
    walker & rhoads
123 s broad st
phila pa 19109
(215) 772.7535
fax        7620
jmyers@mmwr.com

**EXHIBIT "J"**

Pelosi, William

-----Original Message-----
**From:** Myers, John [mailto:jmyers@mmwr.com]
**Sent:** Wednesday, September 24, 2003 3:44 PM
**To:** Seth Goldberg (E-mail); Seidman, David
**Subject:** chester co. litigation - your indulgences as to UPENN

gents -

Thank you for your indulgences.  This update:  there are internal discussions regarding whether to take categorical or document specific stances with respect to certain documents which have not been produced.  We are attempting to both reduce the pool of documents in this category, and sharpen the issues, in the hopes that then, with the client's consent, we will be able to resolve any issues.

Opaque as this is, I am sure you get the point.  I am currently hoping to be back to you late Monday.

john myers
montgomery mccracken
    walker & rhoads
123 s broad st
phila pa 19109
(215) 772.7535
fax       7620
jmyers@mmwr.com

**EXHIBIT "K"**

-----Original Message-----
**From:** Leonard, William [mailto:William.Leonard@obermayer.com]
**Sent:** Thursday, September 25, 2003 11:04 AM
**To:** jmyers@mmwr.com
**Cc:** Leonard, Thomas; Diamond, Paul
**Subject:** RE: chester co. litigation - your indulgences as to UPENN

Dear John, please be advised that IBC shall file a motion to compel directed against Phoenixville Hospital on Tuesday of next week, if Phoenixville's document production is not complete by the close of business on Monday. Bill Leonard.

**EXHIBIT "L"**

-----Original Message-----
**From:** Myers, John [mailto:jmyers@mmwr.com]
**Sent:** Monday, September 29, 2003 5:19 PM
**To:** Leonard, William
**Cc:** Seth Goldberg (E-mail)
**Subject:** chester co. litigation - munday update as to p'ville

Bill - an update

We (obviously) have not completed the document production.  A final review of a relatively small number of documents is currently underway.  Once it is complete, there will be substantially more documents provided.  However, this last internal review is necessary to the process.  Notwithstanding your message, I hope that ibc will bear with us, as we attempt to conclude the process and get the documents to you.

john