IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

**O R D E R**

**AND NOW**, this _____ day of _____, 2003, upon consideration of

Defendants, Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East,

and Keystone Mercy Health Plan's motion to compel Crozer-Chester Medical Center ("Crozer")

to produce documents, and any response thereto, it is hereby **ORDERED** and **DECREED** that:

1.  The Motion is **GRANTED.**

2.  Crozer shall produce, without objection, all of the documents requested in
    Defendants' subpoena to Crozer, which it has not yet produced, at the offices of
    Obermayer Rebmann Maxwell & Hippel LLP, within ten (10) days of the date of
    this Order.

3.  Crozer shall (a) certify that its production is complete; and (b) certify that it has
    not withheld any responsive documents based on confidentiality or for any other
    reason, within ten (10) days of the date of this Order.

4.  Crozer shall pay to Defendants reasonable attorneys' fees and costs incurred in
    the preparing, filing, and presenting this motion, within ten (10) days of the date
    of this Order.

BY THE COURT:

_____
                                                              **J.**

488673

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

## DEFENDANTS' MOTION TO COMPEL CROZER-CHESTER MEDICAL CENTER TO PRODUCE DOCUMENTS

For the reasons set forth in the accompanying memorandum of law, Defendants,

Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East, and Keystone

Mercy Health Plan, submit this motion for an Order compelling Crozer-Chester Medical Center

("Crozer") to produce documents.

**WHEREFORE**, Defendants, Independence Blue Cross, QCC Insurance Company, Keystone

Health Plan East, and Keystone Mercy Health Plan, respectfully request that the Court enter an

order compelling Crozer: (1) to produce without objection all of the documents requested in

Defendant's subpoena to Crozer, and certify that its production is complete, within ten (10) days

of the date of this Order and (2) to pay to Defendants, within ten (10) days of the date of this

Order, reasonable attorneys' fees and costs incurred in the preparing, filing, and presenting this motion.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

BY: _____

    THOMAS A. LEONARD
    PAUL S. DIAMOND
    WILLIAM J. LEONARD
    WILLIAM K. PELOSI
    H. DAVID SEIDMAN
    One Penn Center, 19th Floor
    1617 John F. Kennedy Boulevard
    Philadelphia, PA  19103
    (215) 665-3000

HOWREY SIMON ARNOLD & WHITE LLP

    JOHN DeQ BRIGGS
    JAMES G. KRESS
    1299 Pennsylvania Avenue, N.W.
    Washington, DC  20004
    (202) 383-7015

    Attorneys for Defendants,
    Independence Blue Cross,
    Keystone Health Plan East,
    QCC Insurance Company, and
    Keystone Mercy Health Plan

Dated: October 27, 2003

488673

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL CROZER-CHESTER MEDICAL CENTER TO PRODUCE DOCUMENTS

Defendants, Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East and Keystone Mercy Health Plan (collectively "IBC"), respectfully submit this memorandum of law in support of IBC's motion to compel Crozer-Chester Medical Center ("Crozer") to produce documents.

## PRELIMINARY STATEMENT

In this immensely complex antitrust case, Plaintiff, the Chester County Hospital ("CCH"), alleges that IBC has monopoly power in the market for health care insurance in Chester, Delaware, Bucks, Montgomery, and Philadelphia counties (the "Southeastern Pa. Counties"). CCH further alleges that IBC "leverages" this "monopoly power" to gain "monopsony power," by which it "compels" hospitals in the Southeastern Pa. Counties, including CCH, to accept reimbursement rates that are substantially below competitive levels. (Amended Complaint at ¶ 23.) CCH claims that these reimbursement rates are less than the costs of providing those services. CCH claims that because IBC "squashed the Hospital's freedom of choice," CCH was

488673

forced into contracts with IBC that assured CCH would suffer annual operating losses threatening its existence. (Amended Complaint at ¶¶ 23-28.)    CCH has further alleged that it suffers this annual operating loss at the hands of IBC despite allegedly having one of the least expensive cost structures of any hospital in the region. (Amended Complaint at ¶ 28.)

IBC has alleged in its Counterclaim that CCH's problems are caused by its own mismanagement, including a misguided twenty million dollar capital expansion project in 2001 for unneeded cardiovascular, obstetrics, and oncology services. CCH also wasted millions of dollars redesigning its Emergency Room facilities. (Counterclaim at ¶¶ 10-20.) As part of IBC's defense and Counterclaim, IBC seeks to show that: (a) many area hospitals are profitable even though their rates are below CCH's because they are better managed; and (b) there has been no material reduction in the output of hospital services. Rather, hospitals throughout the Philadelphia area, including CCH, have been expanding the scope of services offered.

Of the various hospitals with which CCH competes, Crozer is potentially significant to this litigation: Crozer, like CCH, is a community acute care hospital serving Chester County.

## IBC'S DISCOVERY REQUESTS ARE RELEVANT TO ITS DEFENSE AND COUNTERCLAIM

It is imperative that IBC discover how comparable hospitals, such as Crozer, have prospered under precisely the same circumstances that CCH claims are putting it out of business. Of particular importance are Crozer's strategic planning, reimbursement rate, and cost information. The following chart shows that all IBC's discovery requests at issue here fall into one of four categories.

488673

| Request No. | Description | Importance |
|---|---|---|
| 9, 10 | Contracts with other Healthcare Insurers, including the reimbursement rates and documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. | To demonstrate that IBC's rates and approach to contracting with hospitals are competitive and proper. To refute CCH's claim that IBC prevents providers from accepting lower rates from other insurers than IBC, thus artificially inflating the cost of healthcare. |
| 1(d), 2, 3-7 | Utilization, cost, and profitability information respecting Crozer and other area hospitals. | Refute CCH's claim that it is one of the region's most efficient providers of hospital services, and that IBC is generally driving hospitals out of business in the Philadelphia Market. |
| 1 (a-c), 2, 8 | Strategic planning information— documents that analyze both Crozer's operations and Crozer's competitive marketplace. | To prove that CCH has financial difficulties because CCH failed to plan as well as its competitor hospitals. To prove that other hospitals – including those with reimbursement rates lower than CCH – are profitable and expanding their services. |
| 11 | Funding, participation in, planning for, or assessment of the present litigation | Regional hospitals such as Crozer have at least an indirect interest in this litigation. To the extent the present litigation is the product of a regional strategy to increase hospital reimbursement costs, that fact and any assessments of such a strategy are obviously significant and discoverable. CCH has indicated that it will depose Crozer. |

488673

## IBC CANNOT OBTAIN THIS IMPORTANT DISCOVERY
## FROM CROZER WITHOUT THE COURT'S INTERVENTION

IBC issued a subpoena *duces tecum* (the "Subpoena"), over three months ago, on July 3, 2003 commanding Crozer to produce documents on July 18, 2002.  (Subpoena attached as Exhibit "A.")  In response to the Subpoena, Crozer generally objected to the Subpoena on the grounds of overbreadth, ambiguity, undue burden, undue cost, privilege, and confidentiality.  (July 14, 2003 Letter objection attached hereto as Exhibit "B.")  Crozer also objected to the Subpoena as being duplicative of a subpoena issued by Plaintiff to Crozer, in response to which it produced *some* documents.  (July 14, 2003 Letter objection attached hereto as Exhibit "C.")

As the Court knows, there has already been extensive litigation -- culminating in the August 19th Amended Protective Order – to resolve non-party confidentiality issues.  Crozer received a copy of this Court's Amended Protective Order on August 20, 2003.  On August 27, 2003, IBC urged Crozer to produce its non-party insurer documents, along with the other documents requested in the Subpoena, now that the Amended Protective Order had been entered.  (Letter attached hereto as Exhibit "D.")

On August 29, 2003 Crozer responded to IBC's August 27, 2003 letter stating Crozer's "willingness to work with … [IBC] to respond to its reasonable discovery demands," but that Crozer objected to producing documents related to its third-party insurers.  (Letter attached hereto as Exhibit "E.").  Over the next two weeks, Crozer's document production was the subject of multiple conversations and emails between IBC and Crozer.  (Emails attached hereto as Exhibit "F.")  Ultimately, Crozer agreed to produce the requested documents – including its insurer documents – during the week of September 22, 2003.  (See id; e-mails attached as Exhibit "G.")

4

On September 25, 2003 Crozer produced some of the requested documents. This

production, however, did not include, *inter alia*, the non-party insurer documents, which Crozer

had previously agreed to produce. (Exhibit "G"). Crozer now denied that it promised to produce

all of the requested documents and objected to producing its third-party insurer information

stating as follows:

> ... Crozer is in ongoing negotiations of its contracts with IBC, as well as with other
> insurers. Any dissemination of Crozer's highly proprietary rate information would
> potentially undermine its ability to adequately protect and represent its interest in
> these negotiations. In addition, unlike other third-party hospitals that have received
> subpoenas in this matter, there is significant overlap in both the service areas covered
> and services offered by Crozer and plaintiff Chester County Hospital.

(Letter dated September 25, 2003 attached hereto as Exhibit "H."). As Crozer is well aware, this

Court has already addressed Crozer's confidentiality concerns with the Amended Protective

Order. IBC – in accordance with Amended Protective Order – instructed Crozer to mark all of

its documents "Non-Party Highly Confidential." (Letter attached hereto as Exhibit "D.") That

way, only outside counsel, outside counsel's experts, and the Court would have access to

Crozer's highly confidential information. Nevertheless, despite IBC's efforts to amicably obtain

the discovery it needs, Crozer failed to produce the requested documents – instead renewing its

invalid objections on the grounds of "confidentiality." (Exhibit "H.")

In addition to Crozer's failure to produce its non-party insurer documents, it is extremely

likely that Crozer is withholding numerous other documents based on confidentiality. Crozer

announced as much when it stated: "unlike other third-party hospitals that have received

subpoenas in this matter, there is significant overlap in both the service areas covered and

services offered by Crozer and plaintiff Chester County Hospital." (Exhibit "H."). Thus Crozer

suggests that it is withholding other documents (possibly strategic plans) because it does not

want CCH to have access to them – notwithstanding the Amended Protective Order prohibits

5

such access.  Clearly, such documents, relating to competition with Plaintiff, are central to this litigation and must be produced.

Although Crozer produced a number of documents in response to IBC's subpoena, Crozer's production did not include many requested documents – often entire categories of documents – in addition to the non-party insurer documents.   These deficiencies are specifically enumerated in the attached Crozer Deficiency Chart (Exhibit "I").  Generally, the deficiencies are as follows:

(1)     Crozer produced one consolidated strategic planning document for Crozer-Keystone (not Crozer-Chester) for 1999 but did not produce similar strategic plans for any other year.  Moreover, Crozer did not produce any strategic plans for Crozer-Chester.

(2)     Crozer did not produce any documents sufficient to show its market share by service line, for each year from 1998 to the present.

(3)     Crozer did not produce any of its budgets, but rather produced Crozer-Keystone's Operating Budgets.

(4)     Crozer did not produce documents demonstrating the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Five County Region, for each year from 1998 to the present.

(5)     Crozer did not produce documents demonstrating its summary and executive level analysis of profitability by healthcare insurance payor, for each year from 1998 to the present.

(6)     Crozer did not produce documents demonstrating its utilization rates, including by line of service, for each year from 1998 to the present.

(7)     Crozer did not produce documents demonstrating its patient counts including inpatient admissions, outpatient admissions or visits, births, and patient days, for each year from 1998 to 2000, and 2002 to the present.

(8)     Crozer did not produce documents demonstrating its average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology.

(9)     Crozer did not produce documents demonstrating its costs of providing services by DRG code, for each year from 1998 to the present.

488673

(10)    Crozer produced over four hundred pages of documents comprising its contracting files with IBC, but as stated above, refused to provide the files regarding its contracts with non-IBC healthcare insurers.

IBC believes that Crozer is not acting in good faith, and that without the Court's intervention, Crozer will not produce the requested documents to IBC. Accordingly, IBC has moved to compel.

## GAMESMANSHIP DESIGNED TO FRUSTRATE IBC'S DEPOSITION DISCOVERY

Crozer's actions are especially insidious because, at the same time, Crozer refused to produce important documents to IBC, Crozer and CCH scheduled Crozer's Rule 30(b)(6) deposition – on only one-week's notice without consulting IBC. (Subpoena providing notice of deposition and responsive letter attached as Exhibits "J" and "K.")  Plainly, CCH and Crozer hoped that the deposition would take place before IBC obtained documents that would figure prominently in the deposition. These unfortunate tactics make the Court's intervention even more necessary.

## THE COURT SHOULD COMPEL CROZER-CHESTER MEDICAL CENTER TO PRODUCE THE DOCUMENTS SOUGHT BY IBC

To put it kindly, there is no justification for Crozer's failure to produce the documents in question. Crozer's objection to producing its insurer files was resolved by this Court with its Amended Protective Order. Furthermore, Crozer promised to produce the above referenced documents and then reneged – without justification – on that promise. Despite months of correspondence and numerous phone conversations with Crozer's counsel, IBC's attempt to obtain the requested documents without court intervention proved futile. Therefore, an order to compel is appropriate under Federal Rule of Civil Procedure 45(c), as is an award of reasonable expenses and attorneys' fees under Rule 37(a)(4)(A).

7

## CONCLUSION

For the foregoing reasons, IBC respectfully requests that the Court grant this motion and compel Crozer to produce without objection the documents demanded by IBC's subpoena, and certify that its production is complete, within ten (10) days of the date of this Order, and direct Crozer to pay to IBC, within ten (10) days of the date of this Order, reasonable attorneys' fees and costs incurred in the preparing, filing, and presenting of this motion.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

BY: _____

THOMAS A. LEONARD
PAUL S. DIAMOND
WILLIAM J. LEONARD
WILLIAM K. PELOSI
H. DAVID SEIDMAN
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103
(215) 665-3000

HOWREY SIMON ARNOLD & WHITE LLP

JOHN DeQ BRIGGS
JAMES G. KRESS
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 383-7015

Attorneys for Defendants,
Independence Blue Cross,
Keystone Health Plan East,
QCC Insurance Company, and
Keystone Mercy Health Plan

Dated: October 27, 2003

8

**Exhibit A**

AO88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

_____EASTERN_____    DISTRICT OF    _____PENNSYLVANIA_____

THE CHESTER COUNTY HOSPITAL

V.

**SUBPOENA IN A CIVIL CASE**

INDEPENDENCE BLUE CROSS, ET AL.

Case Number:[1]  02-CV-2746

TO:  CUSTODIAN OF RECORDS
CROZER CHESTER MEDICAL CENTER
One Medical Center Blvd.
Upland, PA 19013

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED SCHEDULE "A"

| PLACE    OBERMAYER REBMANN MAXWELL & HIPPEL LLP, 1617 JFK Blvd., 19th Floor, Philadelphia, PA 19103 (215) 665-3000 | DATE AND TIME    7/18/2003  9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    COUNSEL FOR DEFENDANTS | DATE    7/3/2003 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
H. DAVID SEIDMAN, ESQUIRE, OBERMAYER REBMANN MAXWELL & HIPPEL LLP, 1617 John F. Kennedy Blvd., 19th Floor, Philadelphia, PA 19103 (215) 665-3286

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
             DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

## SCHEDULE A

## DESIGNATED DOCUMENTS TO PRODUCE
## FOR INSPECTION AND COPYING

## DEFINITIONS

A.  "Crozer," or "you," or "your" shall mean the "Crozer-Chester Medical Center," its successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates and any agent or person acting for or on its behalf.

B.  "CCH" shall mean Plaintiff, The Chester County Hospital, its, successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates and any agent or person acting for or on its behalf.

C.  "IBC" shall mean Defendants, Independence Blue Cross, Keystone Health Plan East, QCC Insurance Company, and/or Keystone Mercy Health Plan, and their agents, successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates.

D.  A "Healthcare Insurer" shall mean any business (profit or non-profit) or governmental entity that makes payments for medical services rendered to individuals by medical service providers.

E.  "Provider Agreements" shall mean the contracts between IBC and providers of medical services that, in part, set forth the prices that those providers will charge IBC for medical services covered under the IBC members' health benefit plans.

F.  "Health Care Insurer Agreements" shall mean the contracts or other arrangements between you and any Health Care Insurer that provide for reimbursements to you for medical services that that you provide to the Health Care Insurer's members

G.  "Five County Region" shall refer to the geographic region comprising Bucks County, Chester County, Delaware County, Montgomery County, and Philadelphia County, and any

county in Pennsylvania, Delaware, or New Jersey that shares a border with the above named counties.

      H. "Five County Hospitals" shall mean any and/or all acute care hospitals located in Bucks County, Chester County, Delaware County, Montgomery County, and Philadelphia County, and in any county in Pennsylvania, Delaware, or New Jersey that shares a border with the above named counties.

      I. "CCH Capital Expansion Projects" shall mean the Chester County Hospital's capital expansion projects, which included: the establishment of the Fern Hill Chester County Hospital Campus for Health and Well-Being; construction of a new maternal/infant health unit; construction and equipment for a new facility for radiation oncology services; renovation and expansion of the emergency department; and establishment of new cardiac services, including interventional cardiology and open heart surgery.

## INSTRUCTIONS

1. To the extent responsive documents are available in an electronic format, they shall be produced in an electronic format.

2. Wherever periodic information is demanded, it should be provided in all available time formats (e.g. monthly in addition to quarterly).

3. When a request asks for documents that "discuss" a given topic, that request is seeking both narrative and, if it exists, numeric information on the topic.

4. In producing the documents requested herein, segregate those documents into separate folders or boxes (as appropriate) numbered to correspond to the requests calling for their production.

5. If you maintain that any document was, but no longer is in existence, in your possession or subject to your control, state whether it (a) is missing or lost, (b) has been destroyed, (c) has been transferred to other persons voluntarily or involuntarily, or (d) has been otherwise disposed of.  In each instance set forth the contents of the document, the location of any copies of the document and describe the circumstances surrounding its disposition, starting the date of its disposition, any authorization therefore, the person(s) responsible for such disposition, and the policy, rule, order, or other authority by which such disposition was made.

6.  Along with the response to each numbered document request, identify each person who participated in or supplied information with respect to the preparation of the response to the document request, specifying whether such person supplied relevant information, participated in the preparation of the response, or both. If the response to any document request contains information supplied by more than one person, specify the particular information supplied by each person.

7.  When a complete answer to a particular document request is not possible, the document request must be answered to the extent possible and a statement made indicating why only a partial answer is given and what must occur before a complete answer may be given.

8.  If you object to any portion of a document request, provide all information called for by that portion of the document request to which you do not object.

9.  These document requests shall be deemed continuing, so as to require additional answers if further information is obtained between the time the answers are served and the time of trial. Such additional answers shall be served not later than ten (10) days after such additional information is received or before trial, whichever is earlier.

10. If you withhold any information, including any document or communication, sought by any document request on the basis of a claim of privilege, work product or any reason, you must: (a) state the nature of the privilege claimed or the basis for withholding the information requested and as to the specific information withheld; (b) if pertinent, identify the attorney with respect to whom the privilege is claimed; (c) identify every communication or document which refers or relates to the information; (d) if pertinent, identify each person who heard or may have heard the communication; (e) if pertinent, identify each person who read, received, or possessed the document or a copy of the document; and (f) if pertinent, identify any portion of the document or communication that is not privileged.

11. In construing these definitions, instructions, and document requests:
    a.  The singular shall include the plural and plural shall include the singular.

    b.  A masculine, feminine or neuter pronoun includes the other genders.

    c.  "And" and "or" shall be construed both conjunctively and disjunctively to bring within the scope of the document requests any information which might otherwise be construed to be beyond its scope.

    d.  The past tense includes the present tense where the meaning is not distorted by a change of time.

    e.  All requests for production of anything that falls under the definition of a document, even if not requested using the word "document" (e.g. a request for "feasibility study") shall be constructed to include all drafts to the document. If a time limit accompanies the request (e.g. a request for "all feasibility studies

created before February 1, 2001") all drafts of the study created within the limit must be produced even if the final study was not created until after the time limit.

## TIME PERIOD

Unless otherwise indicated, the time period for these discovery requests is *January 1, 1998 to the present.*

## DOCUMENTS REQUESTED

1. Documents, other than routine administrative billing records, that reflect, refer or relate to Crozer's service lines for cardiovascular surgery, obstetrics, emergency services, and oncology, including but not limited to the following:

    a. market share, annually;

    b. patient demand for services;

    c. strategic plans, including any planned, considered, actual, or proposed reduction or expansion in these service lines; and

    d. financial performance (e.g. internal financial statements or management reports) by service line.

2. Documents that discuss, narratively or through numeric data, the competitive environment for Crozer's services, including the actual or potential impact on competition of CCH's Capital Expansion Projects with regard to the financial performance of any of the Five County Hospitals.

3. Documents that discuss, narratively or through numeric data, Crozer's costs of charitable services provided by service or procedure type to patients and/or community.

4. Documents comparing any or all hospitals located in the Five County Region, in terms of:

    a. utilization rates;

      b.  costs; and

      c.  operating margins.

5.  All cost and profitability analysis, by DRG and/or service line for inpatient and outpatient services.

6.  Documents explaining how costs are assigned to each DRG or service line.

7.  All Medicare cost reports.

8.  Documents that reflect, refer or relate to any planned, considered, actual, or proposed affiliations and/or mergers with any hospital system or network (e.g., Crozer-Keystone Health System) or any individual hospital(s) including but not limited to CCH, or any discussions regarding same.

9.  Documents that discuss, narratively or through numeric data, the reimbursement rates set forth in, and the profitability of, each of Crozer's Health Care Insurer Agreements, (including but not limited to contracts, summaries and competitive analysis), but not routine administrative billing records.

10. Documents that discuss, narratively or through numeric data, coverage denials by Healthcare Insurers and/or associated appeals (including but not limited to contracts, summaries and analysis), but not routine administrative records.

11. Any documents that refer, reflect or relate to:

      a.  the above captioned lawsuit;

      b.  any potential anti-trust litigation against IBC or any other Healthcare Insurer in the Five County Region

      c.  the actual or potential funding of any actual or potential litigation against IBC or any other Healthcare Insurer in the Five County Region.

**Exhibit B**

PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
LAS VEGAS
LONDON
LOS ANGELES



**COZEN**

**O'CONNOR**

ATTORNEYS

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
WASHINGTON, DC
WEST CONSHOHOCKEN
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

**Linda J. Cohen**

Direct Phone 215.665.2016
Direct Fax   215.701.2016
LCOHEN@COZEN.COM

July 14, 2003

**VIA FACSIMILE (215) 665-3018**

H. David Seidman, Esq.
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center - 19th floor
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895

> Re:   **The Chester County Hospital v. Independence Blue Cross, et al.**
>       **IBC Subpoena** *Duces Tecum* **to Crozer Chester Medical Center**

Dear Mr. Seidman:

As you know, we represent Crozer Chester Medical Center ("Crozer"). I received a copy of your subpoena *duces tecum* dated July 3, 2003 to Crozer in the above referenced matter.

Pursuant to Fed.R.Civ.P. 45(c)(2)(B), Crozer objects to the subpoena as: overly broad; vague; ambiguous; unduly burdensome; unnecessarily costly; calling for production of materials that are equally available to IBC through public records and sources; duplicative of discovery propounded by the Chester County Hospital and already provided by Crozer; calling for the production of privileged materials; calling for the production of materials protected as confidential research, development and commercial information; calling for production of irrelevant materials and/or materials not reasonably calculated to lead to the discovery of admissible evidence; and calling for the production of materials subject to confidentiality agreements.

As you are aware, Crozer is not a party to this case. Nonetheless, Crozer has already incurred substantial expenses responding to a document subpoena from The Chester County Hospital. Further, a corporate designee of Crozer has been noticed for a deposition by both IBC and The Chester County Hospital. As such, Crozer has been forced to expend substantial employee time and incurred significant expenses in attorneys' fees and document reproduction.

PHILA1\1878935\1 138775.000

H. David Seidman, Esq.
July 11, 2003
Page 2

In light of these factors, we seek to amicably resolve these issues to allow IBC to obtain proper information without compromising Crozer's confidential information or unduly burdening the institution.

Subject to the foregoing objections, and without waiver thereof, Crozer would like to explore the possibility of achieving an amicable resolution of the objections in order to conserve resources. I look forward to discussing these issues with you.

Sincerely,

COZEN O'CONNOR

By:     Linda J. Cohen

LJC/pma

cc:     Salvatore G. Rotella, Jr., Esq.

**Exhibit C**

PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
LAS VEGAS
LONDON
LOS ANGELES



**COZEN
O'CONNOR**
ATTORNEYS

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
WASHINGTON, DC
WEST CONSHOHOCKEN
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET     PHILADELPHIA, PA 19103-3508     215.665.2000     800.523.2900     215.665.2013 FAX     www.cozen.com

**Linda J. Cohen**

Direct Phone 215.665.2016
Direct Fax    215.701.2016
LCOHEN@COZEN.COM

July 14, 2003

**VIA FACSIMILE**

H. David Seidman, Esq.                    Seth A. Goldberg, Esq.
Obermayer Rebmann Maxwell & Hippel LLP    Duane Morris, LLP
One Penn Center - 19th floor              One Liberty Place
1617 John F. Kennedy Blvd.                Philadelphia, PA 19103-7396
Philadelphia, PA 19103-1895

Re:    **The Chester County Hospital v. Independence Blue Cross, et al.**
       **IBC Subpoena *Duces Tecum* to Crozer Chester Medical Center**

Dear Mr. Seidman and Mr. Goldberg:

I write with reference to the Subpoena *Duces Tecum* served by IBC on my client, Crozer Chester Medical Center ("Crozer"). The Subpoena is, in many respects, duplicative of the subpoena served by the Chester County Hospital to which Crozer has already responded.

By way of example, and without waiver of any applicable objections, IBC's subpoena requests at item 3, documents relating to Crozer's costs of charitable services provided by service or procedure type to patients and/or community. The Chester County Hospital's subpoena requests, at item 11 documents relating to procedures performed on a charitable basis. By way of additional example, IBC's subpoena requests, at item 1c, documents relating to any reduction or expansion of specific service lines while The Chester County Hospital's subpoena requested the same documents (although not related only to specified service lines) at item 19. C

As you are aware, it is incumbent on the parties, when seeking discovery of third parties, to make the process as minimally intrusive and unburdensome as possible both in terms of costs and effort. Toward that end, on behalf of Crozer, I am requesting that you confer regarding what item requested in IBC's subpoena are duplicative and agree to remove those items from the requested production. To the extent that, after you reach an agreement, Crozer still believes that

H. David Seidman, Esq.
Seth A. Goldberg, Esq.
July 14, 2003
Page 2

---

duplicative discovery is being requested, we reserve the right to object or take other protective action as may be appropriate.

Thank you in advance for your consideration and cooperation.

Sincerely,

COZEN O'CONNOR

By:    Linda J. Cohen

LJC/dm

cc:    Salvatore G. Rotella, Jr., Esq.

**Exhibit D**

LAW OFFICES

# OBERMAYER REBMANN MAXWELL & HIPPEL LLP

ONE PENN CENTER-19TH FLOOR

1617 JOHN F. KENNEDY BOULEVARD

PHILADELPHIA, PA 19103-1895

(215) 665-3000

FAX (215) 665-3165

H. David Seidman, Esquire
Direct Dial: (215) 665-3286
Direct Fax: (215) 665-3018
E-mail: david.seidman@obermayer.com

August 27, 2003

**VIA EMAIL (srotella@cozen.com) &**
**FIRST CLASS MAIL**
Salvatore G. Rotella Jr., Esquire
Cozen & O'Connor
1900 Market Street
Philadelphia PA, 19103

Re:     The Chester County Hospital v. Independence Blue Cross et al.
        Civil Action No. 02-CV-2746

Dear Sal:

I am writing to follow-up on our phone conversation yesterday regarding the document subpoenas defendants served on Paoli Memorial Hospital and Crozer-Chester Medical Center (the "Hospitals"), in the above-referenced matter. As we discussed, it has been almost two (2) months since we served our subpoenas on the Hospitals. You are aware that on August 19, 2003, the Court entered its Amended Protective Order, providing extraordinary safeguards for any non-party's confidential information produced in the above referenced litigation. As all of the Hospitals' objections regarding the confidentiality of the subpoenaed documents have been resolved by the Court, there is no longer any credible basis for delaying the production of the subpoenaed documents. The Hospitals should simply mark their production "Non-Party Highly Confidential," and produce the subpoenaed documents immediately.

Furthermore, as you know, this case is largely about hospital reimbursement rates and operating costs. Given plaintiff's allegation that defendants force hospitals in Southeastern Pennsylvania to accept reimbursement rates for medical services that are less than the costs of providing those services, the Hospitals cannot credibly maintain their boilerplate objections to defendants' subpoena. Put simply, all of the categories of documents demanded are essential to defendants' defense in this matter.

As the Hospitals have known since July 3, 2003 that they would eventually have to produce the subpoenaed documents, it is reasonable to expect that those documents would by now be ready for production, and defendants request that they be produced immediately.

479554

Because of the impending discovery deadline in this case, and the vast amount of deposition discovery awaiting completion of document discovery, we will need to file motions to compel on or shortly after Wednesday, September 3, 2003, if we do not receive the Hospitals' complete productions by that time.  Should you have any questions, please do not hesitate to call me.

Very truly yours,

H. DAVID SEIDMAN

HDS:kf

cc:    Brian T. Must, Esquire (via email: bmust@metzlewis.com)
      James C. Crumlish, III, Esquire (via email: JCC@erse.com)
      Kevin C. Maclay, Esquire  (via email: kmaclay@jonesday.com)
      Katie A. Gummer, Esquire (via email: kgummer@mccarter.com)
      Lewis R. Olshin, Esquire (via email: olshin@duanemorris.com)
      William J. Leonard, Esquire

479554

**Exhibit E**

PHILADELPHIA                                                                          NEW YORK
ATLANTA                                                                               NEWARK
CHARLOTTE                                                                             SAN DIEGO
CHERRY HILL                                                       SAN FRANCISCO
CHICAGO                                  COZEN                                        SEATTLE
DALLAS                                 O'CONNOR                                       TRENTON
LAS VEGAS                                                                             WASHINGTON, DC
LONDON                                  ATTORNEYS                                     WEST CONSHOHOCKEN
LOS ANGELES                                                                           WICHITA
                                                                                      WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

Linda J. Cohen

Direct Phone 215.665.2016
Direct Fax    215.701.2016
LCOHEN@COZEN.COM

August 29, 2003

VIA FACSIMILE AND U.S. MAIL

H. David Seidman, Esq.
Obermayer Rebman Maxwell & Hippel, LLP
One Penn Center, 19th Floor
1817 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895

Re:    **Crozer-Chester Medical Center - Subpoena *Duces Tecum* Served by The
       Chester County Hospital; The Chester County Hospital v. Independence
       Blue Cross, et al., Civil Action No. 02-CV-2746, Eastern District of
       Pennsylvania**

Dear Mr. Seidman:

This is in response to your letter of August 27, 2003 to my colleague Salvatore G.
Rotella, Jr. regarding the above-referenced matter. I have chosen to respond because your letter
raises substantive issues and Sal has only recently begun working with me on this matter. While
I do not wish to start a chain of argumentative letters between us, in light of your stated intention
to engage in motion practice, I feel compelled to write to clarify our client's position and the
relevant facts.

First and foremost, Crozer-Chester Medical Center ("Crozer" or "the hospital") continues
its willingness to work with the parties to respond to their reasonable discovery demands in this
matter. As you know, the hospital has already produced a significant number of documents in
response to a subpoena by Chester County Hospital ("CCH"), and made those documents
available for your review in early June 2003 prior to production to CCH. The hospital made
clear in connection with that initial production that it would be unable to produce certain
documents relating to third-party insurers, if it had any such documents, because of
confidentiality agreements with those insurers. The eleven requests in your subpoena of July 3,

H. David Seidman, Esq.
August 29, 2003
Page 2

2003 seek a broad range of materials, including this category of third-party insurer documents. By letter of July 11, 2003, we objected to your subpoena to the extent it calls for such insurer documents, on the ground that it is duplicative of the CCH subpoena, and on various other grounds. Although you have represented that you do not wish to unduly burden Crozer, you have to date not agreed to narrow your subpoena in any meaningful way.

We first learned by letter of August 20, 2003 -- from counsel for CCH -- that the Protective Order had been amended in this matter so as potentially to enable the hospital to produce the third-party insurer documents. You have now informed us, only seven days later, that you intend to file a motion to compel next week, immediately following Labor Day and several weeks in advance of the October 1, 2003 discovery deadline that we understand has been set in this matter. While we recognize your prerogative to file such a motion, we believe that doing so under these circumstances would be both premature and counter-productive.

We are in the process of consulting with our client to determine whether the hospital has documents responsive to your subpoena of July 3 that it has not already produced in response to the CCH subpoena, that are not covered by an applicable privilege, and for which the Amended Protective Order provides sufficient protection with respect to confidential information. We expect that these efforts may take a few additional days, given the time of year, the upcoming holiday weekend, and the fact that Crozer is currently changing personnel within its inhouse legal department. With respect to the documents relating to third-party insurers in particular, IBC will be able to secure many of the same documents (if it has not already done so) directly from those insurers. We will inform you once we have identified and prepared for production the hospital's responsive, nonprivileged, nonduplicative documents, if any, subject to the objections that have been interposed.

Please contact me if you have any questions, wish to discuss a timetable for our production, or still intend to file a motion to compel.

Sincerely,
COZEN O'CONNOR

By:    Linda J. Cohen

LJC/pma

cc:    Salvatore G. Rotella, Jr., Esq.

**Exhibit F**

From: Seidman, David
Sent: Wednesday, September 17, 2003 5:59 PM
To: 'Rotella, Jr., Salvatore G.'
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

      Sal,

      This will confirm our phone conversation tonight that IBC will receive Paoli Hospital and Crozer-Chester Hospital's documents mid next week.

      In addition, Mainline Health System has withdrawn its objection to Katz Consulting producing reports / documents for Paoli Hospital and Bryn Mawr Hospital in response to IBC's subpoena to Katz.  Furthermore, you have requested that Health Strategies and Solutions ("HSS") forward the reports it prepared for Crozer-Chester Hospital, so that you may review the documents and assess whether Crozer-Chester still objects to HSS producing these documents. Please let me know by Friday whether Crozer-Chester will withdraw its objection to HSS.

Thank you Sal,

David

-----Original Message-----
From: Rotella, Jr., Salvatore G. [mailto:SRotella@cozen.com]
Sent: Tuesday, September 16, 2003 7:11 PM
To: Seidman, David
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

David:

I was unable to get updates with respect to Paoli and Crozer today, although I know staff at both have been reviewing potentially responsive documents.  I will try both to get a status for you and speak with Stephen Goldblum tomorrow.

Sal

-----Original Message-----
From: Seidman, David
Sent: Tuesday, September 16, 2003 4:02 PM
To: 'Rotella, Jr., Salvatore G.'
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

Sal,

Thank you for the Grand View production update.  I need to follow-up on your waiver request regarding Stuart Fine's deposition, but I do not foresee a problem.  I'll call you as soon as possible to confirm.

As for Paoli and Crozer-Chester, do you have a timetable for their production?  Additionally, Katz Consulting is withholding reports performed for Paoli Hospital and Bryn Mawr Hospital – based on Linda's objections.  Please call Katz's counsel, Stephen C. Goldblum, to withdraw the hospitals' objections. I've attached his contact information.

Thanks Sal,

David

-----Original Message-----
From: Rotella, Jr., Salvatore G. [mailto:SRotella@cozen.com]
Sent: Tuesday, September 16, 2003 2:59 PM
To: Seidman, David
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

David:

We are preparing for production Grand View Hospital's responsive documents and intend to provide them to you within the next day or two.

The attorneys for Chester County Hospital have informed us that they intend to depose Stuart Fine, Grand View's CEO.  We assume that you will seek to question Mr. Fine at that same deposition and will coordinate with Chester County as to the deposition's date.  Further, in accordance with your conversations with Linda Cohen, we ask that you agree to interpose (or waive)any and all objections to Mr. Fine's testimony arising from the settlement of the defamation action brought by IBC against Mr. Fine and Grand View.  If you are not willing to so agree, we will instruct Mr. Fine not to answer any questions that might expose him or the hospital to a claim that either has breached the Settlement Agreement.

Sal

-----Original Message-----
From: Seidman, David
Sent: Monday, September 15, 2003 5:57 PM
To: 'Rotella, Jr., Salvatore G.'
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

Thank you Sal.

-----Original Message-----
From: Rotella, Jr., Salvatore G. [mailto:SRotella@cozen.com]
Sent: Monday, September 15, 2003 5:53 PM
To: Seidman, David
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

I will provide you with an update tomorrow.

-----Original Message-----
From: Seidman, David
Sent: Monday, September 15, 2003 5:30 PM
To: 'Rotella, Jr., Salvatore G.'
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

Sal,

When we spoke over two weeks ago, you believed that Paoli and Crozer-Chester's documents would be available in seven to ten days (i.e., the end of last week), and that Grandview's production would take a little more time, as your Grandview contact was more difficult to reach. I appreciate your efforts, but at this point, I need an actual timeframe as to when I can expect the hospitals' documents.

Sincerely,

David

-----Original Message-----
From: Rotella, Jr., Salvatore G. [mailto:SRotella@cozen.com]
Sent: Monday, September 15, 2003 5:00 PM
To: Seidman, David
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

David:

We are continuing to work with all three of our clients to identify responsive documents for possible production.  I have confirmed that Crozer-Chester, for which Health Strategies prepared a report, is reviewing a copy of that report for possible production -- that is, to determine whether Crozer will withdraw its previous objection.

Sal

Salvatore G. Rotella, Jr., Esq.*
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103-3508
(215) 665-3729 (phone)
(215) 701-2129 (fax)
srotella@cozen.com

*Admitted to practice in the District of Columbia only

-----Original Message-----
From:      Seidman, David
Sent:      Monday, September 15, 2003 12:01 PM
To:        'Salvatore G. Rotella Jr., Esquire'
Cc:        'Linda J. Cohen, Esquire'
Subject:   (CCH v. IBC, ET AL.)  Discovery Status  -- Paoli, Crozer-Chester, and Grandview ...

Hi Sal,

Any update on your timetable to produce the Paoli, Crozer-Chester, and Grandview documents? Additionally, do you know the status of the documents Health Strategies & Solutions was withholding based on your hospitals' objections?

Sincerely,

David

**Exhibit G**

**Seidman, David**

| | |
|---|---|
| **From:** | Seidman, David |
| **Sent:** | Thursday, September 25, 2003 6:05 PM |
| **To:** | 'SRotella@cozen.com' |
| **Cc:** | Linda J. Cohen Esquire (E-mail) |
| **Subject:** | RE: CCH v. IBC |

Sal,

I am sorry that your prior commitment to produce the insurer documents for Crozer-Chester and Paoli has now caused you embarrassment. You have left us with no choice but to file motions to compel.

David

-----Original Message-----

| | |
|---|---|
| **From:** | Rotella, Jr., Salvatore G. [mailto:SRotella@cozen.com] |
| **Sent:** | Thursday, September 25, 2003 4:37 PM |
| **To:** | Seidman, David |
| **Cc:** | Cohen, Linda J.; Gallant, Mark H. |
| **Subject:** | CCH v. IBC |

David:

I am writing to follow up on our phone conversation of earlier today. I understand your disappointment at not receiving insurance rate information from Crozer-Chester Medical Center, especially in light of the ongoing disputes that I understand may be preventing you from obtaining that same information from at least some of the insurance companies directly. I am surprised and disappointed, however, especially given the professional nature of our interactions to date, at your suggestion that I previously represented to you that you would be receiving such information from Crozer. I never made any such representation.

As you know, I have been assisting Mark Gallant and Linda Cohen for the past several weeks in my firm's representation of Crozer, Paoli Memorial Hospital, and Grand View Hospital in connection with the subpoenas these hospitals have received in this matter. You and I have discussed on several occasions the logistics of these hospitals' responses, which, as you know, might be in the form of documents and/or objections to production. Any document productions the hospitals have made thus far, moreover, they have made with specific reservation of any objections.

As I mentioned to you over the phone, I appreciate that you have worked with us to allow adequate time for the hospitals to provide their responses. I also appreciate your right to contest the merits of Crozer's decision not to produce the rate information. Again, however, I did not make any representations as to the specific documents Crozer might or might not ultimately provide to you.

Sal

Salvatore G. Rotella, Jr., Esq.*
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103-3508
(215) 665-3729 (phone)
(215) 701-2129 (fax)
srotella@cozen.com

*Admitted to practice in the District of Columbia only

**Exhibit H**



PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
LAS VEGAS
LONDON
LOS ANGELES

**COZEN O'CONNOR**
ATTORNEYS

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
WASHINGTON, DC
WEST CONSHOHOCKEN
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET   PHILADELPHIA, PA 19103-3508   215.665.2000   800.523.2900   215.665.2013 FAX   www.cozen.com

Linda J. Cohen

Direct Phone 215.665.2016
Direct Fax   215.701.2016
**LCOHEN@COZEN.COM**

September 25, 2003

RECEIVED

SEP 2 5 2003

HDS

**VIA HAND DELIVERY**

H. David Seidman, Esq.
Obermayer Rebman Maxwell & Hippel, LLP
One Penn Center, 19th Floor
1817 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895

      Re:    **The Chester County Hospital v. Independence Blue Cross, et al.**
              **Subpoena of July 3, 2003 Addressed to Crozer-Chester Medical Center**

Dear David:

      Crozer-Chester Medical Center ("Crozer") objects to the above-referenced subpoena to the extent it seeks information: (a) protected by the attorney-client privilege, the attorney work product protection, or any other applicable privilege; and/or (b) that is highly proprietary and, if disclosed, would put Crozer at a potential significant commercial disadvantage notwithstanding the terms of the Amended Protective Order in this matter. Subject to and without waiving these objections and those set forth in my letter to you of July 14, 2003, enclosed please find Crozer's document production (CRO 02148 to CRO 02819) in response to the subpoena.

      Especially in light of Crozer's production of other materials in response to your subpoena, we hope that you will appreciate the significant competitive implications of your request that Crozer produce materials reflecting the reimbursement rates it has negotiated with other insurance companies and its consequent decision not to produce such documents. As your client is aware, Crozer is in ongoing negotiations of its contracts with IBC, as well as with other insurers. Any dissemination of Crozer's highly proprietary rate information would potentially undermine its ability to adequately protect and represent its interests in these negotiations. In addition, unlike other third-party hospitals that have received subpoenas in this matter, there is significant overlap in both the service areas covered and services offered by Crozer and plaintiff Chester County Hospital.

H. David Seidman, Esq.
September 25, 2003
Page 2

_____

We believe that Crozer has now fulfilled its document production obligations under the subpoena.  Please contact me immediately if you believe otherwise.

Sincerely,

COZEN O'CONNOR

By:     Linda L. Cohen

LJC/dmc

cc:  Mark Gallant, Esq.
     Salvatore G. Rotella, Jr., Esq.

**Exhibit I**

**CROZER-CHESTER MEDICAL CENTER DOCUMENT PRODUCTION DEFICIENCY CHART**

| DOCUMENT REQUEST | CROZER-CHESTER'S RESPONSE | DOCUMENTS NOT BE PRODUCED |
|---|---|---|
| Crozer-Chester's strategic business plans—generally and by service line—and any plans to expand or cut services from 1998 to the present. | Crozer-Chester Produced:<br><br>• CKHS Strategic Plan (12/14/99) (CRO02148- CRO02164) (**NOTE:** Need similar strategic plans for 1998 and 2000 to the present and any similar strategic plans from 1998 to the present for Crozer-Chester – not consolidated Crozer-Keystone.)<br><br>• CKHS Operating Budget FY 2004 (CRO02165- CRO02195); 2004 Strategic Issues and Challenges (CRO02171);  CKHS Operating Budget FY 2003 (CRO02196- CRO02224); 2003 Strategic Issues and Challenges (CRO02202); CKHS Operating Budget FY 2002 (CRO02225- CRO02252); 2002 Strategic Issues and Challenges (CRO02230);  CKHS Operating Budget FY 2001 (CRO02253- CRO02282); 2001 Strategic Issues and Challenges (CRO02259);  CKHS Operating Budget FY 2000 (CRO02283- CRO02311); 2000 Strategic Issues and Challenges, Strategic Initiatives (CRO02289- CRO02291) (**NOTE:** These are very general summaries of Crozer-Keystone's consolidated strategic plans – not broken down by hospital or by service line.)<br><br>• CKHS Capital Plan FY 2002 to 2006 (CRO02312- CRO02334)<br><br>• Cardiology Task Force Final Report 6/2003 (CRO02378- CRO02511)<br><br>• CKHS Maternity Executive Report 7/02 (CRO02526- CRO02571)<br><br>• CCMC Emergency Department Facility Planning Projected Visits & Room Requirements (9/23/99) (CRO02592- CRO02624) | • Crozer-Chester's strategic plans for 1998 and 2000 to the present. Crozer-Chester produced Crozer-Keystone's strategic plan for 1999 (CRO02148- CRO02164) but did not produce similar strategic plans for any other year.<br><br>• Crozer-Chester's (not Crozer-Keystone's) strategic business plans – generally and by service line – and any plans to expand or cut services from 1998 to the present.<br><br>• All other strategic business plans not otherwise produced — generally and by service line— and any plans to expand or cut services from 1998 to the present. |
| Crozer-Chester's summary level documents sufficient to show market share, from 1998 to the present, for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. | Crozer-Chester Produced:<br><br>• Inpatient/ Outpatient Trend Analysis, 1999- 2000 (use of CCMC by Delaware County Residents) (CRO02335- CRO02336) (**NOTE:** Does not include all of Crozer-Chester's service areas, only Delaware County, and only for 1999-2000).<br><br>• 1998- 2001 Delaware County inpatient cardiology market share by Hospital (CRO02346) (**NOTE:** Does not include all of Crozer-Chester's service areas, only | • Crozer-Chester's summary level documents sufficient to show its market share, from 1998 to the present, for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. |

| DOCUMENT REQUEST | CROZER-CHESTER'S RESPONSE | DOCUMENTS NOT BE PRODUCED |
|---|---|---|
| | Delaware County and only for Cardiology services for 1998-2001).<br><br>• Cardiology Task Force Final Report 6/2003 (CRO02378- CRO02511); market analysis (CRO02386- CRO02388) (**NOTE:** Only includes market share for Cardiology services for 1998-2001).<br><br>• CKHS Maternity Executive Report 7/02 (CRO02526- CRO02571) (**NOTE:** Only includes market share for Maternity services for 1998-2000).<br><br>• CCMC Emergency Department Facility Planning Projected Visits & Room Requirements (9/23/99) (CRO02592- CRO02624) | |
| Crozer-Chester's summary and executive level budgets and financial statements, including by department and service line, for each year from 1998 to the present. | Crozer-Chester did not produce any of its budgets, bur rather produced combined Crozer-Keystone Operating Budgets:<br><br>• CKHS Operating Budget FY 2004 (CRO02165- CRO02195); CKHS Operating Budget FY 2003 (CRO02196- CRO02224); CKHS Operating Budget FY 2002 (CRO02225- CRO02252); CKHS Operating Budget FY 2001 (CRO02253- CRO02282); CKHS Operating Budget FY 2000 (CRO02283- CRO02311) (**Note:** These budgets are Crozer-Keystone combined budgets – not specific to Crozer-Chester and not broken down by department and/or service line. | • Crozer-Chester's summary and executive level budgets, including by department and service line, for each year from 1998 to the present. |
| Crozer-Chester's contracts with insurance providers (including managed care plans) from 1998 to the present. | Crozer-Chester did not produce its contracts with insurers (other than Defendants). | • Crozer-Chester's contracts with insurance providers (including managed care plans) (other than Defendants) from 1998 to the present. |
| Documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. | Crozer-Chester did not produce any internally generated documents that discuss the financial effect of healthcare insurer(s) (other than IBC) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. | • Documents that discuss the financial effect of healthcare insurer(s) (other than IBC) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. |
| Crozer-Chester's summary and executive level analysis of profitability by healthcare insurance payor. | None Produced. | • Crozer-Chester's summary and executive level analysis of profitability by healthcare insurance payor. |

| DOCUMENT REQUEST | CROZER-CHESTER'S RESPONSE | DOCUMENTS NOT BE PRODUCED |
|---|---|---|
| Crozer-Chester's utilization rates, including by line of service, for each year from 1998 to the present. | Crozer-Chester Produced:<br><br>• $42,500,000 Delaware County Authority Variable Rate Hospital revenue Bonds Series of 2002 (CRO00404- CRO00415); Appendix A: The Obligated Group: Utilization (CRO00487) (**Note**: Does not include all of Crozer-Chester's service lines and only includes data specific to Crozer-Chester for FY 01 – all other data is Crozer-Keystone consolidated). | • Crozer-Chester's utilization rates, including by line of service, for each year from 1998 to the present. |
| Crozer-Chester's patient counts including: inpatient admissions, outpatient admissions or visits, births, and patient days, for each year from 1998 to the present. | Crozer-Chester Produced:<br><br>• $42,500,000 Delaware County Authority Variable Rate Hospital revenue Bonds Series of 2002 (CRO00428- CRO00580); Appendix A: The Obligated Group: Origin of Patients (admissions for FY ended 6/30/01) (CRO00485); Competition: Inpatient Statistics Comparison (CRO00486) (**Note**: Only includes data specific to Crozer-Chester for FY 01 – all other data is Crozer-Keystone consolidated) | • Crozer-Chester's Patient counts including: inpatient admissions, outpatient admissions or visits, births, and patient days, for each year from 1998 to 2000, and 2002 to the present. |
| Crozer-Chester's average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. | None Produced. | • Crozer-Chester's average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. |
| Crozer-Chester's costs of providing services, including by DRG code, for each year from 1998 to the present. | None Produced. | • Crozer-Chester's costs of providing services, including by DRG code, for each year from 1998 to the present. |

**Exhibit J**

**DUANE MORRIS**

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
DETROIT
BOSTON
WASHINGTON, DC
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
CHERRY HILL
HARRISBURG
BANGOR
PRINCETON
PALM BEACH
WESTCHESTER

SETH A. GOLDBERG
DIRECT DIAL: 215.979.1175
E-MAIL: SAGoldberg@duanemorris.com

www.duanemorris.com

October 13, 2003

VIA FACSIMILE & HAND DELIVERY

Salvatore G. Rotella, Jr., Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103-3508

Re:  **The Chester County Hospital v. Independence Blue Cross, et al.**

Dear Sal:

Enclosed please find an Amended Deposition Notice directing Crozer Chester Medical Center to appear for a 30(b)(6) deposition on October 20, 2003. If you have any questions, please call.

Sincerely,

Seth A. Goldberg

SAG/mrs
Enclosure

cc:    James G. Kress, Esquire (w/enc.) (via facsimile)
       William J. Leonard, Esquire (w/enc.) (via facsimile)
       Daniel A. Kotchen, Esquire (w/enc.) (via facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL     :     CIVIL ACTION
    :     NO. 02-2746
      v.     :
    :
INDEPENDENCE BLUE CROSS,     :
QCC INSURANCE COMPANY,     :
KEYSTONE HEALTH PLAN EAST, and     :
KEYSTONE MERCY HEALTH PLAN     :

## PLAINTIFF'S AMENDED NOTICE OF DEPOSITION TO
## CROZER CHESTER MEDICAL CENTER

Pursuant to Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff, the

Chester County Hospital, by and through its attorneys, hereby gives notice that it shall take the

deposition of Crozer Chester Medial Center ("Crozer") by the persons designated by Crozer to

testify on its behalf on the subjects described below.

## SUBJECTS

1.     Contracts with health care insurers from 1994 to the present.

2.     Contract negotiations with health care insurers from 1994 to the present.

3.     Hospital and health insurer competition in the market in which Crozer has
operated since 1994.

4.     Any program by which Crozer is reimbursed at Independence Blue Cross's
("IBC") rates for the treatment of enrollees of Blue Cross Plans or Blue Shield
Plans other than IBC.  (This is often referred to as the "BlueCard Program" or the
"Out of Area Program.")

5.     Since 1999, Crozer's treatment of Blue Cross Plans or Blue Shield Plans other
than IBC (such as Capital Blue Cross or Highmark enrollees), including:

    a.     The amount of annual hospital charges incurred by enrollees of Blue Cross
Plans or Blue Shield Plans other than IBC;

  b.  The amount Crozer has been reimbursed by IBC for charges incurred by enrollees of Blue Cross Plans or Blue Shield Plans other than IBC.

6.  Crozer's communications with Capital Blue Cross.

7.  Crozer's communications with Highmark (also known as Pennsylvania Blue Shield).

8.  Crozer's contracts with Blue Cross Plans or Blue Shield Plans other than IBC (such as Capital Blue Cross or Highmark).

9.  IBC's Joint Operating Agreement with Highmark, Inc.

10.  Capital Blue Cross's Joint Operating Agreement with Highmark.

PH2\758092.1

This deposition will take place October 20, 2003 beginning at 9:30 a.m. at Duane Morris LLP or a mutually agreeable location.

Dated:  October 13, 2003

Lewis R. Olshin
Seth A. Goldberg
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19103-7396

Richard A. Feinstein
Daniel A. Kotchen
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

Attorneys for
THE CHESTER COUNTY HOSPITAL

3

PHD1758092.1

**Exhibit K**

FILE COPY

LAW OFFICES

## OBERMAYER REBMANN MAXWELL & HIPPEL LLP

ONE PENN CENTER-19TH FLOOR

1617 JOHN F. KENNEDY BOULEVARD

PHILADELPHIA, PA 19103-1895

(215) 665-3000
FAX (215) 665-3165

*H. David Seidman, Esquire*
*Direct Dial: (215) 665-3286*
*Direct Facsimile: (215) 665-3018*
*E-mail: david.seidman@obermayer.com*

October 14, 2003

**VIA FACSIMILE: (215) 979-1020 &**
**FIRST CLASS MAIL**
Seth A. Goldberg, Esquire
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19103-7396

Re:    **The Chester County Hospital v. Independence Blue Cross et al.**
**Civil Action No. 02-CV-2746**

Dear Seth:

Last night, I received your deposition notices unilaterally scheduling five non-party hospital depositions for next week. CCH did not consult or even attempt to arrange deposition times that would be mutually convenient for both parties. Be advised, IBC will not be attending these hospital depositions – on less than one week notice – without complete non-party hospital productions. Until you consult with IBC to – at the very least – attempt to arrange deposition times that are convenient for both parties, IBC will be left with no choice but to schedule their own depositions requiring witnesses to appear twice.

Very truly yours,

H. DAVID SEIDMAN

HDS:kf

cc:    Lewis R. Olshin, Esquire (via facsimile: (215) 979-1020)
Richard A. Feinstein, Esquire (via facsimile: (202) 237-6131)

489512

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

CA No.  2:02CV2746

### CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Defendants' Motion To Compel Crozer

Hospital To Produce Documents and Memorandum of Law in support thereof was served, this

27th day of October 2003 as follows:

**VIA HAND DELIVERY**
Salvatore G. Rotella Jr., Esquire
Cozen & O'Connor
1900 Market Street
Philadelphia, PA 19103
*Counsel for Crozer-Chester Medical Center*

**VIA HAND DELIVERY**
Lewis R. Olshin, Esquire
Duane Morris, LLP
One Liberty Place, Suite 4200
Philadelphia, PA 19103-7396
*Counsel for Plaintiff,*
*Chester County Hospital*

**VIA FACSIMILE & FEDERAL EXPRESS**
Richard A. Feinstein, Esquire
Daniel A Kotchen, Esquire
Boies, Schiller & Flexner, LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Facsimile No. (202) 237-6131
*Counsel for Plaintiff,*
*Chester County Hospital*

THOMAS A. LEONARD