IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

**O R D E R**

**AND NOW**, this _____ day of _____, 2003, upon consideration of

Defendants, Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East,

and Keystone Mercy Health Plan's motion to compel Paoli Memorial Hospital ("Paoli") to

produce documents, and any response thereto, it is hereby **ORDERED** and **DECREED** that:

1.  The Motion is **GRANTED.**

2.  Paoli shall produce, without objection, all of the documents requested in
    Defendants' subpoena to Paoli, which it has not yet produced, at the offices of
    Obermayer Rebmann Maxwell & Hippel LLP, within ten (10) days of the date of
    this Order.

3.  Paoli shall (a) certify that its production is complete; and (b) certify that it has not
    withheld any responsive documents based on confidentiality or for any other
    reason, within ten (10) days of the date of this Order.

4.  Paoli shall pay to Defendants reasonable attorneys' fees and costs incurred in the
    preparing, filing, and presenting this motion, within ten (10) days of the date of
    this Order.

BY THE COURT:

_____
**J.**

487819

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

## DEFENDANTS' MOTION TO COMPEL PAOLI MEMORIAL HOSPITAL TO PRODUCE DOCUMENTS

For the reasons set forth in the accompanying memorandum of law, Defendants,

Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East, and Keystone

Mercy Health Plan, submit this motion for an Order compelling Paoli Memorial Hospital

("Paoli") to produce documents.

**WHEREFORE**, Defendants, Independence Blue Cross, QCC Insurance Company, Keystone

Health Plan East, and Keystone Mercy Health Plan, respectfully request that the Court enter an

order compelling Paoli: (1) to produce all of the documents requested in Defendants' subpoena

to Paoli, and certify that its production is complete, within ten (10) days of the date of this Order;

487819

and (2) to pay to Defendants, within ten (10) days of the date of this Order, reasonable attorneys' fees and costs incurred in the preparing, filing, and presenting this motion.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

BY: _____

THOMAS A. LEONARD
PAUL S. DIAMOND
WILLIAM J. LEONARD
WILLIAM K. PELOSI
H. DAVID SEIDMAN
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103
(215) 665-3000

HOWREY SIMON ARNOLD & WHITE LLP

JOHN DeQ BRIGGS
JAMES G. KRESS
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 383-7015

Attorneys for Defendants,
Independence Blue Cross,
Keystone Health Plan East,
QCC Insurance Company, and
Keystone Mercy Health Plan

Dated: October 27, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL PAOLI MEMORIAL HOSPITAL TO PRODUCE DOCUMENTS

Defendants, Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East and Keystone Mercy Health Plan (collectively "IBC"), respectfully submit this memorandum of law in support of IBC's motion to compel Paoli Memorial Hospital ("Paoli") to produce documents.

## PRELIMINARY STATEMENT

In this immensely complex antitrust case, Plaintiff, the Chester County Hospital ("CCH"), alleges that IBC has monopoly power in the market for health care insurance in Chester, Delaware, Bucks, Montgomery, and Philadelphia counties (the "Southeastern Pa. Counties"). CCH further alleges that IBC "leverages" this "monopoly power" to gain "monopsony power," by which it "compels" hospitals in the Southeastern Pa. Counties, including CCH, to accept reimbursement rates that are substantially below competitive levels. (Amended Complaint at ¶ 23.) CCH claims that these reimbursement rates are less than the costs of providing those services. CCH claims that because IBC "squashed the Hospital's freedom of choice," CCH was forced into contracts with IBC that assured CCH would suffer annual operating losses threatening

its existence. (Amended Complaint at ¶¶ 23-28.)   CCH has further alleged that it suffers this annual operating loss at the hands of IBC despite allegedly having one of the least expensive cost structures of any hospital in the region. (Amended Complaint at ¶ 28.)

IBC has alleged in its Counterclaim that CCH's problems are caused by its own mismanagement, including a misguided twenty million dollar capital expansion project in 2001 for unneeded cardiovascular, obstetrics, and oncology services. CCH also wasted millions of dollars redesigning its Emergency Room facilities. (Counterclaim at ¶¶ 10-20.) As part of IBC's defense and Counterclaim, IBC seeks to show that: (a) many area hospitals are profitable even though their rates are below CCH's because they are better managed; and (b) there has been no material reduction in the output of hospital services. Rather, hospitals throughout the Philadelphia area, including CCH, have been expanding the scope of services offered.

Of the various hospitals with which CCH competes, Paoli is potentially significant to this litigation: Paoli, like CCH, is a small community acute care hospital located in Chester County.

## IBC'S DISCOVERY REQUESTS ARE RELEVANT TO ITS DEFENSE AND COUNTERCLAIM

It is imperative that IBC discover how comparable hospitals, such as Paoli, have prospered under precisely the same circumstances that CCH claims are putting it out of business. Of particular importance are Paoli's strategic planning, reimbursement rate, and cost information. The following chart shows that all IBC's discovery requests at issue here fall into one of four categories.

| Request No. | Description | Importance |
|---|---|---|
| 9, 10 | Contracts with other Healthcare Insurers, including the reimbursement rates and documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. | To demonstrate that IBC's rates and approach to contracting with hospitals are competitive and proper. To refute CCH's claim that IBC prevents providers from accepting lower rates from other insurers than IBC, thus artificially inflating the cost of healthcare. |
| 1(d), 2, 3-7 | Utilization, cost, and profitability information respecting Paoli and other area hospitals. | Refute CCH's claim that it is one of the region's most efficient providers of hospital services, and that IBC is generally driving hospitals out of business in the Philadelphia Market. |
| 1 (a-c), 2, 8 | Strategic planning information— documents that analyze both Paoli's operations or Paoli's competitive marketplace. | To prove that CCH has financial difficulties because CCH failed to plan as well as its competitor hospitals. To prove that other hospitals – including those with reimbursement rates lower than CCH -- are profitable and expanding their services. |
| 11 | Funding, participation in, planning for, or assessment of the present litigation | Regional hospitals such as Paoli have at least an indirect interest in this litigation. To the extent the present litigation is the product of a regional strategy to increase hospital reimbursement costs, that fact and any assessments of such a strategy are obviously significant and discoverable. CCH has indicated that it will depose Paoli. |

3

## IBC CANNOT OBTAIN THIS IMPORTANT DISCOVERY
## FROM PAOLI WITHOUT THE COURT'S INTERVENTION

IBC issued a subpoena *duces tecum* (the "Subpoena"), over three months ago, on July 3, 2003 commanding Paoli to produce documents on July 18, 2002. (Subpoena attached hereto as Exhibit "A.") In response to the Subpoena, Paoli generally objected to the Subpoena on grounds of overbreadth, ambiguity, undue burden, undue cost, privilege, and confidentiality. (July 11, 2003 Letter objection attached hereto as Exhibit "B.") Paoli also objected to the Subpoena as being duplicative of a subpoena issued by CCH to Paoli. (Id.) In its subpoena, however, IBC sought, *inter alia*, documents not sought by CCH. Thus, IBC had to subpoena these documents from Paoli directly. IBC has informed Paoli that it need not produce documents already produced to CCH in response to CCH's subpoena.

As the Court knows, there has already been extensive litigation – culminating in the August 19th Amended Protective Order – to resolve non-party confidentiality issues. Paoli received a copy of this Court's Amended Protective Order on August 20, 2003. On August 27, 2003, IBC urged Paoli to produce its non-party insurer documents, along with the other documents requested in the Subpoena, now that the Amended Protective Order had been entered. (Letter attached hereto as Exhibit "C.")

On August 29, 2003 Paoli responded to IBC's August 27, 2003 letter stating Paoli's willingness to work with … [IBC] to respond to its reasonable discovery demands," but that Paoli objected to producing documents related to its third-party insurers. (Letter attached hereto as Exhibit "D"). Over the next two weeks, Paoli's document production was the subject of multiple conversations and emails between IBC and Paoli. (Emails attached hereto as Exhibit "E") Ultimately, Paoli agreed to produce the requested documents – including its insurer documents – during the week of September 22, 2003. (See id; e-mails attached as Exhibit "F.").

On September 26, 2003 Paoli produced some of the requested documents. This production, however, did not include, *inter alia*, the non-party insurer documents, which Paoli had previously agreed to produce. (Exhibit "F"). Paoli now denied that it promised to produce all of the requested documents and objected to producing its third-party insurer information, on new grounds, stating as follows:

> Jefferson Health System, Inc. ("JHS"), Paoli's ultimate parent, is the entity that has conducted all third party payor negations on Paoli's behalf and is the direct party to any third-party payor agreements. Thus, any documents potentially responsive to a request for information relating to any such agreements entered into by Paoli are the property of JHS and contain highly sensitive commercial information and trade secrets of JHS. JHS has orally advised Paoli that it is not authorized to produce such documents.

(Letter dated September 26, 2003 attached as Exhibit "G.") These documents, however, were subpoenaed from Paoli, not JHS. JHS's newly discovered "property" rights and "authorization" are irrelevant; these documents are in the custody and control of Paoli, and are indisputably relevant to this litigation. Moreover, this Court has already addressed any confidentiality concerns in its Amended Protective Order.

Further, Paoli's production did not include many other requested documents – often entire categories of documents – in addition to the non-party insurer documents. These deficiencies are specifically enumerated in the attached Paoli Deficiency Chart (Exhibit "H"). Generally, they are as follows:

(1)     Paoli produced a few strategic planning documents, but nowhere near the set of documents demanded. Notably, it did not produce any plans for 1998-2000 – the critical years during which CCH responded to competition for obstetric, oncology, and cardiac cases with its financially aggressive expansion programs.

(2)     Paoli did not produce its documents showing its patient days per DRG and per service line for each year from 1998 to the present.

(3)     Paoli did not produce any documents sufficient to show its market share, from 1998 to 2001 for emergency services.

(4)     Paoli did not produce summary and executive level budgets and financial statements.

(5)     Paoli did not produce documents demonstrating the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present.

(6)     Paoli did not produce documents demonstrating its average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology.

(7)     Paoli did not produce documents demonstrating its costs of providing charitable services to patients for each year from 1998 to the present.

(8)     Paoli, in response to an earlier subpoena from CCH, produced some documents comprising its files on negotiating provider agreements with IBC, but as stated above, refused to provide the files regarding its contracts with non-IBC healthcare insurers.

IBC believes that Paoli is not acting in good faith, and that without the Court's intervention Paoli will not produce the requested documents to IBC. Accordingly, IBC has moved to compel.

## THE COURT SHOULD COMPEL PAOLI MEMORIAL HOSPITAL TO PRODUCE THE DOCUMENTS SOUGHT BY IBC

To put it kindly, there is no justification for Paoli's failure to produce the documents in question. Paoli's objection to producing its insurer files was resolved by this Court with its Amended Protective Order. Furthermore, Paoli promised to produce the above referenced documents and then reneged – without justification – on that promise. Despite months of correspondence and numerous phone conversations with Paoli's counsel, IBC's attempt to obtain the requested documents without court intervention proved futile. Therefore, an order to compel

is appropriate under Federal Rule of Civil Procedure 45(c), as is an award of reasonable expenses and attorneys' fees under Rule 37(a)(4)(A).

## CONCLUSION

For the foregoing reasons, IBC respectfully requests that the Court grant this motion and compel Paoli to produce without objection the documents demanded by IBC's subpoena, and certify that its production is complete, within ten (10) days of the date of this Order, and direct Paoli to pay to IBC, within ten (10) days of the date of this Order, reasonable attorneys' fees and costs incurred in the preparing, filing, and presenting of this motion.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

BY:  _Thomas A. Leonard_

THOMAS A. LEONARD
PAUL S. DIAMOND
WILLIAM J. LEONARD
WILLIAM K. PELOSI
H. DAVID SEIDMAN
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103
(215) 665-3000

HOWREY SIMON ARNOLD & WHITE LLP

JOHN DeQ BRIGGS
JAMES G. KRESS
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 383-7015

Attorneys for Defendants,
Independence Blue Cross,
Keystone Health Plan East,
QCC Insurance Company, and
Keystone Mercy Health Plan

Dated: October 27, 2003

**Exhibit A**

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

EASTERN _____ DISTRICT OF _____ PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

V.

INDEPENDENCE BLUE CROSS, ET AL.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  02-CV-2746

TO:  CUSTODIAN OF RECORDS
PAOLI MEMORIAL HOSPITAL
255 W. Lancaster Avenue
Paoli, PA  19301

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED SCHEDULE "A"

| PLACE        OBERMAYER REBMANN MAXWELL & HIPPEL LLP, 1617 JFK Blvd., 19th Floor, Philadelphia, PA 19103 (215) 665-3000 | DATE AND TIME  7/18/2003  9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) _David Seidman_  COUNSEL FOR DEFENDANTS | DATE  7/3/2003 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
H. DAVID SEIDMAN, ESQUIRE, OBERMAYER REBMANN MAXWELL & HIPPEL LLP, 1617 John F. Kennedy Blvd., 19th Floor, Philadelphia, PA  19103 (215) 665-3286

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                            DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmindemanding party to contest the claim.

## SCHEDULE A

## DESIGNATED DOCUMENTS TO PRODUCE
## FOR INSPECTION AND COPYING

### DEFINITIONS

A.  "Paoli," or "you," or "your" shall mean the "Paoli Memorial Hospital," its successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates and any agent or person acting for or on its behalf.

B.  "CCH" shall mean Plaintiff, The Chester County Hospital, its, successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates and any agent or person acting for or on its behalf.

C.  "IBC" shall mean Defendants, Independence Blue Cross, Keystone Health Plan East, QCC Insurance Company, and/or Keystone Mercy Health Plan, and their agents, successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates.

D.  A "Healthcare Insurer" shall mean any business (profit or non-profit) or governmental entity that makes payments for medical services rendered to individuals by medical service providers.

E.  "Provider Agreements" shall mean the contracts between IBC and providers of medical services that, in part, set forth the prices that those providers will charge IBC for medical services covered under the IBC members' health benefit plans.

F.  "Health Care Insurer Agreements" shall mean the contracts or other arrangements between you and any Health Care Insurer that provide for reimbursements to you for medical services that that you provide to the Health Care Insurer's members

G.  "Five County Region" shall refer to the geographic region comprising Bucks County, Chester County, Delaware County, Montgomery County, and Philadelphia County, and any

county in Pennsylvania, Delaware, or New Jersey that shares a border with the above named counties.

H. "Five County Hospitals" shall mean any and/or all acute care hospitals located in Bucks County, Chester County, Delaware County, Montgomery County, and Philadelphia County, and in any county in Pennsylvania, Delaware, or New Jersey that shares a border with the above named counties.

I. "CCH Capital Expansion Projects" shall mean the Chester County Hospital's capital expansion projects, which included: the establishment of the Fern Hill Chester County Hospital Campus for Health and Well-Being; construction of a new maternal/infant health unit; construction and equipment for a new facility for radiation oncology services; renovation and expansion of the emergency department; and establishment of new cardiac services, including interventional cardiology and open heart surgery.

## INSTRUCTIONS

1. To the extent responsive documents are available in an electronic format, they shall be produced in an electronic format.

2. Wherever periodic information is demanded, it should be provided in all available time formats (e.g. monthly in addition to quarterly).

3. When a request asks for documents that "discuss" a given topic, that request is seeking both narrative and, if it exists, numeric information on the topic.

4. In producing the documents requested herein, segregate those documents into separate folders or boxes (as appropriate) numbered to correspond to the requests calling for their production.

5. If you maintain that any document was, but no longer is in existence, in your possession or subject to your control, state whether it (a) is missing or lost, (b) has been destroyed, (c) has been transferred to other persons voluntarily or involuntarily, or (d) has been otherwise disposed of. In each instance set forth the contents of the document, the location of any copies of the document and describe the circumstances surrounding its disposition, starting the date of its disposition, any authorization therefore, the person(s) responsible for such disposition, and the policy, rule, order, or other authority by which such disposition was made.

6. Along with the response to each numbered document request, identify each person who participated in or supplied information with respect to the preparation of the response to the document request, specifying whether such person supplied relevant information, participated in the preparation of the response, or both. If the response to any document request contains information supplied by more than one person, specify the particular information supplied by each person.

7. When a complete answer to a particular document request is not possible, the document request must be answered to the extent possible and a statement made indicating why only a partial answer is given and what must occur before a complete answer may be given.

8. If you object to any portion of a document request, provide all information called for by that portion of the document request to which you do not object.

9. These document requests shall be deemed continuing, so as to require additional answers if further information is obtained between the time the answers are served and the time of trial. Such additional answers shall be served not later than ten (10) days after such additional information is received or before trial, whichever is earlier.

10. If you withhold any information, including any document or communication, sought by any document request on the basis of a claim of privilege, work product or any reason, you must: (a) state the nature of the privilege claimed or the basis for withholding the information requested and as to the specific information withheld; (b) if pertinent, identify the attorney with respect to whom the privilege is claimed; (c) identify every communication or document which refers or relates to the information; (d) if pertinent, identify each person who heard or may have heard the communication; (e) if pertinent, identify each person who read, received, or possessed the document or a copy of the document; and (f) if pertinent, identify any portion of the document or communication that is not privileged.

11. In construing these definitions, instructions, and document requests:
    a. The singular shall include the plural and plural shall include the singular.

    b. A masculine, feminine or neuter pronoun includes the other genders.

    c. "And" and "or" shall be construed both conjunctively and disjunctively to bring within the scope of the document requests any information which might otherwise be construed to be beyond its scope.

    d. The past tense includes the present tense where the meaning is not distorted by a change of time.

    e. All requests for production of anything that falls under the definition of a document, even if not requested using the word "document" (e.g. a request for "feasibility study") shall be constructed to include all drafts to the document. If a time limit accompanies the request (e.g. a request for "all feasibility studies

created before February 1, 2001") all drafts of the study created within the limit must be produced even if the final study was not created until after the time limit.

## TIME PERIOD

Unless otherwise indicated, the time period for these discovery requests is *January 1, 1998 to the present.*

## DOCUMENTS REQUESTED

1. Documents, other than routine administrative billing records, that reflect, refer or relate to Paoli's service lines for cardiovascular surgery, obstetrics, emergency services, and oncology, including but not limited to the following:

   a. market share, annually;

   b. patient demand for services;

   c. strategic plans, including any planned, considered, actual, or proposed reduction or expansion in these service lines; and

   d. financial performance (e.g. internal financial statements or management reports) by service line.

2. Documents that discuss, narratively or through numeric data, the competitive environment for Paoli's services, including the actual or potential impact on competition of CCH's Capital Expansion Projects with regard to the financial performance of any of the Five County Hospitals.

3. Documents that discuss, narratively or through numeric data, Paoli's costs of charitable services provided by service or procedure type to patients and/or community.

4. Documents comparing any or all hospitals located in the Five County Region, in terms of:

   a. utilization rates;

      b.  costs; and

      c.  operating margins.

5.  All cost and profitability analysis, by DRG and/or service line for inpatient and outpatient services.

6.  Documents explaining how costs are assigned to each DRG or service line.

7.  All Medicare cost reports.

8.  Documents that reflect, refer or relate to any planned, considered, actual, or proposed affiliations and/or mergers with any hospital system or network (e.g. the Jefferson Health System) or any individual hospital(s) including but not limited to CCH, or any discussions regarding same.

9.  Documents that discuss, narratively or through numeric data, the reimbursement rates set forth in, and the profitability of, each of Paoli's Health Care Insurer Agreements, (including but not limited to contracts, summaries and competitive analysis), but not routine administrative billing records.

10. Documents that discuss, narratively or through numeric data, coverage denials by Healthcare Insurers and/or associated appeals (including but not limited to contracts, summaries and analysis), but not routine administrative records.

11. Any documents that refer, reflect or relate to:

      a.  the above captioned lawsuit;

      b.  any potential anti-trust litigation against IBC or any other Healthcare Insurer in the Five County Region

      c.  the actual or potential funding of any actual or potential litigation against IBC or any other Healthcare Insurer in the Five County Region.

467511

**Exhibit B**

+215 665 7291

T-282  P.002/003  F-461

Jul-11-2003  03:14pm  From-Cozen O'Connor



**COZEN**
**O'CONNOR**
ATTORNEYS

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
WASHINGTON, DC
WEST CONSHOHOCKEN
WILMINGTON

PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
LAS VEGAS
LONDON
LOS ANGELES

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

**Linda J. Cohen**
Direct Phone 215.665.2016
Direct Fax  215.701.2016
LCOHEN@COZEN.COM

July 11, 2003

**VIA FACSIMILE (215) 665-3018**

H. David Seidman, Esq.
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center - 19th floor
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895

Re:    *The Chester County Hospital v. Independence Blue Cross, et al.*
       IBC Subpoena *Duces Tecum* to Paoli Memorial Hospital

Dear Mr. Seidman:

As you know, we represent Paoli Memorial Hospital ("Paoli"). I received a copy of your subpoena *duces tecum* dated July 3, 2003 to Paoli in the above referenced matter.

Pursuant to Fed.R.Civ.P. 45(c)(2)(B), Paoli objects to the subpoena as: overly broad; vague; ambiguous; unduly burdensome; unnecessarily costly; calling for production of materials that are equally available to IBC through public records and sources; duplicative of discovery propounded by the Chester County Hospital and already provided by Paoli; calling for the production of privileged materials; calling for the production of materials protected as confidential research, development and commercial information; calling for production of irrelevant materials and/or materials not reasonably calculated to lead to the discovery of admissible evidence; and calling for the production of materials subject to confidentiality agreements.

As you are aware, Paoli is not a party to this case. Nonetheless, Paoli, has already incurred substantial expenses responding to a document subpoena from The Chester County Hospital. Further, a corporate designee of Paoli has been noticed for a deposition by both IBC and The Chester County Hospital. As such, Paoli has been forced to expend substantial employee time and incurred significant expenses in attorneys' fees and document reproduction.

PHILA1\1878226\1 134563.000

H. David Seidman, Esq.
July 11, 2003
Page 2

In light of these factors, we seek to amicably resolve these issues to allow IBC to obtain proper information without compromising Paoli's confidential information or unduly burdening the institution.

Subject to the foregoing objections, and without waiver thereof, Paoli would like to explore the possibility of achieving an amicable resolution of the objections in order to conserve resources. I look forward to discussing these issues with you.

Sincerely,

COZEN O'CONNOR

By:    Linda J. Cohen

LJC/pma

cc:    Salvatore G. Rotella, Jr., Esq.

PHILA1\1878226\1 134563.000

**Exhibit C**

LAW OFFICES

# OBERMAYER REBMANN MAXWELL & HIPPEL LLP

ONE PENN CENTER·19TH FLOOR

1617 JOHN F. KENNEDY BOULEVARD

PHILADELPHIA, PA 19103-1895

(215) 665-3000
FAX (215) 665-3165

*H. David Seidman, Esquire*
*Direct Dial: (215) 665-3286*
*Direct Fax: (215) 665-3018*
*E-mail: david.seidman@obermayer.com*

August 27, 2003

**VIA EMAIL (srotella@cozen.com) &**
**FIRST CLASS MAIL**
Salvatore G. Rotella Jr., Esquire
Cozen & O'Connor
1900 Market Street
Philadelphia PA, 19103

Re:    **The Chester County Hospital v. Independence Blue Cross et al.**
       **Civil Action No. 02-CV-2746**

Dear Sal:

I am writing to follow-up on our phone conversation yesterday regarding the document subpoenas defendants served on Paoli Memorial Hospital and Crozer-Chester Medical Center (the "Hospitals"), in the above-referenced matter. As we discussed, it has been almost two (2) months since we served our subpoenas on the Hospitals. You are aware that on August 19, 2003, the Court entered its Amended Protective Order, providing extraordinary safeguards for any non-party's confidential information produced in the above referenced litigation. As all of the Hospitals' objections regarding the confidentiality of the subpoenaed documents have been resolved by the Court, there is no longer any credible basis for delaying the production of the subpoenaed documents. The Hospitals should simply mark their production "Non-Party Highly Confidential," and produce the subpoenaed documents immediately.

Furthermore, as you know, this case is largely about hospital reimbursement rates and operating costs. Given plaintiff's allegation that defendants force hospitals in Southeastern Pennsylvania to accept reimbursement rates for medical services that are less than the costs of providing those services, the Hospitals cannot credibly maintain their boilerplate objections to defendants' subpoena. Put simply, all of the categories of documents demanded are essential to defendants' defense in this matter.

As the Hospitals have known since July 3, 2003 that they would eventually have to produce the subpoenaed documents, it is reasonable to expect that those documents would by now be ready for production, and defendants request that they be produced immediately.

479554

Because of the impending discovery deadline in this case, and the vast amount of deposition discovery awaiting completion of document discovery, we will need to file motions to compel on or shortly after Wednesday, September 3, 2003, if we do not receive the Hospitals' complete productions by that time.  Should you have any questions, please do not hesitate to call me.

Very truly yours,

H. DAVID SEIDMAN

HDS:kf

cc:    Brian T. Must, Esquire (via email: bmust@metzlewis.com)
James C. Crumlish, III, Esquire (via email: JCC@erse.com)
Kevin C. Maclay, Esquire  (via email: kmaclay@jonesday.com)
Katie A. Gummer, Esquire (via email: kgummer@mccarter.com)
Lewis R. Olshin, Esquire (via email: olshin@duanemorris.com)
William J. Leonard, Esquire

479554

**Exhibit D**

PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
LAS VEGAS
LONDON
LOS ANGELES

**COZEN O'CONNOR**
ATTORNEYS

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
TRENTON
WASHINGTON, DC
WEST CONSHOHOCKEN
WICHITA
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

Linda J. Cohen

Direct Phone 215.665.2016
Direct Fax    215.701.2016
LCOHEN@COZEN.COM

August 29, 2003

VIA FACSIMILE AND U.S. MAIL

H. David Seidman, Esq.
Obermayer Rebman Maxwell & Hippel, LLP
One Penn Center, 19th Floor
1817 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895

Re:    Paoli Memorial Hospital - Subpoena *Duces Tecum* Served by The Chester
       County Hospital; The Chester County Hospital v. Independence Blue Cross,
       et al., Civil Action No. 02-CV-2746, Eastern District of Pennsylvania

Dear Mr. Seidman:

This is in response to your letter of August 27, 2003 to my colleague Salvatore G. Rotella, Jr. regarding the above-referenced matter. I have chosen to respond because your letter raises substantive issues and Sal has only recently begun working with me on this matter. While I do not wish to start a chain of argumentative letters between us, in light of your stated intention to engage in motion practice, I feel compelled to write to clarify our client's position and the relevant facts.

First and foremost, Paoli Memorial Hospital ("Paoli" or "the hospital") continues its willingness to work with the parties to respond to their reasonable discovery demands in this matter. As you know, the hospital has already produced a significant number of documents in response to a subpoena by Chester County Hospital ("CCH"), and made those documents available for your review in early June 2003 prior to production to CCH. The hospital made clear in connection with that initial production that it would be unable to produce certain documents relating to third-party insurers, if it had any such documents, because of confidentiality agreements with those insurers. The eleven requests in your subpoena of July 3, 2003 seek a broad range of materials, including this category of third-party insurer documents.

H. David Seidman, Esq.
August 29, 2003
Page 2

By letter of July 14, 2003, we objected to your subpoena to the extent it calls for such insurer documents, on the ground that it is duplicative of the CCH subpoena, and on various other grounds.  Although you have represented that you do not wish to unduly burden Paoli, you have to date not agreed to narrow your subpoena in any meaningful way.

We first learned by letter of August 20, 2003 – from counsel for CCH – that the Protective Order had been amended in this matter so as potentially to enable the hospital to produce the third-party insurer documents.  You have now informed us, only seven days later, that you intend to file a motion to compel next week, immediately following Labor Day and several weeks in advance of the October 1, 2003 discovery deadline that we understand has been set in this matter.  While we recognize your prerogative to file such a motion, we believe that doing so under these circumstances would be both premature and counter-productive.

We are in the process of consulting with our client to determine whether the hospital has documents responsive to your subpoena of July 3 that it has not already produced in response to the CCH subpoena, that are not covered by an applicable privilege, and for which the Amended Protective Order provides sufficient protection with respect to confidential information.  We expect that these efforts may take a few additional days, given the time of year, the upcoming holiday weekend, and the fact that Paoli's inhouse legal counsel has only recently returned (and only on a limited schedule) from an extended medical leave.  With respect to the documents relating to third-party insurers in particular, IBC will be able to secure many of the same documents (if it has not already done so) directly from those insurers.  We will inform you once we have identified and prepared for production the hospital's responsive, nonprivileged, nonduplicative documents, if any, subject to the objections that have been interposed.

Please contact me if you have any questions, wish to discuss a timetable for our production, or still intend to file a motion to compel.

Sincerely,
COZEN O'CONNOR

By:    Linda J. Cohen

LJC/pma

cc:    Salvatore G. Rotella, Jr., Esq.

**Exhibit E**

From: Seidman, David
Sent: Wednesday, September 17, 2003 5:59 PM
To: 'Rotella, Jr., Salvatore G.'
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

    Sal,

    This will confirm our phone conversation tonight that IBC will receive Paoli Hospital and
Crozer-Chester Hospital's documents mid next week.

    In addition, Mainline Health System has withdrawn its objection to Katz Consulting
producing reports / documents for Paoli Hospital and Bryn Mawr Hospital in response to IBC's
subpoena to Katz.  Furthermore, you have requested that Health Strategies and Solutions
("HSS") forward the reports it prepared for Crozer-Chester Hospital, so that you may review the
documents and assess whether Crozer-Chester still objects to HSS producing these documents.
Please let me know by Friday whether Crozer-Chester will withdraw its objection to HSS.

Thank you Sal,

David

-----Original Message-----
From: Rotella, Jr., Salvatore G. [mailto:SRotella@cozen.com]
Sent: Tuesday, September 16, 2003 7:11 PM
To: Seidman, David
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

David:

I was unable to get updates with respect to Paoli and Crozer today, although I know staff at both
have been reviewing potentially responsive documents.  I will try both to get a status for you and
speak with Stephen Goldblum tomorrow.

Sal

-----Original Message-----
From: Seidman, David
Sent: Tuesday, September 16, 2003 4:02 PM
To: 'Rotella, Jr., Salvatore G.'
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

Sal,

Thank you for the Grand View production update.  I need to follow-up on your waiver request
regarding Stuart Fine's deposition, but I do not foresee a problem.  I'll call you as soon as
possible to confirm.

As for Paoli and Crozer-Chester, do you have a timetable for their production?  Additionally,
Katz Consulting is withholding reports performed for Paoli Hospital and Bryn Mawr Hospital –
based on Linda's objections.  Please call Katz's counsel, Stephen C. Goldblum, to withdraw the
hospitals' objections. I've attached his contact information.

Thanks Sal,

David

-----Original Message-----
From: Rotella, Jr., Salvatore G. [mailto:SRotella@cozen.com]
Sent: Tuesday, September 16, 2003 2:59 PM
To: Seidman, David
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

David:

We are preparing for production Grand View Hospital's responsive documents and intend to
provide them to you within the next day or two.

The attorneys for Chester County Hospital have informed us that they intend to depose Stuart
Fine, Grand View's CEO.  We assume that you will seek to question Mr. Fine at that same
deposition and will coordinate with Chester County as to the deposition's date.  Further, in
accordance with your conversations with Linda Cohen, we ask that you agree to interpose (or
waive)any and all objections to Mr. Fine's testimony arising from the settlement of the
defamation action brought by IBC against Mr. Fine and Grand View.  If you are not willing to so
agree, we will instruct Mr. Fine not to answer any questions that might expose him or the
hospital to a claim that either has breached the Settlement Agreement.

Sal

-----Original Message-----
From: Seidman, David
Sent: Monday, September 15, 2003 5:57 PM
To: 'Rotella, Jr., Salvatore G.'
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

      Thank you Sal.

-----Original Message-----
From: Rotella, Jr., Salvatore G. [mailto:SRotella@cozen.com]
Sent: Monday, September 15, 2003 5:53 PM
To: Seidman, David
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

I will provide you with an update tomorrow.

 -----Original Message-----
From: Seidman, David
Sent: Monday, September 15, 2003 5:30 PM
To: 'Rotella, Jr., Salvatore G.'
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

      Sal,

      When we spoke over two weeks ago, you believed that Paoli and Crozer-Chester's documents would be available in seven to ten days (i.e., the end of last week), and that Grandview's production would take a little more time, as your Grandview contact was more difficult to reach.  I appreciate your efforts, but at this point, I need an actual timeframe as to when I can expect the hospitals' documents.

      Sincerely,

      David

-----Original Message-----
From: Rotella, Jr., Salvatore G. [mailto:SRotella@cozen.com]
Sent: Monday, September 15, 2003 5:00 PM
To: Seidman, David
Cc: Cohen, Linda J.
Subject: RE: (CCH v. IBC, ET AL.) Discovery Status -- Paoli, Crozer-Chester, and Grandview
...

David:

We are continuing to work with all three of our clients to identify responsive documents for
possible production.  I have confirmed that Crozer-Chester, for which Health Strategies prepared
a report, is reviewing a copy of that report for possible production -- that is, to determine whether
Crozer will withdraw its previous objection.

Sal

Salvatore G. Rotella, Jr., Esq.*
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103-3508
(215) 665-3729 (phone)
(215) 701-2129 (fax)
srotella@cozen.com

*Admitted to practice in the District of Columbia only


-----Original Message-----
From:      Seidman, David
Sent:      Monday, September 15, 2003 12:01 PM
To:        'Salvatore G. Rotella Jr., Esquire'
Cc:        'Linda J. Cohen, Esquire'
Subject:   (CCH v. IBC, ET AL.)  Discovery Status  -- Paoli, Crozer-Chester, and Grandview ...

Hi Sal,

Any update on your timetable to produce the Paoli, Crozer-Chester, and Grandview documents?
Additionally, do you know the status of the documents Health Strategies & Solutions was
withholding based on your hospitals' objections?

Sincerely,

David

**Exhibit F**

**Pelosi, William**

| | |
|---|---|
| From: | Seidman, David |
| Sent: | Thursday, September 25, 2003 6:05 PM |
| To: | 'SRotella@cozen.com' |
| Cc: | Linda J. Cohen Esquire (E-mail) |
| Subject: | RE: CCH v. IBC |

Sal,

I am sorry that your prior commitment to produce the insurer documents for Crozer-Chester and Paoli has now caused you embarrassment. You have left us with no choice but to file motions to compel.

David

-----Original Message-----
From:      Rotella, Jr., Salvatore G. [mailto:SRotella@cozen.com]
Sent: Thursday, September 25, 2003 4:37 PM
To: Seidman, David
Cc:  Cohen, Linda J.; Gallant, Mark H.
Subject:   CCH v. IBC

David:

I am writing to follow up on our phone conversation of earlier today. I understand your disappointment at not receiving insurance rate information from Crozer-Chester Medical Center, especially in light of the ongoing disputes that I understand may be preventing you from obtaining that same information from at least some of the insurance companies directly. I am surprised and disappointed, however, especially given the professional nature of our interactions to date, at your suggestion that I previously represented to you that you would be receiving such information from Crozer. I never made any such representation.

As you know, I have been assisting Mark Gallant and Linda Cohen for the past several weeks in my firm's representation of Crozer, Paoli Memorial Hospital, and Grand View Hospital in connection with the subpoenas these hospitals have received in this matter. You and I have discussed on several occasions the logistics of these hospitals' responses, which, as you know, might be in the form of documents and/or objections to production. Any document productions the hospitals have made thus far, moreover, they have made with specific reservation of any objections.

As I mentioned to you over the phone, I appreciate that you have worked with us to allow adequate time for the hospitals to provide their responses. I also appreciate your right to contest the merits of Crozer's decision not to produce the rate information. Again, however, I did not make any representations as to the specific documents Crozer might or might not ultimately provide to you.

Sal

Salvatore G. Rotella, Jr., Esq.*
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103-3508
(215) 665-3729 (phone)
(215) 701-2129 (fax)
srotella@cozen.com

*Admitted to practice in the District of Columbia only


*******************************************

1

**Exhibit G**



PHILADELPHIA
ATLANTA
CHARLOTTE
CHERRY HILL
CHICAGO
DALLAS
LAS VEGAS
LONDON
LOS ANGELES

**COZEN**

**O'CONNOR**

ATTORNEYS

NEW YORK
NEWARK
SAN DIEGO
SAN FRANCISCO
SEATTLE
WASHINGTON, DC
WEST CONSHOHOCKEN
WILMINGTON

A PROFESSIONAL CORPORATION

1900 MARKET STREET    PHILADELPHIA, PA 19103-3508    215.665.2000    800.523.2900    215.665.2013 FAX    www.cozen.com

Mark H. Gallant

Direct Phone 215.665.4136
Direct Fax   215.701.2436
MGALLANT@COZEN.COM

**RECEIVED**

SEP 2 6 2003

**H D S**

September 26, 2003

**VIA HAND DELIVERY**

H. David Seidman, Esq.
Obermayer Rebman Maxwell & Hippel, LLP
One Penn Center, 19th Floor
1817 John F. Kennedy Blvd.
Philadelphia, PA 19103-1895

> Re:    The Chester County Hospital v. Independence Blue Cross, et al.
>          Subpoena of July 3, 2003 Addressed to Paoli Memorial Hospital

Dear David:

Paoli Memorial Hospital ("Paoli") objects to the above-referenced subpoena to the extent it seeks information:  (a) protected by the attorney-client privilege, the attorney work product protection, or any other applicable privilege; (b) that is highly proprietary and, if disclosed, would put Paoli at a significant potential commercial disadvantage notwithstanding the terms of the Amended Protective Order in this matter; and/or (c) contained in documents that Paoli is not authorized to produce.  With respect to this third objection, please note that Jefferson Health System, Inc. ("JHS"), Paoli's ultimate parent, is the entity that has conducted all third party payor negotiations on Paoli's behalf and is the direct party to any third party payor agreements. Thus, any documents potentially responsive to a request for information relating to any such agreements entered into by Paoli are the property of JHS and contain highly sensitive commercial information and trade secrets of JHS.  JHS has orally advised Paoli that it is not authorized to produce such documents

Subject to and without waiving these objections and those set forth in Linda Cohen's letter to you of July 14, 2003, enclosed please find Paoli's document production (PMH 00603 to PMH 01564) in response to the subpoena.

H. David Seidman, Esq.
September 26, 2003
Page 2

_____

      We believe that Paoli has now fulfilled its document production obligations under the subpoena. Please contact me immediately if you believe otherwise.

                    Sincerely,

                    COZEN O'CONNOR

                    By:     Mark H. Gallant

cc:     Salvatore G. Rotella, Jr., Esq.
       Linda J. Cohen, Esq.

**Exhibit H**

# PAOLI MEMORIAL HOSPITAL DOCUMENT PRODUCTION DEFICIENCY CHART

| DOCUMENT REQUEST | PHOENIXVILLE'S RESPONSE | DOCUMENTS NOT PRODUCED |
|---|---|---|
| Paoli's strategic business plans—generally and by service line—and any plans to expand or cut services from 1998 to the present. | Paoli produced:<br><br>• "Main Line Health System PMH Strategic Direction for PMH: Issues to be Addressed by Main Line Health System (6/8/01)<br><br>• PMH Obstetrics Business Plan Financial Assumptions FY 2000-2005<br><br>• OB/NICU Planning 09/25/01<br><br>• The Business Case for the PMH Capital Planning Project: PMH 2005<br><br>• Main Line Health Heart Center—Cardiovascular Service Expansion at Paoli Memorial Hospital (3/28/01)<br><br>• Time Line for PMH Open Heart Project (9/4/01)<br><br>• MLHS Chester County Strategy | • Paoli's strategic business plans not otherwise produced — generally and by service line— and any plans to expand or cut services from 1998 to 2002, which includes all plans, pro formas, and market analysis for the development and program growth for the following service lines: cardiovascular program, NICU and obstetrics program – as referenced in PMH00704-PMH00706; PMH00673-PMH00678; and PMH00679-PMH00684. |
| Paoli's summary level documents showing its inpatient admissions, outpatient admissions or visits, births, and patient days, for each year from 1998 to the present. | Paoli produced this information excluding its patient days per DRG and per service line for each year from 1998 to the present. | • Paoli's summary level documents showing its patient days per DRG and per service line for each year from 1998 to the present. |
| Paoli's summary level documents showing its market share, from 1998 to the present, for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. | Paoli produced this information excluding summary level documents showing its market share for emergency services from 1998 to 2001.   These reports were produced for 2002. | • Paoli's summary level documents sufficient to show its market share for emergency services from 1998 to 2001.   These reports were produced for 2002. |
| Paoli's contracts with insurance providers (including managed care plans) from 1998 to the present. | Paoli did not produce its contracts with insurers other than IBC. | • Paoli's contracts with insurance providers (including managed care plans) (other than Defendants) from 1998 to the present. |

| DOCUMENT REQUEST | PHOENIXVILLE'S RESPONSE | DOCUMENTS NOT PRODUCED |
|---|---|---|
| Documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. | Paoli did not produce any internally generated documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. | • Paoli's documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. |
| Paoli's summary and executive level budgets and financial statements, including by department and service line, for each year from 1998 to the present. | Paoli did not produce any of its budgets or audited financial statements, bur rather produced Main Line Health, Inc. & Certain Controlled Affiliates (combined financial statements for the years ended 6/30/02 & 2001) and Main Line Health, Inc. & Certain Controlled Affiliates (combined financial statements for the years ended 6/30/01 & 2000) These financial reports were combined reports - not specific to Paoli and not broken down by department and service line. | • Paoli's (not Main Line Health's) summary and executive level budgets and financial statements, including by department and service line, for each year from 1998 to the present. |
| Paoli's average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. | Paoli did not produce this information. | • Paoli's average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. |
| Paoli's costs of providing charitable services to patients for each year from 1998 to the present. | Paoli did not produce this information. | • Paoli's costs of providing charitable services to patients for each year from 1998 to 2002 |

488423

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

CA No.  2:02CV2746

### CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Defendants' Motion To Compel Paoli

Memorial Hospital To Produce Documents and Memorandum of Law in support thereof was

served, this 27th day of October 2003 as follows:

**VIA HAND DELIVERY**
Salvatore G. Rotella Jr., Esquire
Cozen & O'Connor
1900 Market Street
Philadelphia, PA 19103
*Counsel for Paoli Memorial Hospital*

**VIA HAND DELIVERY**
Lewis R. Olshin, Esquire
Duane Morris, LLP
One Liberty Place, Suite 4200
Philadelphia, PA 19103-7396
*Counsel for Plaintiff,*
*Chester County Hospital*

**VIA FACSIMILE & FEDERAL EXPRESS**
Richard A. Feinstein, Esquire
Daniel A Kotchen, Esquire
Boies, Schiller & Flexner, LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Facsimile No. (202) 237-6131
*Counsel for Plaintiff,*
*Chester County Hospital*

THOMAS A. LEONARD

487819