IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

## O R D E R

**AND NOW**, this _____ day of _____, 2003, upon consideration of

Defendants, Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East,

and Keystone Mercy Health Plan's motion to compel Riddle Memorial Hospital ("Riddle") to

produce documents, and any response thereto, it is hereby **ORDERED** and **DECREED** that:

1.      The Motion is **GRANTED.**

2.      Riddle shall produce, without objection, all of the documents requested in
        Defendants' subpoena to Riddle, which it has not yet produced, at the offices of
        Obermayer Rebmann Maxwell & Hippel LLP, within ten (10) days of the date of
        this Order.

3.      Riddle shall (a) certify that its production is complete; and (b) certify that it has
        not withheld any responsive documents based on confidentiality or for any other
        reason, within ten (10) days of the date of this Order.

4.      Riddle shall pay to Defendants reasonable attorneys' fees and costs incurred in the
        preparing, filing, and presenting this motion, within ten (10) days of the date of
        this Order.

BY THE COURT:

_____

                                                        **J.**

486890

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE CHESTER COUNTY HOSPITAL<br><br>v.<br><br>INDEPENDENCE BLUE CROSS,<br>QCC INSURANCE COMPANY,<br>KEYSTONE HEALTH PLAN EAST, and<br>KEYSTONE MERCY HEALTH PLAN | NO. 02-CV-2746 |

## DEFENDANTS' MOTION TO COMPEL RIDDLE MEMORIAL HOSPITAL TO PRODUCE DOCUMENTS

For the reasons set forth in the accompanying memorandum of law, Defendants,

Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East, and Keystone

Mercy Health Plan, submit this motion for an Order compelling Riddle Memorial Hospital

("Riddle") to produce documents.

**WHEREFORE,** Defendants, Independence Blue Cross, QCC Insurance Company, Keystone

Health Plan East, and Keystone Mercy Health Plan, respectfully request that the Court enter an

order compelling Riddle: (1) to produce all of the documents requested in Defendants' subpoena to

Riddle, and certify that its production is complete, within ten (10) days of the date of this Order;

486890    2

and (2) to pay to Defendants, within ten (10) days of the date of this Order, reasonable attorneys'

fees and costs incurred in the preparing, filing, and presenting this motion.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

BY: _____

THOMAS A. LEONARD
PAUL S. DIAMOND
WILLIAM J. LEONARD
WILLIAM K. PELOSI
H. DAVID SEIDMAN
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
(215) 665-3000

HOWREY SIMON ARNOLD & WHITE LLP

JOHN DeQ BRIGGS
JAMES G. KRESS
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-7015

Attorneys for Defendants,
Independence Blue Cross,
Keystone Health Plan East,
QCC Insurance Company, and
Keystone Mercy Health Plan

Dated: October 27, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

NO. 02-CV-2746

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL RIDDLE MEMORIAL HOSPITAL TO PRODUCE DOCUMENTS

Defendants, Independence Blue Cross, QCC Insurance Company, Keystone Health Plan

East and Keystone Mercy Health Plan (collectively "IBC"), respectfully submit this

memorandum of law in support of IBC's motion to compel Riddle Memorial Hospital ("Riddle")

to produce documents.

## PRELIMINARY STATEMENT

In this immensely complex antitrust case, Plaintiff, the Chester County Hospital ("CCH"),

alleges that IBC has monopoly power in the market for health care insurance in Chester,

Delaware, Bucks, Montgomery, and Philadelphia counties (the "Southeastern Pa. Counties").

CCH further alleges that IBC "leverages" this "monopoly power" to gain "monopsony power," by

which it "compels" hospitals in the Southeastern Pa. Counties, including CCH, to accept

reimbursement rates that are substantially below competitive levels.  (Amended Complaint at ¶

23.)  CCH claims that these reimbursement rates are less than the costs of providing those

services.  CCH claims that because IBC "squashed the Hospital's freedom of choice," CCH was

forced into contracts with IBC that assured CCH would suffer annual operating losses threatening

its existence. (Amended Complaint at ¶¶ 23-28.)   CCH has further alleged that it suffers this annual operating loss at the hands of IBC despite allegedly having one of the least expensive cost structures of any hospital in the region. (Amended Complaint at ¶ 28.)

IBC has alleged in its Counterclaim that CCH's problems are caused by its own mismanagement, including a misguided twenty million dollar capital expansion project in 2001 for unneeded cardiovascular, obstetrics, and oncology services. CCH also wasted millions of dollars redesigning its Emergency Room facilities. (Counterclaim at ¶¶ 10-20.) As part of IBC's defense and Counterclaim, IBC seeks to show that: (a) many area hospitals are profitable even though their rates are below CCH's because they are better managed; and (b) there has been no material reduction in the output of hospital services. Rather, hospitals throughout the Philadelphia area, including CCH, have been expanding the scope of services offered.

Of the various hospitals with which CCH competes, Riddle is potentially significant to this litigation: Riddle, like CCH, is a small community acute care hospital serving Chester County.

## IBC'S DISCOVERY REQUESTS ARE RELEVANT TO
## ITS DEFENSE AND COUNTERCLAIM

It is imperative that IBC discover how comparable hospitals, such as Riddle, have prospered under precisely the same circumstances that CCH claims are putting it out of business. Of particular importance are Riddle's strategic planning, reimbursement rate, and cost information. The following chart shows that all IBC's discovery requests at issue here fall into one of four categories.

486890

2

| Request No. | Description | Importance |
|---|---|---|
| 9, 10 | Contracts with other Healthcare Insurers, including the reimbursement rates and documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. | To demonstrate that IBC's rates and approach to contracting with hospitals are competitive and proper. To refute CCH's claim that IBC prevents providers from accepting lower rates from other insurers than IBC, thus artificially inflating the cost of healthcare. |
| 1(d), 2, 3-7 | Utilization, cost, and profitability information respecting Riddle and other area hospitals. | Refute CCH's claim that it is one of the region's most efficient providers of hospital services, and that IBC is generally driving hospitals out of business in the Philadelphia Market. |
| 1 (a-c), 2, 8 | Strategic planning information—documents that analyze both Riddle's operations or Riddle's competitive marketplace. | To prove that CCH has financial difficulties because CCH failed to plan as well as its competitor hospitals. To prove that other hospitals – including those with reimbursement rates lower than CCH – are profitable and expanding their services. |
| 11 | Funding, participation in, planning for, or assessment of the present litigation | Regional hospitals such as Riddle have at least an indirect interest in this litigation. To the extent the present litigation is the product of a regional strategy to increase hospital reimbursement costs, that fact and any assessments of such a strategy are obviously significant and discoverable. CCH has indicated that it will depose Riddle. |

## IBC CANNOT OBTAIN THIS IMPORTANT DISCOVERY
## FROM RIDDLE WITHOUT THE COURT'S INTERVENTION

IBC issued a subpoena *duces tecum* (the "Subpoena"), over three months ago, on July 3, 2003 commanding Riddle to produce documents on July 18, 2002. (Subpoena attached hereto as Exhibit "A.") In response to the Subpoena, Riddle generally objected to the Subpoena on the grounds of overbreadth, burdensomeness, undue cost, and confidentiality. (July 7, 2003 letter objection attached hereto as Exhibit "B.") In addition, Riddle complained that it already produced some documents in response to CCH's document subpoena. (Id.)

Both IBC and CCH subpoenaed, *inter alia*, Riddle's insurer agreements. On August 20, 2003, Riddle wrote that it had been "contacted by counsel for insurers, including Aetna and Cigna, who have cautioned production of its/their contract materials," and that "absent a direct Order to do so, [Riddle] … cannot produce [its contracts with insurers] unless Riddle receives written permission from the contracting insurers." (Letter attached as Exhibit "C.")

As the Court knows, there has already been extensive litigation – culminating in the August 19th Amended Protective Order – to resolve non-party confidentiality issues. On August 27, 2003 in response to Riddle's August 20th letter, IBC informed Riddle that the confidentiality-based objections of non-party insurers had been resolved by the Court, and that Aetna and Cigna (along with Multiplan and Coventry) participated in the process leading to the Amended Protective Order. (Letter attached as Exhibit "D") Furthermore, IBC informed Riddle that the Court explicitly cautioned non-party insurers from further obstructing third-party hospital discovery:

> The suggestion is that [Aetna] … go away … .
>    …
> We have addressed … [third-party insurers'] concerns and if there is nothing new
> with respect to the other hospitals, if there is nothing new, … – I would expect that
> Aetna would understand that its concerns have already been addressed and resolved.

(See N.T. 8/7/03 at pp. 36-37).

486890                                    4

(Letter attached hereto as Exhibit "D.")  As the Court had addressed non-party insurers confidentiality based objections, IBC urged Riddle to produce its non-party insurer documents, along with the other documents requested in the Subpoena – and instructed Riddle to mark all non-party insurer related documents (and any other non-party's "highly confidential" documents) "Non-Party Highly Confidential." (Id.)  This way, only outside counsel, outside counsel's experts, and the Court would have access to Riddle's highly confidential information. Nevertheless, Riddle refused to produce the requested documents – objecting still on "confidentiality" and "costs."  (Letter attached hereto as Exhibit "E.")

Although, Riddle did produce a number of documents in response to CCH's subpoena – Riddle's production did not include many of the documents requested in IBC's subpoena.  These deficiencies are specifically enumerated in the attached Riddle Deficiency Chart (Exhibit "F"). Generally, the deficiencies are as follows:

(1)     Riddle produced a few strategic planning documents, but nowhere near the set of documents demanded.  Notably, it did not produce any strategic plans *by service line* or *plans to expand or cut services* from 1998 to the present.

(2)     Riddle did not produce any documents sufficient to show its market share, from 1998 to the present.

(3)     Riddle did not produce documents demonstrating the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Five County Region from 1998 to the present.

(4)     Riddle did not produce documents demonstrating its patient counts including: inpatient admissions, outpatient admissions or visits, births, and patient days, for each year from 1998 to the present.

(5)     Riddle did not produce documents demonstrating its average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology.

(6)     Riddle did not produce its costs of providing services by DRG code, for each year from 1998 to the present.

(7)     Riddle did not produce documents demonstrating its costs of providing charitable services to patients for each year from 1998 to the present.

(8)     Riddle, in response to an earlier subpoena from CCH, produced almost a thousand pages comprising its files on negotiating provider agreements with IBC, but as stated above, refused to provide the files regarding its contracts with non-IBC healthcare insurers.

IBC believes that Riddle is not acting in good faith, and that without the Court's intervention, Riddle will not produce the requested documents to IBC. Accordingly, IBC has moved to compel.

## GAMESMANSHIP DESIGNED TO FRUSTRATE IBC'S DEPOSITION DISCOVERY

Riddle's actions are especially insidious because, at the same time, Riddle refused to produce important documents to IBC, Riddle and CCH scheduled Riddle's Rule 30(b)(6) deposition – on only one-week's notice without consulting IBC. (Subpoena providing notice of deposition and responsive letter attached as Exhibits "G" and "H.") Plainly, CCH and Riddle hoped that the deposition would take place before IBC obtained documents that would figure prominently in the deposition. These unfortunate tactics make the Court's intervention even more necessary.

## THE COURT SHOULD COMPEL RIDDLE MEMORIAL HOSPITAL TO PRODUCE THE DOCUMENTS SOUGHT BY IBC

To put it kindly, there is no justification for Riddle's failure to produce the documents in question. Riddle's confidentiality based objections were resolved by this Court with its Amended Protective Order. The form of Riddle's responses to IBC's subpoena and related correspondence clearly demonstrate that further attempts to obtain Riddle's voluntary compliance with the subpoena would be futile. Therefore, an order to compel is appropriate

under Federal Rule of Civil Procedure 45(c), as is an award of reasonable expenses and attorneys' fees under Rule 37(a)(4)(A).

## CONCLUSION

For the foregoing reasons, IBC respectfully requests that the Court grant this motion and compel Riddle to produce without objection the documents demanded by IBC's subpoena, and certify that its production is complete, within ten (10) days of the date of this Order, and direct Riddle to pay to IBC, within ten (10) days of the date of this Order, reasonable attorneys' fees and costs incurred in the preparing, filing, and presenting of this motion.

Respectfully submitted,

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

BY: _Thomas A. Leonard_

THOMAS A. LEONARD
PAUL S. DIAMOND
WILLIAM J. LEONARD
WILLIAM K. PELOSI
H. DAVID SEIDMAN
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
(215) 665-3000

HOWREY SIMON ARNOLD & WHITE LLP

JOHN DeQ BRIGGS
JAMES G. KRESS
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 383-7015

Attorneys for Defendants,
Independence Blue Cross,
Keystone Health Plan East,
QCC Insurance Company, and
Keystone Mercy Health Plan

Dated: October 27, 2003

486890

**Exhibit A**

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

EASTERN _____ DISTRICT OF _____ PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

V.

**SUBPOENA IN A CIVIL CASE**

INDEPENDENCE BLUE CROSS, ET AL.

Case Number:[1] 02-CV-2746

TO:  CUSTODIAN OF RECORDS
RIDDLE MEMORIAL HOSPITAL
1068 W. Baltimore Pike
Media, PA 19063

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED SCHEDULE "A"

| PLACE      OBERMAYER REBMANN MAXWELL & HIPPEL LLP, 1617 JFK Blvd., 19th Floor, Philadelphia, PA 19103 (215) 665-3000 | DATE AND TIME 7/18/2003 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   COUNSEL FOR DEFENDANTS | DATE 7/3/2003 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
H. DAVID SEIDMAN, ESQUIRE, OBERMAYER REBMANN MAXWELL & HIPPEL LLP, 1617 John F. Kennedy Blvd., 19th Floor, Philadelphia, PA 19103 (215) 665-3286

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|

| | ADDRESS OF SERVER |
|---|---|

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

## SCHEDULE A

## DESIGNATED DOCUMENTS TO PRODUCE
## FOR INSPECTION AND COPYING

## DEFINITIONS

A. "Riddle," or "you," or "your" shall mean the "Riddle Memorial Hospital," its successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates and any agent or person acting for or on its behalf.

B. "CCH" shall mean Plaintiff, The Chester County Hospital, its, successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates and any agent or person acting for or on its behalf.

C. "IBC" shall mean Defendants, Independence Blue Cross, Keystone Health Plan East, QCC Insurance Company, and/or Keystone Mercy Health Plan, and their agents, successors, predecessors, subsidiaries, divisions, branches, officers, employees, or other affiliates.

D. A "Healthcare Insurer" shall mean any business (profit or non-profit) or governmental entity that makes payments for medical services rendered to individuals by medical service providers.

E. "Provider Agreements" shall mean the contracts between IBC and providers of medical services that, in part, set forth the prices that those providers will charge IBC for medical services covered under the IBC members' health benefit plans.

F. "Health Care Insurer Agreements" shall mean the contracts or other arrangements between you and any Health Care Insurer that provide for reimbursements to you for medical services that that you provide to the Health Care Insurer's members

G. "Five County Region" shall refer to the geographic region comprising Bucks County, Chester County, Delaware County, Montgomery County, and Philadelphia County, and any

county in Pennsylvania, Delaware, or New Jersey that shares a border with the above named counties.

H.  "Five County Hospitals" shall mean any and/or all acute care hospitals located in Bucks County, Chester County, Delaware County, Montgomery County, and Philadelphia County, and in any county in Pennsylvania, Delaware, or New Jersey that shares a border with the above named counties.

I.  "CCH Capital Expansion Projects" shall mean the Chester County Hospital's capital expansion projects, which included: the establishment of the Fern Hill Chester County Hospital Campus for Health and Well-Being; construction of a new maternal/infant health unit; construction and equipment for a new facility for radiation oncology services; renovation and expansion of the emergency department; and establishment of new cardiac services, including interventional cardiology and open heart surgery.

## INSTRUCTIONS

1. To the extent responsive documents are available in an electronic format, they shall be produced in an electronic format.

2. Wherever periodic information is demanded, it should be provided in all available time formats (e.g. monthly in addition to quarterly).

3. When a request asks for documents that "discuss" a given topic, that request is seeking both narrative and, if it exists, numeric information on the topic.

4. In producing the documents requested herein, segregate those documents into separate folders or boxes (as appropriate) numbered to correspond to the requests calling for their production.

5. If you maintain that any document was, but no longer is in existence, in your possession or subject to your control, state whether it (a) is missing or lost, (b) has been destroyed, (c) has been transferred to other persons voluntarily or involuntarily, or (d) has been otherwise disposed of. In each instance set forth the contents of the document, the location of any copies of the document and describe the circumstances surrounding its disposition, starting the date of its disposition, any authorization therefore, the person(s) responsible for such disposition, and the policy, rule, order, or other authority by which such disposition was made.

6. Along with the response to each numbered document request, identify each person who participated in or supplied information with respect to the preparation of the response to the document request, specifying whether such person supplied relevant information, participated in the preparation of the response, or both. If the response to any document request contains information supplied by more than one person, specify the particular information supplied by each person.

7. When a complete answer to a particular document request is not possible, the document request must be answered to the extent possible and a statement made indicating why only a partial answer is given and what must occur before a complete answer may be given.

8. If you object to any portion of a document request, provide all information called for by that portion of the document request to which you do not object.

9. These document requests shall be deemed continuing, so as to require additional answers if further information is obtained between the time the answers are served and the time of trial. Such additional answers shall be served not later than ten (10) days after such additional information is received or before trial, whichever is earlier.

10. If you withhold any information, including any document or communication, sought by any document request on the basis of a claim of privilege, work product or any reason, you must: (a) state the nature of the privilege claimed or the basis for withholding the information requested and as to the specific information withheld; (b) if pertinent, identify the attorney with respect to whom the privilege is claimed; (c) identify every communication or document which refers or relates to the information; (d) if pertinent, identify each person who heard or may have heard the communication; (e) if pertinent, identify each person who read, received, or possessed the document or a copy of the document; and (f) if pertinent, identify any portion of the document or communication that is not privileged.

11. In construing these definitions, instructions, and document requests:
    a. The singular shall include the plural and plural shall include the singular.

    b. A masculine, feminine or neuter pronoun includes the other genders.

    c. "And" and "or" shall be construed both conjunctively and disjunctively to bring within the scope of the document requests any information which might otherwise be construed to be beyond its scope.

    d. The past tense includes the present tense where the meaning is not distorted by a change of time.

    e. All requests for production of anything that falls under the definition of a document, even if not requested using the word "document" (e.g. a request for "feasibility study") shall be constructed to include all drafts to the document. If a time limit accompanies the request (e.g. a request for "all feasibility studies

created before February 1, 2001") all drafts of the study created within the limit must be produced even if the final study was not created until after the time limit.

## TIME PERIOD

Unless otherwise indicated, the time period for these discovery requests is *January 1, 1998 to the present.*

## DOCUMENTS REQUESTED

1.  Documents, other than routine administrative billing records, that reflect, refer or relate to Riddle's service lines for cardiovascular surgery, obstetrics, emergency services, and oncology, including but not limited to the following:

    a.  market share, annually;

    b.  patient demand for services;

    c.  strategic plans, including any planned, considered, actual, or proposed reduction or expansion in these service lines; and

    d.  financial performance (e.g. internal financial statements or management reports) by service line.

2.  Documents that discuss, narratively or through numeric data, the competitive environment for Riddle's services, including the actual or potential impact on competition of CCH's Capital Expansion Projects with regard to the financial performance of any of the Five County Hospitals.

3.  Documents that discuss, narratively or through numeric data, Riddle's costs of charitable services provided by service or procedure type to patients and/or community.

4.  Documents comparing any or all hospitals located in the Five County Region, in terms of:

    a.  utilization rates;

      b.  costs; and

      c.  operating margins.

5.  All cost and profitability analysis, by DRG and/or service line for inpatient and outpatient services.

6.  Documents explaining how costs are assigned to each DRG or service line.

7.  All Medicare cost reports.

8.  Documents that reflect, refer or relate to any planned, considered, actual, or proposed affiliations and/or mergers with any hospital system or network or any individual hospital(s) including but not limited to CCH, or any discussions regarding same.

9.  Documents that discuss, narratively or through numeric data, the reimbursement rates set forth in, and the profitability of, each of Riddle's Health Care Insurer Agreements, (including but not limited to contracts, summaries and competitive analysis), but not routine administrative billing records.

10. Documents that discuss, narratively or through numeric data, coverage denials by Healthcare Insurers and/or associated appeals (including but not limited to contracts, summaries and analysis), but not routine administrative records.

11. Any documents that refer, reflect or relate to:

      a.  the above captioned lawsuit;

      b.  any potential anti-trust litigation against IBC or any other Healthcare Insurer in the Five County Region

      c.  the actual or potential funding of any actual or potential litigation against IBC or any other Healthcare Insurer in the Five County Region.

**Exhibit B**

# RAWLE & HENDERSON LLP



Joseph L. Turchi
215-575-4341
jturchi@rawle.com

THE NATION'S OLDEST LAW OFFICES
ESTABLISHED 1783

www.rawle.com

THE WIDENER BUILDING
ONE SOUTH PENN SQUARE
PHILADELPHIA, PA 19107

TELEPHONE:(215) 575-4200
FACSIMILE:(215) 563-2583

July 7, 2003

*VIA FAX (215) 665-3018*

H. David Seidman
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895

**Re:** **The Chester County Hospital v. Independence Blue Cross, et al.**
      **USDC ED PA No. 02-2746**
      **Our File No. 440,304**

Dear Mr. Seidman:

As you know, we represent Riddle Memorial Hospital ("Riddle"). We have received a copy of your subpoena dated July 3, 2003 to Riddle in the above-referenced matter. In accordance with Fed.R.Civ.P. 45 (c)(2)(B), please note that Riddle objects to the subpoena on the grounds that it is overbroad, burdensome, unnecessarily costly and purports to require Riddle to produce confidential business information.

As you also know, Riddle has already been subjected to responding to a documents subpoena in this case. Although it is obviously not a party to this matter, Riddle has been required to incur significant expense in the way of employee hours, document reproduction and legal fees. Riddle has also agreed to produce a corporate designee for deposition in this matter presently scheduled for August 6, 2003.

Subject to the foregoing objections and without waiver thereof, Riddle is interested in amicably resolving its objections such that you may obtain the information necessary to your case without overburdening our client's resources and/or intruding into matters which it considers and protects as confidential.

I trust that we can discuss these issues in an effort to accommodate your needs and my client's interests.

841080 v.1

PHILADELPHIA, PA    MEDIA, PA    PITTSBURGH, PA    MARLTON, NJ    NEW YORK, NY    WILMINGTON, DE

RAWLE & HENDERSON LLP

H. David Seidman, Esquire
July 7, 2003
Page 2


Very truly yours,

RAWLE & HENDERSON LLP

By:
     Joseph L. Turchi

JLT/sas

cc:     Lewis R. Olshin, Esquire
        Rose Ann Kavetski, Esquire

**Exhibit C**

# RAWLE & HENDERSON LLP



JOSEPH L. TURCHI
215-575-4341
jturchi@rawle.com

THE NATION'S OLDEST LAW OFFICES
ESTABLISHED 1783

www.rawle.com

THE WIDENER BUILDING
ONE SOUTH PENN SQUARE
PHILADELPHIA, PA 19107

TELEPHONE:(215) 575-4200
FACSIMILE:(215) 563-2583

August 20, 2003

Seth A. Goldberg, Esquire
Duane Morris LLP
One Liberty Place
39th Floor
Philadelphia, PA 19103-7396

Re:   The Chester County Hospital v. Independence Blue Cross, et al.
      USDC ED PA No. 02-2746
      Our File No. 440,304

Dear Seth:

We have received your letter of August 20, 2003 with the enclosed Amended Protective Order entered by Judge Padova in the above-referenced case.

As you know, our client lodged several objections to the subpoena served on behalf of plaintiff in this case. Nevertheless, after plaintiff agreed to pare back on the documents requested by the subpoena, at great expense in the way of employee hours, legal fees and production costs, our client compiled and produced several thousand pages of material in response to the subpoena. As you also know, our client has only been reimbursed for some of the document reproduction costs it has incurred. Frankly, we believe that our client has more than complied with its obligation to respond as a non-party to this litigation.

Additionally, to date, we have been contacted by counsel for insurers, including Aetna and Cigna, who have cautioned regarding production of its/their contract materials. We do not know the extent to which these insurers participated in the process leading to issuance of the Amended Protective Order. Absent a direct Order to do so, we cannot produce those contracts unless we receive written permission from the contracting parties.

Should you have any questions, please call me.

860183 v.1

PHILADELPHIA, PA        MEDIA, PA        PITTSBURGH, PA        MARLTON, NJ        NEW YORK, NY        WILMINGTON, DE

RAWLE & HENDERSON

Seth A. Goldberg, Esquire
August 20, 2003
Page 2

Very truly yours,

RAWLE & HENDERSON LLP

By:
      Joseph L. Turchi

JLT/sas

cc:    Rose Ann Kavetski, Esquire
       H. David Seidman, Esquire

860183 v.1

**Exhibit D**

LAW OFFICES

# OBERMAYER REBMANN MAXWELL & HIPPEL LLP

ONE PENN CENTER-19TH FLOOR

1617 JOHN F. KENNEDY BOULEVARD

PHILADELPHIA, PA 19103-1895

(215) 665-3000

FAX (215) 665-3165

*H. David Seidman, Esquire*
*Direct Dial: (215) 665-3286*
*Direct Fax: (215) 665-3018*
*E-mail: david.seidman@obermayer.com*

August 27, 2003

**VIA EMAIL (jturchi@rawle.com) &**
**FIRST CLASS MAIL**
Joseph L. Turchi, Esquire
Rawle & Henderson
The Widener Building
One South Penn Square
Philadelphia, PA 19107

Re:    **The Chester County Hospital v. Independence Blue Cross et al.**
      **Civil Action No. 02-CV-2746**

Dear Joe:

    I am writing in response to your August 20, 2003 letter to Seth Goldberg regarding Chester County Hospital's document subpoena directed to Riddle Memorial Hospital ("Riddle"), issued in the above matter. As stated in your letter, Riddle has been "contacted by counsel for insurers, including Aetna and Cigna, who have cautioned production of its/their contract materials," and that "absent a direct Order to do so, [Riddle] ... cannot produce [its contracts with insurers] unless Riddle receives written permission from the contracting insurers." As you know, IBC's document subpoena likewise requests, *inter alia*, documents relating to Riddle's insurer agreements. See Defendants Subpoena Requests ¶¶ 9-10. Please be advised that Aetna and Cigna (along with Multiplan and Coventry) participated to the highest degree in the process leading to the Amended Protective Order.

    Notably, the Court explicitly cautioned non-party insurers from further obstructing third-party hospital discovery:

    The suggestion is that you go away, Mr. Crumlish.

        ...

    We have addressed ... [third-party insurers'] concerns and if there is nothing new with respect to the other hospitals, if there is nothing new, ... – I would expect that Aetna would understand that its concerns have already been addressed and resolved.

(See N.T. 8/7/03 at pp. 36-37). Accordingly, any confidentiality-based objections of non-party insurers to defendants' document subpoena have been resolved by the Court.

479372

Because all nonparty objections regarding the confidentiality of the subpoenaed documents have been addressed, there is no longer any credible basis for delaying the production of the subpoenaed documents. Riddle should mark all non-party insurer related documents (and any other non-party's "highly confidential" documents) "Non-Party Highly Confidential," and produce the subpoenaed documents immediately.

As you know, this case is largely about hospital reimbursement rates and operating costs. Given plaintiff's allegation that defendants force hospitals in Southeastern Pennsylvania to accept reimbursement rates for medical services that are less than the costs of providing those services, Riddle cannot credibly maintain its boilerplate objections to defendants' subpoena. Put simply, all of the categories of documents demanded are essential to defendants' defense in this matter.

As Riddle has known since July 3, 2003 that it would eventually have to produce the subpoenaed documents, it is reasonable to expect that those documents would by now be ready for production, and defendants request that they be produced immediately.

Because of the impending discovery deadline in this case, and the vast amount of deposition discovery awaiting completion of document discovery, we will need to file a motion to compel on or shortly after Wednesday, September 3, 2003, if we do not receive Riddle's complete production by that time. Should you have any questions, please call me.

Very truly yours,

H. DAVID SEIDMAN

HDS:kf


cc:    Brian T. Must, Esquire (via email: bmust@metzlewis.com)
       James C. Crumlish, III, Esquire (via email: JCC@erse.com)
       Kevin C. Maclay, Esquire (via email: kmaclay@jonesday.com)
       Katie A. Gummer, Esquire (via email: kgummer@mccarter.com)
       Lewis R. Olshin, Esquire (via email: olshin@duanemorris.com)
       William J. Leonard, Esquire

**Exhibit E**

# RAWLE & HENDERSON LLP



JOSEPH L. TURCHI
215-575-4341
jturchi@rawle.com

THE NATION'S OLDEST LAW OFFICES
ESTABLISHED 1783
www.rawle.com

THE WIDENER BUILDING
ONE SOUTH PENN SQUARE
PHILADELPHIA, PA 19107

TELEPHONE:(215) 575-4200
FACSIMILE:(215) 563-2583

September 2, 2003

*VIA FAX (215) 665-3018*

H. David Seidman
Obermayer Rebmann Maxwell & Hippel LLP
One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895

**Re:    The Chester County Hospital v. Independence Blue Cross, et al.**
**USDC ED PA No. 02-2746**
**Our File No. 440,304**

Dear Mr. Seidman:

As you know, we represent Riddle Memorial Hospital ("Riddle").  Since I was not in the office last week, I just received your letter of August 27, 2003.  Unfortunately, I must respond to several inaccurate statements in your correspondence.

First, Riddle's objections to the subpoena served by your client, which were provided to you by fax on July 7, 2003, have never "been addressed."  Indeed, Riddle was not present and had no prior notice of the court hearing you refer to in your letter.  If in fact "any confidentiality-based objections of non-party insurers to defendants' document subpoena have been resolved by the Court" then you should have no problem obtaining waivers from those non-party insurers so that Riddle may produce the requested contract documents without fear of litigation.  Alternatively, perhaps your client is willing to enter into an indemnification agreement which would protect our client in the event it is sued by one of its contracting partners.

Second, Riddle's objections to the subpoena were timely and properly served in accordance with Fed.R.Civ.P. 45 (c)(2)(B), and, despite your opinion to the contrary, Riddle has several credible basis for objecting to production, not the least of which is its own confidentiality concerns which have never been addressed.  Additionally, Riddle has already been required to incur significant expense in the way of employee hours, document reproduction and legal fees in this case.  Is your client willing to cover the costs, including employee compensation, involved in searching for, identifying and copying the requested documents?

864241 v.1

# RAWLE & HENDERSON LLP

H. David Seidman, Esquire
September 2, 2003
Page 2

Finally, for the reasons stated above, Riddle has not known at any time that "it would eventually have to produce the subpoenaed documents." Accordingly, the deadline set in your letter is not practical.

Should your client wish to try to work out an amicable production which meets its true litigation needs and protects Riddle, please call me.

Very truly yours,

RAWLE & HENDERSON LLP

By:

    Joseph L. Turchi

JLT/sas

cc:    Lewis R. Olshin, Esquire
       Rose Ann Kavetski, Esquire

864241 v.1

**Exhibit F**

**RIDDLE MEMORIAL HOSPITAL DOCUMENT PRODUCTION DEFICIENCY CHART**

| DOCUMENT REQUEST | RIDDLE'S RESPONSE | DOCUMENTS NOT PRODUCED |
|---|---|---|
| Riddle's strategic business plans—generally and by service line—and any plans to expand or cut services from 1998 to the present. | Riddle Produced:<br><br>• Riddle Health System Strategic Planning Guide dated June 30, 2000: Five Year Plan for Fiscal Years 2001-2006 [not by service line]<br><br>• Riddle Revised Budget for FY 2001-02: Financial Model Assuming Cancellation of IBC Contract Effective July 1, 2002 [not by service line] | • Riddle's strategic business plans—generally and by service line—and any plans to expand or cut services from 1998 to the present. |
| Riddle's summary level documents sufficient to show its market share, from 1998 to the present, for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. | None produced. | • Riddle's summary level documents sufficient to show its market share, from 1998 to the present, for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. |
| Riddle's contracts with insurance providers (including managed care plans) from 1998 to the present. | None produced for insurance providers other than IBC. | • Riddle's contracts with insurance providers (other than IBC) (including managed care plans) from 1998 to the present. |
| Documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. | Riddle Produced:<br><br>• Internal memoranda discussing IBC's impact on Riddle and various documents related to Riddle/IBC contract negotiations | • Documents that discuss the financial effect of IBC or any other healthcare insurer(s) on the financial status of any hospital or hospitals in the Southeastern Counties from 1998 to the present. |
| Riddle's summary and executive level analysis of profitability for each payor by DRG (inpatient) and by service line (outpatient). | None produced. | • Riddle's analysis of profitability for each payor by DRG (inpatient) and by service line (outpatient). |

| DOCUMENT REQUEST | RIDDLE'S RESPONSE | DOCUMENTS NOT PRODUCED |
|---|---|---|
| Riddle's utilization rates, including by line of service (outpatient) and DRG (inpatient), for each year from 1998 to the present. | Riddle Produced:<br><br>• Riddle Obligated Group Historic Utilization for Fiscal Years Ended June 30, 1999, 2000, and 2001 and Year-to-Date as of March 31, 2002 and March 31, 2003, including number of admissions and births. These reports include Riddle's utilization by procedure, rather than by DRG and service line. | • Riddle's utilization rates, including by line of service (outpatient) and DRG (inpatient), for each year from 1998 to the present |
| Riddle's Patient counts including: inpatient admissions, outpatient admissions or visits, births, and patient days, for each year from 1998 to the present. | Riddle Produced:<br><br>• Riddle Obligated Group Historic Utilization for Fiscal Years Ended June 30, 1999, 2000, and 2001 and Year-to-Date as of March 31, 2002 and March 31, 2003, including number of admissions and births. | • Riddle's Patient counts including: inpatient admissions, outpatient admissions or visits, births, and patient days, for each year from 1998 to the present. |
| Riddle's average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. | Riddle Produced:<br><br>• Riddle Obligated Group Historic Utilization for Fiscal Years Ended June 30, 1999, 2000, and 2001 and Year-to-Date as of March 31, 2002 and March 31, 2003, including length of stay [not by lines of service requested]<br><br>• Riddle Comparative Statistical Summaries in Proposed Budgets and Monthly Flexible Expense Statements [not by lines of service requested] | • Riddle's average length of stay for each year from 1998 to the present for the following lines of service: cardiovascular surgery, obstetrics, emergency services, and oncology. |
| Riddle's costs of providing services, including by DRG code, for each year from 1998 to the present. | Riddle Produced:<br><br>• Various Monthly Flexible Expense Statements, Budgets and Financial Statements, and "Financial Information – Financial Data" Indicator/Element Graphs (Riddle 2364-2413), and Riddle Solucient – Trend/Compare Index, Fourth Quarter 2002 [none by DRG code] | • Riddle's costs of providing services, including by DRG code, for each year from 1998 to the present. |
| Riddle's costs of providing charitable services to patients for each year from 1998 to the present. | None Produced. | • Riddle's costs of providing charitable services to patients for each year from 1998 to the present. |

488133

2

**Exhibit G**

**DUANE MORRIS**

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
DETROIT
BOSTON
WASHINGTON, DC
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
CHERRY HILL
HARRISBURG
BANGOR
PRINCETON
PALM BEACH
WESTCHESTER

SETH A. GOLDBERG
DIRECT DIAL: 215.979.1175
E-MAIL: SAGoldberg@duanemorris.com

www.duanemorris.com

October 13, 2003

VIA FACSIMILE & HAND DELIVERY

Joseph L. Turchi, Esquire
Rawle & Henderson
The Widener Building
One South Penn Square
Philadelphia, PA  19107

Re:    **The Chester County Hospital v. Independence Blue Cross, et al.**

Dear Joe:

Enclosed please find an Amended Deposition Notice directing Riddle Memorial Hospital to appear for a 30(b)(6) deposition on October 22, 2003.  If you have any questions, please call.

Sincerely,

Seth A. Goldberg

SAG/mrs
Enclosure

cc:    James G. Kress, Esquire (w/enc.) (via facsimile)
William J. Leonard, Esquire (w/enc.) (via facsimile)
Daniel A. Kotchen, Esquire (w/enc.) (via facsimile)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL     :     CIVIL ACTION
                          :     NO. 02-2746

       v.                    :

INDEPENDENCE BLUE CROSS,     :
QCC INSURANCE COMPANY,      :
KEYSTONE HEALTH PLAN EAST, and    :
KEYSTONE MERCY HEALTH PLAN    :

## PLAINTIFF'S AMENDED NOTICE OF DEPOSITION TO RIDDLE HOSPITAL

Pursuant to Rules 45 and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff, the Chester County Hospital, by and through its attorneys, hereby gives notice that it shall take the deposition of Riddle Memorial Hospital ("Riddle") by the persons designated by Riddle to testify on its behalf on the subjects described below.

## SUBJECTS

1. Contracts with health care insurers from 1994 to the present.

2. Contract negotiations with health care insurers from 1994 to the present.

3. Hospital and health insurer competition in the market in which Riddle has operated since 1994.

4. Any program by which Riddle is reimbursed at Independence Blue Cross's ("IBC") rates for the treatment of enrollees of Blue Cross Plans or Blue Shield Plans other than IBC. (This is often referred to as the "BlueCard Program" or the "Out of Area Program.")

5. Since 1999, Riddle's treatment of Blue Cross Plans or Blue Shield Plans other than IBC (such as Capital Blue Cross or Highmark enrollees), including:

    a. The amount of annual hospital charges incurred by enrollees of Blue Cross Plans or Blue Shield Plans other than IBC;

PHX758091.1

   b.  The amount Riddle has been reimbursed by IBC for charges incurred by enrollees of Blue Cross Plans or Blue Shield Plans other than IBC.

6. Riddle's communications with Capital Blue Cross.

7. Riddle's communications with Highmark (also known as Pennsylvania Blue Shield).

8. Riddle's contracts with Blue Cross Plans or Blue Shield Plans other than IBC (such as Capital Blue Cross or Highmark).

9. IBC's Joint Operating Agreement with Highmark, Inc.

10. Capital Blue Cross's Joint Operating Agreement with Highmark.

2

This deposition will take place October 22, 2003 beginning at 9:30 a.m. at Duane Morris

LLP or a mutually agreeable location.

Dated:  October 13, 2003

Lewis R. Olshin
Seth A. Goldberg
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19103-7396

Richard A. Feinstein
Daniel A. Kotchen
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

Attorneys for
THE CHESTER COUNTY HOSPITAL

3

**Exhibit H**

FILE COPY

LAW OFFICES

OBERMAYER REBMANN MAXWELL & HIPPEL LLP

ONE PENN CENTER-19TH FLOOR

1617 JOHN F. KENNEDY BOULEVARD

PHILADELPHIA, PA 19103-1895

(215) 665-3000
FAX (215) 665-3165

*H. David Seidman, Esquire*
*Direct Dial: (215) 665-3286*
*Direct Facsimile: (215) 665-3018*
*E-mail: david.seidman@obermayer.com*

October 14, 2003

**VIA FACSIMILE: (215) 979-1020 &**
**FIRST CLASS MAIL**
Seth A. Goldberg, Esquire
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19103-7396

    Re:    **The Chester County Hospital v. Independence Blue Cross et al.**
            **Civil Action No. 02-CV-2746**

Dear Seth:

    Last night, I received your deposition notices unilaterally scheduling five non-party hospital depositions for next week. CCH did not consult or even attempt to arrange deposition times that would be mutually convenient for both parties. Be advised, IBC will not be attending these hospital depositions – on less than one week notice – without complete non-party hospital productions. Until you consult with IBC to – at the very least – attempt to arrange deposition times that are convenient for both parties, IBC will be left with no choice but to schedule their own depositions requiring witnesses to appear twice.

                Very truly yours,

                H. DAVID SEIDMAN

HDS:kf

cc:    Lewis R. Olshin, Esquire (via facsimile: (215) 979-1020)
        Richard A. Feinstein, Esquire (via facsimile: (202) 237-6131)

489512

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHESTER COUNTY HOSPITAL

v.

INDEPENDENCE BLUE CROSS,
QCC INSURANCE COMPANY,
KEYSTONE HEALTH PLAN EAST, and
KEYSTONE MERCY HEALTH PLAN

CA No. 2:02CV2746

## CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing Defendants' Motion To Compel Riddle Hospital To Produce Documents and Memorandum of Law in support thereof was served, this 27th day of October 2003 as follows:

**VIA HAND DELIVERY**
Joseph L. Turchi, Esquire
Rawle & Henderson
The Widener Building
One South Penn Square
Philadelphia, PA 19107
*Counsel for Riddle Memorial Hospital*

**VIA HAND DELIVERY**
Lewis R. Olshin, Esquire
Duane Morris, LLP
One Liberty Place, Suite 4200
Philadelphia, PA 19103-7396
*Counsel for Plaintiff,*
*Chester County Hospital*

**VIA FACSIMILE & FEDERAL EXPRESS**
Richard A. Feinstein, Esquire
Daniel A Kotchen, Esquire
Boies, Schiller & Flexner, LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Facsimile No. (202) 237-6131
*Counsel for Plaintiff,*
*Chester County Hospital*

THOMAS A. LEONARD

486890