IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Chester County Hospital, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 02-CV-2746 |
| | : | |
| Independence Blue Cross, QCC | : | |
| Insurance Company, Keystone | : | |
| Health Plan East, and Keystone | : | |
| Mercy Health Plan, | : | |
|     Defendants. | : | |

**MEMORANDUM OF LAW OF THIRD PARTY PAOLI MEMORIAL HOSPITAL
IN OPPOSITION TO DEFENDANT INDEPENDENCE
<u>BLUE CROSS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS</u>**

Paoli Memorial Hospital ("Paoli"), a third party to this matter, has produced over one thousand five hundred pages of documents and expended significant resources responding to two largely duplicative subpoenas served on it by, respectively, plaintiff Chester County Hospital ("CCH") and defendants Independence Blue Cross, QCC Insurance Company, Keystone Health Plan East, and Keystone Mercy Health Plan (collectively, "IBC") pursuant to Federal Rule of Civil Procedure 45. Through the substantial efforts of members of its senior staff as assisted by counsel, Paoli has produced all of the documents in its possession, custody, or control responsive to IBC's subpoena, except (1) those covered by the attorney-client privilege and/or attorney work product doctrine and (2) a discrete set of highly proprietary and confidential documents relating to contracts with insurers – other than IBC – entered into on Paoli's behalf by Jefferson Health System ("JHS"), Paoli's indirect corporate parent. IBC can obtain (and perhaps has already

obtained) these contracts directly from those insurers.[1]  Notwithstanding these good faith efforts by Paoli, IBC now seeks to compel the production of yet more documents and, remarkably, demands an award of attorney's fees for its costs of preparing the instant, baseless motion and supporting memorandum (the "Motion to Compel").

Because IBC's motion is wholly without merit, Paoli respectfully requests that the Court deny it in all respects.

## COUNTERSTATEMENT OF FACTS

Paoli timely responded to IBC's July 3, 2003 subpoena.  Initially, in accordance with Rule 45, Paoli objected to the subpoena on numerous grounds, including that it was:  overly broad; vague; ambiguous; unduly burdensome; unnecessarily costly; and called for the production of information that was publicly-available, privileged, confidential and proprietary, not reasonably calculated to lead to the discovery of admissible evidence, and/or subject to confidentiality agreements with third parties.  See Letter of July 11 from L. Cohen to H. Seidman (attached as Exhibit B to Motion to Compel).  Paoli also objected to the IBC subpoena to the extent it sought documents already requested by, and produced in response to, the subpoena previously served on Paoli by CCH.  See id.

In a good faith effort to cooperate with the parties, Paoli had previously allowed IBC to review 602 pages' worth of documents – responsive to the CCH subpoena – prior to producing those documents in June 2003, because of concerns raised by IBC regarding the confidentiality

---

[1]    In the course of performing due diligence in response to this Motion to Compel, Paoli has identified two additional documents (a total of seven pages) that it inadvertently did not produce and that appear to include financial information responsive to the IBC subpoena.  Paoli is now producing these documents.

of information regarding its contracts relating to Paoli included in that production. Despite Paoli's cooperation with IBC both in response to the prior CCH subpoena and IBC's own subsequent subpoena, IBC to date "has not agreed to narrow [its] subpoena [to Paoli] in any meaningful way." See Letter of August 29 from L. Cohen to H. Seidman (attached as Exhibit D to Motion to Compel).

Paoli likewise responded promptly and reasonably to the August 19 Amended Protective Order ("the Protective Order") in this matter. By letter of August 20 from counsel for CCH, Paoli first became aware of the entry of the Protective Order, which it understood to be in specific response to confidentiality concerns raised by third-party insurers subpoenaed by the parties. Although the Protective Order allows for a third party to restrict the dissemination of documents it produces in response to a subpoena in this matter, the Protective Order allows deposition witnesses and outside counsel to view such documents, provided that the latter agree not to represent hospitals in connection with subsequent contract negotiations with IBC or competing insurers for an 18-month period. It does not, however, require outside counsel to enter into a similar agreement not to represent IBC in such matters. Finally, the Protective Order does not address the extent to which a third party provider's production of insurance contracts might breach that party's contractual obligation to the insurer (or, in Paoli's case, to JHS) to maintain the confidentiality of those contracts, nor does it address the use of confidential documents in connection with summary judgment motions or at trial.

On August 27, just days after Paoli learned of the Protective Order, IBC renewed its demand that Paoli produce the vast array of documents called for by the IBC subpoena and threatened to bring a motion to compel within a week if Paoli continued to object in any way to such production. See Letter of August 27 from H. Seidman to S. Rotella (attached as Exhibit C

to Motion to Compel).  By letter of August 29, Paoli reiterated its willingness to respond to IBC's reasonable document demands, noting that Paoli would need to reassess, in light of the Protective Order, what confidential and/or proprietary documents it could produce.  See Letter of August 29 from L. Cohen to H. Seidman (attached as Exhibit D to Motion to Compel).  To the significant extent that IBC's subpoena requested insurance contracts relating to Paoli, Paoli urged IBC simply to obtain these documents from the insurers, thereby obviating any concerns that production of the same by Paoli would breach its duty of confidentiality to JHS, or JHS's duty of confidentiality to the insurers as set forth in the contracts between JHS and the insurers.  Over the next few weeks, counsel for Paoli periodically informed counsel for IBC of the progress of Paoli's document production efforts, without making any representations whatsoever as to which particular documents Paoli would ultimately produce.

On September 26, 2003, subject to the objections set forth in its July 11 letter and specifically citing both confidentiality concerns not addressed by the Protective Order and objections to Paoli's production of certain documents asserted by JHS, Paoli produced documents responsive to the IBC subpoena.  See Letter of September 26 from L. Cohen to H. Seidman (attached as Exhibit G to Motion to Compel).  Paoli withheld from this production only privileged documents and a limited set of highly proprietary documents, all of which relate to JHS's contracts with insurers other than IBC.  As Paoli explained in its September 26 letter, and consistent with its previous representations, disclosure of this discrete set of confidential insurer materials could put it, as well as JHS and the system's other member hospitals, at a significant commercial disadvantage, notwithstanding the terms of the Protective Order.  As also explained in the September 26 letter, moreover, JHS negotiated and was in fact the direct party to the Paoli insurer contracts at issue, which contain highly sensitive commercial information and trade

secrets of JHS.[2]  In response to the specific demand for these documents in the IBC subpoena, JHS has orally advised Paoli that it is not authorized to produce these documents.

In addition to other failings, finally, the Motion to Compel reflects a fundamental misunderstanding of Paoli's corporate structure.  Paoli is a division of Main Line Hospitals, Inc., the parent corporation of which is Main Line Health Systems, Inc. (collectively, "Main Line").  Main Line is an integrated delivery system that includes various other providers of health care services, including three other hospitals.  Main Line, in turn, is also one of five hospital systems that constitute JHS.  As explained further below, IBC's subpoena seeks information specifically regarding Paoli that Main Line maintains in the ordinary course of business only in the aggregate on a system-wide basis, and not separately for Paoli alone.  Where appropriate, Paoli voluntarily produced relevant Main Line documents.  Far from constituting production "deficiencies," as IBC alleges, Paoli's production of these system-wide documents reflects its good faith effort to provide IBC with the information it apparently sought, but failed appropriately to request.

## LEGAL STANDARD

When a third party timely objects to a subpoena seeking the production of documents, the party issuing the subpoena is not entitled to discovery except pursuant to a court order.  Fed.R.Civ.P. 45(c)(2)(B).  In considering such a motion to compel production, the court applies a "balancing test to determine whether the need of the party seeking disclosure outweighs the adverse effect such disclosure would have on the policies underlying the [claimed] privilege."  Concord Boat Corp. v. Brunswick Corp., No. 96-C-6026, 1996 U.S. Dist. LEXIS 18012 at *8-9

---

[2]    Paoli is not the direct party to any insurer contract.  JHS, as Paoli's indirect corporate parent, enters into all insurance contracts on Paoli's behalf, as it does for all the other hospitals within JHS.  All such contracts are thus proprietary to JHS.

(N.D. Ill. Dec. 4, 1996) (quoting Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 559 (7th Cir. 1984)).

      Here, Paoli timely objected to IBC's subpoena on the grounds, among others, that it imposes an undue burden, and seeks confidential and proprietary commercial information. See Fed.R.Civ.P. 45(c)(1) ("A party or attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."). IBC thus bears the burden of demonstrating that responding to the request to which it seeks to compel disclosure would not impose such an "undue burden" on Paoli. In re Subpoena Duces Tecum Served on Bell Communications Research, Inc. by Lucent Technologies, Inc., No. 5-96CV45, 1997 U.S. Dist. LEXIS 191 at *5 (S.D.N.Y. Jan. 13, 1997). Because IBC seeks confidential information, it bears the additional burden of establishing "that the information is sufficiently relevant and necessary to this case to outweigh the harm disclosure" of such sensitive information would cause to Paoli. Concord Boat, 1996 U.S. Dist. LEXIS 18012 at *9. Factors courts consider in applying the requisite balancing test include "the relevance of the requested information to the underlying litigation, the party seeking discovery's need for the information, whether the requests are burdensome, the fact that the party from whom discovery is being requested is a non-party to the underlying case, and the fact that the disclosure would be made to competitors." Id.

      Like the parties to a lawsuit, finally, third parties have no obligation to produce documents that simply do not exist or to create documents in response to a subpoena request. Gray v. Faulkner, 148 F.R.D. 220, 223 (N.D. Ind. 1992) (party not obligated to produce document that does not exist); Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co., 576 F. Supp.

511, 513 (W.D. Pa. 1983) (party obligated only to produce existing documents and cannot be required to prepare a writing for inspection).

## ARGUMENT

Paoli has already more than met its obligation under Rule 45 to respond to IBC's subpoena. As set forth below, Paoli has in good faith produced all responsive, non-privileged documents in its possession, custody, or control, save for a discrete set of highly propriety materials relating to JHS's insurance contracts. IBC's current demand for production of these proprietary materials, and various other documents it did not clearly request in its July 3 subpoena and/or Paoli does not even maintain, imposes an undue burden and unreasonably requires Paoli to disclose its highly sensitive commercial confidences, as well as confidences owned by JHS. IBC's further allegation that Paoli has reneged on a promise to produce documents, moreover, is utterly baseless. Accordingly, the Motion to Compel should be denied.

I.  **Paoli Never Made Any Representations As To The Ultimate Content Of Its Production And Certainly Never "Promised" To Produce Highly Proprietary Information Relating To Contracts Between JHS And Insurers Other Than IBC.**

IBC bases its Motion to Compel in part on an allegation that Paoli promised to produce its highly proprietary documents relating to contracts with third-party insurers, "and then reneged – without justification – on that promise." Motion to Compel at 7. This allegation is pure fiction and lacks any support in the record of the communications between IBC and Paoli.

Unable to cite to any actual commitment on Paoli's part to produce the insurer documents, because Paoli never made any such commitment, IBC (at pages 4-5 of the Motion to Compel) relies instead only on: (1) its *own counsel's* statement (included in a sarcastic response to an email from the undersigned) that Paoli had promised to produce these documents, see Email of September 25 from S. Rotella to H. Seidman (attached as Exhibit F to Motion to

7

Compel) ("Again, however, I did not make any representations as to the specific documents Crozer might or might not ultimately provide to you.") & Email of September 25 from H. Seidman to S. Rotella (attached as Exhibit F to Motion to Compel) ("I am sorry that your prior commitment to produce insurer documents for Crozer-Chester and Paoli has now caused you embarrassment."); and (2) a series of emails in which the undersigned simply responded, without identifying any particular document Paoli intended to produce, to requests for status updates from counsel for IBC, see Emails of September 15-17 from S. Rotella to H. Seidman (attached as Exhibit E to Motion to Compel) (stating on September 16, for example, that "staff at [Paoli] have been reviewing potentially responsive documents" and on September 15 that the undersigned was continuing to work with Paoli "to identify documents for possible production").

This awkward attempt by IBC to create a record that does not exist should be summarily dismissed, as should any suggestion that Paoli ever committed to producing the discrete set of confidential documents it ultimately withheld from production.

**II.     Paoli Has Produced All Of Its Non-Privileged Documents Responsive To IBC's Subpoena Except For Highly Proprietary Documents Relating To JHS's Contracts With Third Party Insurers, The Relevance And Necessity Of Which Do Not Outweigh The Potential Harm To Paoli And JHS From Disclosing Such Commercially Sensitive Information.**

IBC has included in its Motion to Compel a wish-list of categories of documents it now believes would have been useful for Paoli to maintain and produce to assist IBC in defending against the antitrust claims brought by CCH. See Motion to Compel at 5-6 (listing 8 alleged categories of deficiencies) and Exhibit H ("Paoli Memorial Hospital Document Production Deficiency Chart"). The short answer with respect to all of these categories, but one, is that Paoli produced what responsive documents it had, and the law requires nothing further. IBC has failed to demonstrate, furthermore, that its need to obtain from Paoli the limited set of insurer

8

documents Paoli did withhold outweighs the potential harm to Paoli and JHS of producing the same.

> A.  **Paoli produced the non-privileged documents in its possession, custody, or control responsive to all of the categories IBC has identified as production deficiencies, except the demand for documents relating to contracts with insurers other than IBC.**

IBC may well have understood the significant extent to which the Motion to Compel is moot had it only met its obligations under the Federal Rules of Civil Procedure to take reasonable steps to avoid imposing undue burden and expense on Paoli, and to confer with Paoli prior to seeking to compel the production of documents. First, IBC failed to narrow its subpoena in any meaningful way, or even to justify its refusal to entertain such a reasonable compromise, as required by Rule 45(c)(1). Second, Rule 37(a)(2) requires a potential movant to confer, or at least attempt to confer, with a party that has not made a requested disclosure prior to moving to compel such disclosure. IBC did not follow this practice here.

If it had, IBC could have easily determined the scope of Paoli's production, as set forth below, and the erroneous nature of the production deficiencies IBC has alleged. Because IBC relies on its "Paoli Deficiency Chart" (attached as Exhibit H to the Motion to Compel) as specifically enumerating these alleged deficiencies, Paoli has responded to the categories of "missing" requested documents as described in that chart.

- Strategic business plans: Paoli provided numerous documents responsive to IBC's relevant request, which specifically called only for "strategic plans" relating to certain, delineated service lines. See IBC Subpoena of July 3, 2003 to Paoli, Request No. 1(c) (attached as Exhibit A to Motion to Compel). IBC has only now requested specific types of additional documents not identified in its original request, complaining for the first time, for example, that Paoli has failed to produce "general" strategic business plans or a strategic plan for its NICU. In fact, IBC did not request any such plans. Had IBC made clear prior to filing the instant motion to compel (e.g.,

in a meet and confer session) its interest in obtaining this additional information, Paoli would not have been averse to producing any such documents in its possession, custody, or control that it could have identified pursuant to a reasonable search.

- <u>Summary level documents showing admissions etc.</u>: IBC complains that Paoli did not produce "summary level documents showing its patient days per DRG and per service line" for 1998 to the present. IBC's subpoena, however, included no such request.

- <u>Market share analyses</u>: IBC complains that Paoli produced certain documents showing its market share for emergency services for 2002, but failed to produce "summary level" documents regarding its market share for the same in 1998-2001. In fact, to the best of its knowledge and belief, Paoli did not produce *any* documents specifically regarding its market share for emergency services in 1998-2001, because it did not maintain such statistics for emergency services during that time period.

- <u>Contracts with insurers</u>: Consistent with its timely and proper objections pursuant to Rule 45, as described further below, Paoli has withheld production of these confidential and highly proprietary documents.

- <u>Analyses of the financial effect of insurers on hospitals</u>: This is a particularly vague and overbroad request. Based on its best reasoned judgment as to the nature of the request, however, Paoli has determined that it does not maintain any non-privileged responsive documents.

- <u>Summary and executive level budgets</u>: IBC complains that Paoli did not produce certain budgetary and financial information, by department and by service line, specific to Paoli. Initially, IBC's subpoena requests "financial information" only by DRG and service line, not by department. <u>See</u> IBC Subpoena of July 3, 2003 to Paoli, Request No. 1(c) & 5 (attached as Exhibit A to Motion to Compel). Paoli produced documents demonstrating its financial performance by DRG and service line. <u>See</u> PMH 00749-00821. Paoli does not, however, prepare summary and executive level budgets by service line.

- <u>Average length of stay</u>: IBC's subpoena did not include a specific request for any length of stay data. Nor did IBC attempt to convey prior to filing the instant motion to compel its interest in obtaining such data for the service lines at issue in this matter. Had IBC done so, Paoli would not have been averse to producing any such documents in its possession, custody, or control that it could have identified pursuant to a reasonable search.

- <u>Costs of providing charitable services</u>: Counsel for IBC specifically withdrew its requests for this data, including during an August 26, 2003 telephone call with counsel for Paoli. Again, had IBC made clear its apparent subsequent decision to once again seek documents regarding the costs of providing charitable services, Paoli

10

would not have been averse to producing any such documents in its possession, custody, or control that it could have identified pursuant to a reasonable search.

In sum, Paoli not only produced all of its non-privileged documents responsive to the above-enumerated requests, but also, where appropriate, voluntarily and in good faith produced system-wide, Main Line documents that IBC did not specifically request, but that Paoli believed might also include responsive information. Paoli thereby met its production obligation with respect to each of these categories of documents. Rockwell Int'l Corp., 576 F. Supp. at 513 (party obligated only to produce existing documents). The instant Motion to Compel is no more than IBC's attempt to rehabilitate and reform its inartful and poorly conceived subpoena. This strategy is both inappropriate and a waste of the Court's time.

**B.    IBC has not demonstrated that the relevance and necessity of obtaining the confidential and highly proprietary insurer documents Paoli has objected to producing outweighs the potential harm caused by disclosing such commercially sensitive information.**

Paoli should not be required to disclose the insurer-related documents, because: (1) doing so would cause a breach of JHS's duty of confidentiality to the insurers (with which JHS entered into the contracts on Paoli's behalf) and IBC could in any event obtain the insurance contracts at issue directly from the insurers; (2) JHS has instructed Paoli that Paoli is not authorized to disclose confidential JHS information included in the documents; and (3) disclosure of the intensely sensitive insurer-related documents to the parties in this case would put Paoli (and JHS) at a potentially significant commercial disadvantage.

First, the subpoena request at issue calls for documents relating to the reimbursement rates set forth in contracts relating to Paoli with insurance companies other than IBC, including the contracts themselves. See IBC Subpoena of July 3, 2003 to Paoli, Request No. 9 (attached as Exhibit A to Motion to Compel) ("Documents that discuss, narratively or through numeric data,

the reimbursement rates set forth in, and the profitability of, each of Paoli's Health Care Insurer Agreements, (including but not limited to contracts, summaries and competitive analysis), but not routine administrative billing records."). Many, if not all, of these contracts incorporate confidentiality undertakings that restrict the dissemination of the contracts and certain information therein. Albeit prior to the entry of the Protective Order, IBC itself raised similar confidentiality concerns regarding Paoli's disclosure of JHS's Paoli-related contracts *with IBC* in response to the subpoena CCH served on Paoli. See Letters of February 13, March 17, April 14 from T. Leonard, P. Diamond, and W. Leonard, respectively, to L. Cohen (attached as Exhibit 1 hereto). Were Paoli to produce these contracts, it would place JHS (the actual party to these agreements) in potential breach of these undertakings. The insurance contracts IBC can seek directly from the insurers, furthermore, contain the reimbursement rates that are at the core of this subpoena request. IBC certainly has not shown how, in light of this fact, its need for any additional, internal Paoli documents that may also discuss these rates still outweighs the harm to Paoli of disclosing these confidential materials. See Concord Boat, 1996 U.S. Dist. LEXIS 18012 at *9 (party seeking discovery's "need for the information" also relevant in ruling on motion to compel under Rule 45).

  The simple solution, which would at least relieve Paoli, a disinterested third party, of any potential liability and resulting burden, would be for IBC to obtain these contracts directly from the insurers themselves. Indeed, Paoli understands that IBC has already attempted to obtain these contracts from the insurers, and Paoli has not objected to this attempt. See, e.g., Letter of August 29 from L. Cohen to H. Seidman (attached as Exhibit D to Motion to Compel) (indicating that IBC should be able to secure contracts from insurers).

Second, Paoli also faces significant potential harm if it produces the insurer-related documents IBC seeks because JHS has specifically instructed Paoli not to produce these materials. Main Line and JHS are parties to a system affiliation agreement that includes a comprehensive confidentiality provision. In addition, JHS, as Paoli's indirect corporate parent, negotiated and was in fact the actual direct provider party to the Paoli insurer contracts at issue, which contain highly sensitive commercial information and trade secrets of JHS. As noted above, JHS has instructed Paoli that it is not authorized to produce these documents.

Third, while the insurer-related documents that Paoli has objected to producing may have some potential relevance to IBC's anticipated defense to CCH's antitrust claims, IBC has not demonstrated that its need for these documents outweighs the competitive harm that their disclosure would potentially cause Paoli. Here, IBC is demanding that Paoli, which is not a party to the underlying dispute, disclose its highly proprietary insurance reimbursement rates to a provider (i.e., plaintiff CCH) that offers many of the same services in many of the same service areas as Paoli and to an insurer with which JHS currently is actively involved in contract negotiations (i.e., defendants IBC) on behalf of Paoli and JHS's other member hospitals. See Concord Boat, 1996 U.S. Dist. LEXIS 18012 at *9 (relevant factors in ruling on motion to compel production in response to subpoena include fact that entity from which discovery is being requested is non-party to underlying case and fact that disclosure would be made to competitors). Any disclosure of what Paoli had agreed to be paid by other commercial insurers would place Paoli at a serious competitive disadvantage with respect to its direct market competitor CCH and potentially undermine JHS's ability adequately to protect and represent Paoli's interests in the contract negotiations with IBC.

While the existing Protective Order endeavors to protect sensitive commercial information while still allowing the parties to proceed with meaningful discovery in this case, Paoli respectfully submits that, under the current circumstances, this degree of protection is insufficient to safeguard its interests with specific respect to the limited set of insurer-related documents that Paoli has withheld from production.

For example, the Protective Order allows the parties to use documents that have been designated "third-party highly confidential" in questioning witnesses at a deposition. As a result, if Paoli produced the insurer documents, there is a high likelihood that employees of CCH who make strategic business decisions regarding competition with Paoli, or employees of IBC who are responsible for negotiating its contracts with JHS relating to Paoli, will gain access to this sensitive information as deponents in the underlying antitrust matter.[3] It would be difficult, if not impossible – irrespective of what form of disclaimer the Protective Order requires a witness to sign – for such a witness to "forget" what he or she learned about Paoli and JHS from these highly sensitive documents before performing his or her routine job responsibilities relating to Paoli and JHS.

In addition to allowing employees and agents of IBC and a competitor to gain knowledge of Paoli's rate agreements with other insurers as deposition witnesses, the Protective Order also allows external counsel who have regularly represented IBC in disputes with hospitals (which

---

[3] Although Paragraph 12(a) of the Protective Order denies "access" to IBC employees, officers and directors (with the exception of Thomas A. Leonard, Esquire) of any party to this action, it appears that this protection may be circumvented if the employee, officer or director also is a deponent. Consequently, and by example, an IBC senior vice president who negotiates contracts with JHS relating to Paoli could learn during the course of a deposition, and in the midst of such contract negotiations, the rates that JHS has negotiated for Paoli with other commercial insurers.

have included disputes arising out of rate negotiations) to garner the same information.  This "right to know" moreover extends to Thomas A. Leonard, Esquire, who is not only outside counsel to, but a board member of, IBC (with fiduciary responsibilities to IBC).  Especially given the fact that Paoli is currently negotiating with IBC and competes in the same area as plaintiff, the risk, even if small, that IBC or CCH will get wind of Paoli's confidential rate agreements with other third party payers outweighs IBC "need" to know precisely to what amounts and payment methods Paoli has agreed. [4]

Finally, the court's review of IBC's motion should be informed by the fact that the intensively sensitive nature of such rates has been recognized and afforded extraordinary protections even by the Pennsylvania legislature.  Insurers formerly were required to file their hospital contracts, including the rates, which were to be kept confidential, with the Pennsylvania Insurance Department.  As part of the Accident and Health Filing Reform Act, Tile 40 was amended to provide, at 40 P.S. § 3809(c), that:  "Provider contracts need not contain payment rates and fees unless requested by the [Insurance] department."  Where the Department does affirmatively request these rates, the law specifies that they "shall be given confidential treatment, [and] are not subject to subpoena . . . ."  This heightened level of protection – which is

---

[4]   The Protective Order, at paragraph 12(b), which applies to third parties such as Paoli, incorporates paragraph 10(a).  That paragraph, as it now stands, prohibits outside counsel from gaining access to rate information or other highly confidential information unless they agree not to represent area hospitals (or designated hospital trade associations) in negotiations in matters involving IBC or competing insurers for an 18-month period.  There is, however, no parallel provision that precludes outside counsel who represent IBC or other health insurers from engaging in such rate negotiations or representations involving them.  This lack of parallelism (which may stem from the fact that the Amended Protective Order was entered at the instance of third-party health insurers rather than crafted at the instance of hospitals) is prejudicial to third-party hospitals.  Short of quashing discovery, this non-parallelism might be addressed by "leveling" paragraph 10(a) by an amendment that extends the 18-month rule to the Obermayer Firm and other law firms representing IBC or other health insurers.

far more of a "fire wall" than exists under the Protective Order for a direct competitor and principal purchaser of the hospital's services – obtains even with respect to a regulatory agency entrusted with oversight authority over the rates.  See generally Ciamaichelo v. Independence Blue cross, 814 A.2d 800 (Pa. Commw. Ct. 2002).  Here, the fire wall not only is less impenetrable than that which applies to a government agency with respect to all provider rates, but the particular rates whose disclosure is sought by IBC are those of a hospital that competes directly with plaintiff and is in active contract negotiations with defendant.

## CONCLUSION

For the foregoing reasons, Paoli respectfully submits that IBC's Motion to Compel, and the demand therein for an award of expenses and attorney's fees, should be denied.

COZEN O'CONNOR

BY: _____
Mark H. Gallant, Esquire
Linda J. Cohen, Esquire
Salvatore G. Rotella, Jr., Esquire
1900 Market Street
Philadelphia, PA  19103
(215) 665-2000

Attorneys for Paoli Memorial Hospital

## CERTIFICATE OF SERVICE

I, Mark Gallant, Esquire, attorney for Paoli Memorial Hospital hereby certify that I am duly authorized to make this certification; that on the _____ day of November, 2003, I did cause a true and correct copy of Memorandum of Law of Third Party Paoli Memorial Hospital in Opposition to Defendant Independence Blue Cross's Motion to Compel the Production of Documents to be mailed by United States regular mail to counsel for the parties as follows:

>Thomas A. Leonard, Esq.
>Obermayer Rebmann Maxwell & Hippel LLP
>One Penn Center - 19th floor
>1617 John F. Kennedy Blvd.
>Philadelphia, PA 19103-1895
>Counsel for Defendants IBC

>Lewis R. Olshin, Esq.
>Duane Morris
>One Liberty Place
>Philadelphia, PA 19103-7396
>Counsel for Plaintiff CCH

COZEN O'CONNOR

BY: _____
Mark H. Gallant, Esquire
Linda J. Cohen, Esquire
Salvatore G. Rotella, Jr., Esquire
1900 Market Street
Philadelphia, PA  19103
(215) 665-2000

Attorneys for Paoli Memorial Hospital

PHILA1\1957357\3 134563.000