**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| **THE CHESTER COUNTY HOSPITAL** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 02-CV-2746** |
| **INDEPENDENCE BLUE CROSS,** | : | |
| **QCC INSURANCE COMPANY** | : | |
| **KEYSTONE HEALTHPLAN EAST, and** | : | |
| **KEYSTONE MERCY HEALTH PLAN** | : | |

---

## [PROPOSED] ORDER[1]

NOW, THIS ___ day of _____, 2004, in consideration of defendants'
request of the Magistrate Judge to hold a contempt hearing and certify findings of fact for
contempt to the District Judge, as requested in the Motion For An Order Of Contempt
and Sanctions Against Aetna, Inc., and Nonparty Aetna Inc.'s Opposition, it is hereby
Ordered that Defendants' request for certification of contempt is DENIED. Such request
by defendants is in direct violation of the controlling law stated in *Taberer*, 954 F.2d 888,
891 (3d Cir. 1992)(Magistrate Judge lacks jurisdiction to hold contempt hearings; such
hearing must be held by District Judge *de novo*). Defendants shall pay Aetna reasonable
attorneys' fees and costs incurred in connection with responding to defendants' Motion
within seven (7) days of Aetna submitting a certification of same.

_____
CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

---

[1]   Aetna submits this proposed Order with stated reasons for denying the motion without waiver of the
jurisdictional deficiencies, which also require denial of the motion.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE CHESTER COUNTY HOSPITAL : | |
| : | |
| vi. : | |
| : | **NO. 02-CV-2746** |
| INDEPENDENCE BLUE CROSS, : | |
| QCC INSURANCE COMPANY : | |
| KEYSTONE HEALTHPLAN EAST, and : | |
| KEYSTONE MERCY HEALTH PLAN : | |

## [PROPOSED] ORDER[2]

NOW, THIS ___ day of _____, 2004, in consideration of defendants'
Motion For An Order Of Contempt and Sanctions Against Aetna, Inc., and Nonparty
Aetna Inc.'s Opposition, it is hereby Ordered that Defendants' Motion, including
Defendants' request for entry of a "Rule to Show Cause", and their demand for a hearing
and factfinding before the Magistrate Judge, is DENIED.  Defendants shall pay Aetna
reasonable attorneys' fees and costs incurred in connection with responding to
defendants' Motion within seven (7) days of Aetna submitting a certification of same.

_____
JOHN R. PADOVA
UNITED STATES DISTRICT JUDGE

_____

[2]  Aetna submits this proposed Order with stated reasons for denying the motion without waiver of the
jurisdictional deficiencies, which also require denial of the motion.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THE CHESTER COUNTY HOSPITAL** | : |
| | : |
| **v.** | : |
| | : **NO. 02-CV-2746** |
| **INDEPENDENCE BLUE CROSS,** | : |
| **QCC INSURANCE COMPANY,** | : |
| **KEYSTONE HEALTHPLAN EAST, and** | : |
| **KEYSTONE MERCY HEALTH PLAN** | : |
| | : |

**NON-PARTY AETNA INC.'S OPPOSITION TO IBC'S JANUARY 16, 2004
MOTION FOR AN ORDER OF CONTEMPT AND SANCTIONS AGAINST
AETNA, INC.**

Aetna Inc. ("Aetna") submits this Memorandum in Response to the 1/16/04 Motion For an Order of Contempt and Sanctions Against Aetna ("IBC's Contempt Motion"), which was filed by the defendants, Independence Blue Cross and affiliates ("IBC").

I. <u>**INTRODUCTION**</u>

IBC has filed a baseless motion for contempt that reflects its underlying motivations in directing unnecessary and onerous discovery to get the trade secrets of its direct competitor, Aetna. It comes during the same time after IBC has lost thousands of customers to Aetna in the marketplace, and has been desperately responding with negative misleading attack radio ads and legislative lobbying against Aetna.

IBC is undeterred by any regard for burdening the District Judge, the Magistrate Judge and Aetna with needless motion practice and, now, baseless "contempt" hearings. Incredibly, IBC is actually moving for "contempt" of a Magistrate Judge's Order that IBC knows ***has been timely objected to and appealed to the District Judge.*** IBC knows

that the District Judge has a statutory duty to address the Objections, and knows that the District Judge has obviously not had a reasonable opportunity to do so when it filed the instant motion. Although the District Judge expeditiously ordered that IBC may file a response to the Objections by 1/21/04, IBC was in no rush and waited until the last day to do so. Aetna has expeditiously filed its Reply Memorandum on 1/27/04, including the Declaration of Dr. Glenn Melnick (attached as Ex. "5" of Aetna's 1/21/04 Reply Memorandum), which establishes that at stake here are extremely valuable trade secrets that substantially outweigh interests in public disclosure. In fact, any disclosure risks harm to the public interest in an efficient market. *Id*.

Aside from being legally baseless, IBC's "contempt" theory otherwise makes no sense at all, in that it hamstrings the District Judge from performing the statutorily-mandated duty to address timely filed objections to Magistrate Judges' Orders. Indeed, IBC's position would result in preventing any District Judge from having any fair opportunity to perform this statutorily-mandated duty to consider the merits of such Orders if and when Objections are filed.

In this case, IBC reveals it lacks any conviction for the position that the Order in this case is valid, or that IBC met its burden to prove "substantial need" under Rule 45 and applicable authority. This is demonstrated by IBC's perceived need to file yet *another* motion to compel today.[3]   As demonstrated herein, IBC's instant motion for

---

[3]  Aetna has not had a sufficient opportunity to fully review IBC's latest motion and, therefore, reserves the right to supplement this response based on further opportunity for such review. For now, however, it is clear that, as with other motions IBC has filed against Aetna, and apparently as it has done against other nonparties in this action, IBC never telephoned or made any effort to communicate with Aetna's counsel before filing this latest motion today, again in violation of Local Rule 26.1(f). Indeed, before moving for contempt against Aetna on 1/16/04, IBC never picked up the phone or sent a letter regarding the matter, choosing instead to file "strike" motions with the Court without regard to the fees and costs being imposed on Aetna to respond. In any event, a preliminary review of the motion IBC filed today shows that IBC expressly acknowledges the fatal deficiencies in the proceedings underlying the 12/22/03 Order (including

contempt is unfounded not only on jurisdictional grounds, which IBC expressly acknowledges, but under the undisputed facts and controlling law.   There is no dispute that as of January 7, 2004, well *before* expiration of the 20-day period in the Order, the 12/22/03 Order became subject to timely Objections.   As a result, it became subject to the unique statutorily-mandatory procedures requiring review and determination by the District Judge.  *See Taberer v. Armstrong World Industries, Inc.*, 954 F.2d 888 (3d Cir. 1992).

To this day, the Order remains under the District Judge's consideration.   Thus, it is clear that no "contempt" has occurred, and no "certification" is appropriate by the Magistrate Judge.  *See Continental Casualty Co. v. Dominick D'Andrea, Inc.*, 150 F.R.D. 245, 250 (3d Cir. 1988) ("magistrate judge's order has the force of law *unless appealed* [if a subsection (A) referral]. . . . in a subsection (B) referral, the magistrate judge's recommendation *only becomes effective when the district court accepts it.*")(emphasis added).

Further, in attempting to guide the Magistrate Judge to hold a hearing and conduct fact-finding, IBC once again cites the wrong legal standards and misguides the Magistrate Judge and the District Judge to violate clear dictates of Third Circuit precedent under the Federal Magistrates Act.  *See Taberer*, 954 F.2d 888, 891 (3d Cir. 1992)(Magistrate Judge "lacked jurisdiction" to hold contempt hearings and "district judge erred in adjudicating the contempt based on the record of [any Magistrate Judge's] hearing, instead of holding a de novo hearing.").   Again, there is absolutely no basis for

---

the jurisdictional deficiencies)—the same Order that is currently on appeal to the District Judge, and that forms the entire basis for the instant contempt motion against Aetna.  This latest acknowledgement by IBC further confirms that its contempt motion is without any merit whatsoever, and should never have been filed at all.  It certainly must be denied, and no "certification" by the Magistrate Judge is appropriate.

IBC's instant motion and the relief it seeks misdirects the Court to commit patently reversible error.

For a more complete record at this time, the District Judge and Magistrate Judge are referred to Aetna's record filings regarding the underlying Order (incorporated herein by reference), including the Declaration of the nationally-recognized health care economist, Dr. Glenn Melnick (Ex. "5" of Aetna's 1/27/04 Reply). At this point, everyone agrees IBC had the burden of proof in the proceedings leading up to entry of the 12/22/03 Order. Yet, IBC produced no competent evidence at all. Even when the Magistrate Judge provided IBC an additional opportunity, IBC submitted nothing but the 12/22/03 letter and exhibits that proved nothing other than the fact that Aetna's trade secrets are secret and very valuable. In any event, Aetna did not even receive, let alone have any opportunity to rebut, the exhibits to that letter until *after* the Magistrate Judge's 12/22/03 Order had already been entered. *See* Aetna's 1/27/03 Reply Memorandum.[4]

Even now, in the pending Objection proceedings before the District Judge, IBC fails to produce a single shred of evidence to support allegedly "needing" Aetna's trade secrets for this case. Despite representing to the Magistrate Judge that IBC's "consultants" supposedly "need" Aetna's trade secrets to rebut certain allegations of CCH, *IBC still cannot muster even a single individual in its stable of a dozen or so "consultants", to stand up and vouch for this representation*. At this point, the *only* expert evidence in the record, which Aetna was never afforded a timely opportunity to

---

[4]     Furthermore, it should be noted that IBC's 12/22/03 letter with exhibits was never filed of record with the court. Thus, under IBC's stated view that only the matters of record prior to entry of the 12/22/03 Order may be reviewed in the presently pending appeal to the District Judge, IBC's own 12/22/03 letter and exhibits should be disregarded in their entirety in the pending appeal. In any event, for the many compelling reasons stated in Aetna's 1/7/04 and 1/27/04 memoranda, IBC's 12/22/03 letter and exhibits utterly fail to satisfy IBC's burden to prove any "substantial need" to get Aetna's trade secrets to defend against the cited paragraphs of CCH's amended complaint.

supply in rebuttal to the 12/22/03 letter and exhibits, is the Declaration of Dr. Melnick submitted by Aetna. *See* Exhibit "5" of Aetna's 1/27/04 Reply Memorandum.

For the purposes of this record, Aetna incorporates its other filings, including Aetna's 12/16/03 Memorandum in Opposition to IBC's Motion to Compel (with exhibits), its 1/7/04 Objections and Memorandum in Support thereof (with exhibits), and its 1/27/04 Reply Memorandum (with exhibits).    As the facts summarized below establish, and in accordance with the applicable law, IBC's motion for contempt must be denied.

## II.    **FACTUAL BACKGROUND**

The following facts are not disputed:  Aetna is a nonparty whose proprietary trade secrets were at risk of loss absent filing timely objections to the 12/22/03 Magistrate Judge's Order.  Aetna filed timely objections and appealed the Order to the District Judge on January 7, 2004, pursuant to the unique statutorily-prescribed procedures governing Magistrate Judge Orders.  Aetna filed its objections **well before** expiration of the 20-days that Aetna had before becoming obliged to produce any documents under the Order.

Of course, at that point, the Order and Aetna's Objections became statutorily subject to the District Judge's review and determination, regardless of whether the District Judge's referral to the Magistrate Judge for "resolution" was intended to be under 636(b)(1)(A), or (B), or otherwise.  *See Continental Casualty Co. v. Dominick D'Andrea, Inc.*, 150 F.R.D. 245, 250 (3d Cir. 1988)("magistrate judge's order has the force of law **unless appealed** [if a subsection (A) referral]. . . .  in a subsection (B) referral, the

magistrate judge's recommendation *only becomes effective when the district court accepts it.*")(emphasis added). [5]

Despite the fact that Aetna had filed its Objections to the Court's 12/22/03 Order and that the District Judge Ordered IBC to respond thereto by January 21, 2004, IBC, without any communication with Aetna indicating that it would seek to compel compliance with the appealed Order being reviewed by the District Judge, filed its motion for contempt.

Among the many misleading statements in IBC's motion, IBC implies that Aetna intervened in the case back in the summer of 2003 "[u]pon being served with IBC's subpoena." *See* IBC's 1/16/04 Motion for Contempt at ¶¶ 1-2. However, the docket puts the lie to this misstatement, and shows that Aetna had intervened almost a month *before* IBC issued the 7/25/03 subpoena upon Aetna.[6]

IBC's motion is misleading also when it asserts that "IBC agreed to still further changes requested by Aetna," thereby necessitating the Court's August 19, 2003 Amended Protective Order. However, the parties' failure to include relief that Magistrate Judge Smith ordered in his July 7, 2003 Order precipitated the need to request the Court

---

[5] The District Court's 12/5/03 Order did not specify which subsection under which this matter had been referred to the Magistrate Judge, or what ultimate authority the District Judge vested in the Magistrate Judge or intended for this specific Rule 45 subpoena matter against a nonparty for trade secrets. *See* Docket Entry 175. As set forth in Aetna's 1/27/04 Reply memorandum, especially under these circumstances where Aetna had no opportunity to review and rebut IBC's 12/22/03 letter and exhibits before entry of the 12/22/03 Order, there can be no doubt that the District Judge has the express authority to hear the assertions and evidence of Aetna, including the Declaration of Dr. Melnick.

[6] In fact, as IBC is well aware, Aetna intervened only after CCH represented to Aetna that it must intervene by May 30, 2003 or its trade secrets would be released to IBC and its inside counsel. *See* Exhibit "A" hereto. Eventually, the Court granted certain relief sought by Aetna at that time, and precluded any internal IBC employee, including inside counsel, from accessing of Aetna's potential trade secrets that were in the possession of CCH or any other non-party providers. *See* Dkt. Entry 121. Also, contrary to IBC's misstatements, the intervention proceedings resulting in the protective order at that time had nothing to do with *IBC's* subpoena to Aetna.

to enter an August 18, 2003 Amended Protective Order. *Compare* Dkt. Entries 88, 116, 121. Also, any other "changes requested by Aetna" with regard to the protective order at that time, were the result of IBC's failure to engage in a proper dialogue with Aetna, *__as it was ordered to do by Judge Padova at the August 7, 2003 oral argument__*, prior to the parties' submission of the August 14, 2003 Protective Order to the Court. *See* Dkt. Entry 117 at 38.[7]

IBC's instant motion also continues to inaccurately imply that Magistrate Judge Smith indicated either that IBC was to issue a "substitute" subpoena, or, that the issuance of IBC's December 17, 2003 subpoena, after it had filed the instant motion to compel somehow cured the fatal substantive and jurisdictional defect of the 7/25/03 subpoena at issue. *See* IBC's 1/16/04 Motion at ¶¶ 11 & 12. However, the record establishes that the Magistrate Judge Smith never used the term "substitute." *See* Exhibit "B" to IBC's 1/16/04 Motion at 39-41. In fact, contrary to IBC's position now, IBC's counsel contemporaneously characterized his understanding of that subpoena as follows: "[s]o, *a*

---

[7] IBC, in virtually all of its "filings," as well as letters that it has sent to non-party hospitals, has continued to incorrectly imply that the Court's observations at the August 7, 2003 hearing and subsequent modification of the Protective Order, peremptorily adjudicated all objections relating to the enforceability of all other outstanding subpoenas. *See e.g.* IBC's 1/16/04 Motion, ¶ 6; IBC's 12/22/03 letter at 1; IBC's 12/03/03 Memorandum at 4-5, 8-9. That hearing addressed non-party insurers' objections to the production of confidential documents *by CCH* (and crafting a protective order that would address non-party insurers' objections to the production of confidential documents *by other non-parties, such as hospitals*). Stated differently, if *a hospital or other non-party* was refusing to produce documents *solely* on the basis of, for example, Aetna's confidentiality concerns, that alone would no longer be a valid basis for *those parties* to refuse to produce such documents. However, the Court made clear that it was not deciding any issues not yet before it regarding other subpoenas (including any subpoena on Aetna), by further noting that, ". . . if you have subpoenaed documents and there is nothing out – *no objection outstanding* and you haven't received those documents, then you come to the Court and we'll put teeth into that subpoena so that you do receive those documents." (Exhibit "E" to IBC's 12/03/03 Memorandum at 36) (emphasis added). Aetna properly objected to IBC's subpoena, and had "objections outstanding". *See* Fed.R.Civ.P. 45(c)(2)(B). The Court's entry of the Amended Protective Order did *not*, as IBC asserts, relieve IBC of its duty to resolve "outstanding objections" through good faith discussions with subpoenaed parties who raise valid objections, nor did the court purport to decide by judicial fiat or in a vacuum whether IBC had met its burden of demonstrating "substantial need" for the particularized trade secrets in Aetna's possession or pursuant to a subpoena that was not even before the Court at the time. *See* Aetna's 12/16/03 Memorandum at Section III.C.1.

*new subpoena* out of the Eastern District of Pennsylvania . . . ." *Id.* at 40 (emphasis added).[8]

IBC's representations relating to its December 22, 2003 letter to Magistrate Judge Smith are also inaccurate. A quick review of the docket establishes that IBC *never* "filed" its December 22, 2003 letter, as it now contends in the instant motion. More importantly, IBC's statement regarding the "filing" of its letter, implies that that letter was part of the record and that Aetna was aware of it on the day it was filed. In fact, Aetna never received the exhibits to that letter, which contain the only proffered "evidence" submitted by IBC in support of any alleged "substantial need" for Aetna's trade secrets, until *after* the Court had already ruled upon IBC's Motion to Compel.

IBC's assertions that Aetna raised the same objections in its December 29, 2003 Rule 45 objection letter as it had in its 12/16/03 Opposition, and that "notwithstanding the Order of December 22, 2003, Aetna stated . . . that it would not comply with the substitute subpoena," are inaccurate and irrelevant. That subpoena is *not* the subject of the instant motion, as IBC has most recently acknowledged by virtue of its filing today a separate motion to compel with respect to that *12/17/03* subpoena.

Further, IBC's representation that the Court adjudicated Aetna's objections to that *12/17/03* subpoena is plainly inaccurate, because Aetna's *12/29/03* objection letter specifically articulates IBC's failure to demonstrate "substantial need", an issue that was

---

[8] IBC's legally deficient subpoena out of the District of Connecticut has placed IBC in a procedural box where it must argue, on the one hand, that it has cured the jurisdictional deficiencies of its July 25, 2003 subpoena, while simultaneously arguing that that subpoena has not been withdrawn. There is no way that IBC's December 17, 2003 subpoena, which was issued after it filed the instant Motion to Compel, could be the subject of that 12/3/03 Motion. *See* IBC's 1/21/03 Memorandum at 20. Accordingly, IBC essentially admits it now seeks to enforce its jurisdictionally and substantively defective July 25, 2003 subpoena. IBC confirms this more so by the filing it made today—moving to compel the *12/17/03* subpoena.

not addressed, and therefore never "resolved", by the Magistrate Judge. *Compare* Exhibits "E" & "F" to IBC's 1/16/04 Motion.

**III.**     **ARGUMENT**

**A.**     **Upon Aetna's Timely Objections To And Appeal From the Magistrate Judge's 12/22/04 Order Before Any Obligations Arose Thereunder, The Order Became Subject To The Statutorily-Mandated Procedures And Review Of The District Judge, And No Separate Motion Practice For Stay Was Necessary In Order To <u>Permit The District Judge To Perform Its Statutory Mandate</u>.**

It is telling that IBC cites no authority whatsoever where a non-party, such as Aetna, was held in contempt for not turning over trade secret information to a direct competitor while a timely-filed appeal of the Magistrate Judge's Order was pending. Similarly, there is no Third Circuit precedent, or any authority from any other Circuit Court for that matter, that supports IBC's position. Simply put, it is not the law of this Circuit that a party, let alone a non-party such as Aetna, may be held in contempt of a Magistrate Judge's Order if the nonparty timely objects and appeals in accordance with the unique statutory procedures for such matters. Once again, IBC misguides the Court with the wrong law.

As the Third Circuit has stated, a Magistrate Judge's order does not have the force of law or become effective, ***until either such an order is not appealed or the district court accepts it.*** *Continental Casualty Co. v. Dominick D'Andrea, Inc.*, 150 F.R.D. 245, 250 (3d Cir. 1998). Specifically, the Third Circuit has held:

> There is an important distinction between the two types of referrals under the Act. In a subsection (A) referral, the magistrate judge's order has the force of law ***unless appealed.*** It is final in the sense that it may be appealed. In contrast, in a subsection (B) referral, the magistrate judge's recommendation ***only becomes effective when the district court accepts it***.

*Id.* (emphasis added). *See also United States v. Polishan*, 336 F.3d 234 (3d Cir. 2003).

Indeed, once appealed, the District Court lacks the ability to refuse review:

"Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order . . . . The district judge to whom the case is assigned **shall** consider such objections and **shall** modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a).   The district court may ***reconsider*** any pretrial matter under subparagraph (A) of 28 U.S.C.A. § 636 where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Haines v. Liggett* Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992). "The matters handled by magistrate judges under subparagraph (A) are generally described as 'non-dispositive.'" *Id.* (citation omitted) . . . . "Under (b)(1)(A), the standard of review is circumscribed:  'the district court is bound by the clearly erroneous rule in findings of facts;  the phrase contrary to law indicates plenary review as to matters of law.'" *Id.* (citations omitted).

*Heintz Corp. v. Judson*, 1995 WL 649331 at *2, No. Civ. A. 94-6916 (E.D. Pa.  Nov. 3, 1995)(Padova, J.)(footnotes omitted).

Indeed, the unique procedures for these kinds of "appeals", and the unique status of Magistrate Judge's under the statute, dictate that the District Judge perform this statutory mandate to adjudicate the validity of Objections to such Orders, without impediments of having Magistrate Judge's conducting contempt proceedings during the process at the behest of overreaching adversaries seeking to obstruct the District Judge's review.

There are no cases in this Circuit supporting any notion that there should be any "motion practice" over stays under these circumstances--and for good reason.   The statute, the local rules and the caselaw in this Circuit dealing with these unique "appeals" simply do not provide for it.  And, understandably, it appears no litigant in this Circuit (other than IBC apparently) has ever overreached to the point of taking such an extraordinary position—particularly against a nonparty such as Aetna, where trade secrets would be irreparably lost, and where the District Judge was already engaging in

10

the statutory review.  Again, IBC's decision to stay this course raises serious concerns about its alternative motives in wanting to get Aetna's trade secrets and escaping review of the merits.

To the extent IBC cites *Holt Cargo Systems, Inc. v. Delaware River Port Authority*, 1998 WL 150948 at *4 n.2, No. 94-7778 (E.D. Pa. March 27, 1998), it actually undermines IBC's position in this regard.  The *Holt Cargo* decision reinforces the principle that a motion for contempt could be appropriate, if at all, only where a party refuses to comply with an Order *if and after it is affirmed by the District Judge and not further appealed*.  In *Holt Cargo Systems,* Judge Shapiro only referred the defendant's contempt motion to the Magistrate Judge *after* the District Court had already affirmed those orders, or, where plaintiff had failed to appeal the same.[9]

This rationale is reinforced in this case by the fact that we are dealing with trade secret information, where disclosure deprives Aetna of the confidentiality and exclusive control and therefore deprives Aetna of the value of its trade secrets.  *See* Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 473 (1991)(Exhibit "12" to Aetna's December 16, 2003 Opposition Memorandum.) (Danger inherent in disclosure of trade secrets because "[t]he loss of confidentiality, the *sine qua non* of a trade secret, robs the owner of any advantage the secret may have provided.")(citation omitted).

Precedent affirms that the harm to Aetna is imminent and irreparable once this sensitive information is out of Aetna's exclusive control. *See Powell v. Ridge*, 247 F3d

---

[9] Another court faced with an overreaching litigant such as IBC here has also indicated that a stay of discovery pending the District Judge's resolution of an appeal from a Magistrate Judge's Order is appropriate.  *See Hormel Foods Corp. v. Cereol, S.A.*, 2003 WL 2140261 at *1, n.1, No. 01-2243 (D. Minn. June 16, 2003).

520, 524 (3d Cir. 2001) (absent immediate appeal of order requiring disclosure of trade secret, there is no way to "unscramble the egg scrambled by the disclosure") (*quoting In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir. 1997)); *ACT, Inc.*, 1999 WL 305300 (E.D. Pa. May 14, 1999); *Mannington Mills, Inc.*, 206 F.R.D. 525 (D. Del. 2002); *R & D Business Systems*, 152 F.R.D. 195 (D. Col. 1993); *see also PEPSICO, Inc. v. RedMond*, 1996 WL 3965, at *30, No. 94C6838 (N.D. Ill. Jan. 2, 1996) ("Just as it is impossible to unring a bell, once disclosed, trade secrets and confidential information lose their secrecy forever and, 'since the confidentiality of this information can never be regained, the [threatened] injuries would be irreparable'" (citation and quotation omitted

**B.    Addressing IBC's Motion For Contempt Otherwise Interferes With The District Court's Inherent Power And Ultimate Authority Over Cases Before It.**

IBC's position is undermined also by the fact that addressing IBC's motion for contempt would clearly interfere with the District Judge's inherent and ultimate authority over the case. Here, the District Court's December 5, 2004 order referring matters to the Magistrate Judge does ***not*** delineate whether the assignment is made under section 636 (b)(1)(A) or section 636(b)(1)(B). *See* Dkt. Entry 175.  Neither does the Order limit the Magistrate Judge's role to only non-dispositive motions.  Rather, the Order states that "all motions pertaining to discovery matters" are referred to the Magistrate Judge "for resolution." *Id.*

In substance, therefore, the Magistrate Judge's Order (unless and until appealed) effectively disposed of ***Aetna's*** entire case and controversy, and would effectively terminate the proceedings *vis-à-vis **Aetna***.  As to non-party Aetna, unless and until objections are filed, the Magistrate Judge's ruling functions essentially the same as a

ruling granting summary judgment, or other final judgment on the merits.  Under such circumstances, without *de novo* review upon objection to such a "dispositive" decision affecting all of the rights at issue for an individual or entity, the Magistrate Judge, rather than fulfilling the uniquely limited statutorily-prescribed role of "aiding" the trial judge, ***becomes the trial judge***.  This is clearly inconsistent with the intent of the Federal Magistrate Judge's Act.

Even when characterized as a "non-dispositive" motion, however, the District Judge always maintains the discretion to refer the matter for a recommendation.  In *Delco Wire & Cable, Inc. v. Weinberger*, defense contractors brought suit against the Secretary of Defense and Defense Logistics Agency over the government's disbarment of the contractors from governmental contracting.  109 F.R.D. 680 (E.D.Pa. 1986).  During the discovery period, the contractors filed motions to compel discovery.  The Magistrate Judge recommended that most of the discovery be produced.  *Id.* at 685.

The defendants appealed the recommendation to the District Judge, and sought *de novo* review. *Id.* The contractor plaintiffs argued that the District Judge was required to approve the Magistrate Judge's report under a clearly erroneous standard, alleging, "[i]n essence, plaintiffs argue that these provisions preclude a judge from referring a non-dispositive pretrial matter to a magistrate for a report and recommendation rather than for determination by the magistrate subject only to review under the clearly erroneous standard." *See Id* at 685.  The Court expressly disagreed:

> ***[t]hat certain case dispositive matters must always be referred for recommendations rather than determination does not mandate the converse, i.e., that nondispositive matters must always be referred for determination rather then recommendations*** . . . [i]t is evident from the Act's legislative history that the purpose of the Act's referral and

> review provisions is to define the limits of the powers which a court may allow a magistrate to exercise, not to restrict the ultimate authority of an Article III court over a case pending before it . . . . ***Therefore, I conclude a court retains the discretion to refer a non-dispositive pretrial matter for report and recommendation and to consider objections filed thereto.***

*Id.* at 685 (*citing Societa Anomima Lucchese Olii E. Vini v. Catania Spagna Corp.*, 440 F.Supp. 461, 462063 (D.Mass. 1977) (remaining citations and footnote omitted); *see also Pauley v. United Operating Compan*y, 606 F.Supp. 520 (E.D.Mich. 1985) (allowing district court to amend its previous order of reference to magistrate judge *nunc pro tunc* to provide for report and recommendation under 28 U.S.C. § 636(b)(1)(B)).[10]

Regardless of whether the Magistrate Judge's underlying decision is dispositive in nature, whether permitting the Magistrate Judge to render a recommendation under section 636(b)(1)(A) only, or whether the district court merely sought the Magistrate Judge's recommendation on a non-dispositive motion, the end result is the same — that Order is deprived of the force of law until the District Judge adjudicates Aetna's objections.

### C.   This Court Lacks Jurisdiction To Hold Aetna In Contempt In Connection With IBC's Attempts To Enforce A Subpoena Issued Out <u>Of The District Of Connecticut.</u>

Because the subject of the Court's December 22, 2003 Order is a subpoena issued out of the ***District of Connecticut***, this Court lacks jurisdiction to adjudicate a contempt motion.  There can be no contempt of an order enforcing a subpoena over which this

---

[10]    Like a recommendation under section 636(b)(1)(A), when a District Judge sends a matter to Magistrate Judge for recommendation, "even though the matter could have been referred for determination," review is plenary. *See Howe Investment, Ltd. v. Perez Y Cia. De Puerto Rico, Inc.*, 96 F.Supp.2d 106 (D.Puerto Rico 2000) ("to the extent when district court concerned about the possibility that assigning a nondispositive matter to the magistrate will confine his power to revise the outcome, a reference directing the magistrate to make recommendations is possible.") (citation omitted).

Court does not have jurisdiction.   As other judges in this district have noted:

> The Federal Rules specify the court from which a subpoena shall issue. There is no question that the subpoena involved in this case was required under the rules to issue from the Eastern District of Pennsylvania. . . .  On the standard subpoena form, the only way to ascertain the court from which the subpoena issues is the designation in the heading of the subpoena. [This Court] can only conclude that the subpoena served on January 3, 1994, issued from the Southern District of Georgia, the court designated in the heading. . . .  Counsel for Mr. Lowry contends that the subpoena served on January 3, 1994, is a nullity; and further, ***since it is designated as issuing out of the Southern District of Georgia, the Eastern District of Pennsylvania court has no jurisdiction to adjudge Mr. Lowry in contempt***, especially since no motion has been filed to hold him in contempt in the Southern District of Georgia*.   I agree that I have no jurisdiction to hold a contempt hearing on a subpoena issued out of the Southern District of Georgia.*

*Kupritz v. Savannah College of Art and Design*, 155 F.R.D. 84, 87-88 (E.D. Pa. 1994)(emphasis added); *see also*, *Robbins & Myers, Inc. v. J.M. Huber Corporation*, 2003 WL 21384304 (W.D.N.Y. 2003) ("[a] motion to compel must be filed with the court that issued the subpoena in issue");  *In Re Sealed Case*, 141 F.3d. 337, 341 (D.C. Cir. 1998) ("[s]ubpoenas are process of the issuing court . . . and nothing in the Rules even hints that any other court may be given the power to quash or enforce them"); *First Nationwide Bank v. Shur*, 184 B.R. 640, 641 (E.D.N.Y. 1995) ("'[i]t is a proper defense to a petition for a contempt order for failing to obey a subpoena to establish that the requirements of [Rule 45] which govern the validity of a subpoena were not met'") (*quoting In re Johnson & Johnson*, 59 F.R.D. 174, 177 (D.Del. 1973)); *Hecht v. Don Mowry Flexo Parts, Inc.*, 111 F.R.D. 6, 11 (N.D. Ill. 1986) ("[a] finding of criminal contempt falls if the underlying court order is held invalid. . . ."); *Doble v. S.D. Cal. Central Division*, 249 F.2d 734, 734 (9th Cir. 1957) ("[i]f the service of a subpoena on a witness outside the District and more than one hundred miles from the place of trial is

unjustified by any statute and is contrary to the plain language of Rule 45 . . . and therefore without force and void, as petitioner claims, petitioner is not without recourse. He may disregard it. If proceedings are then brought against him, if he is correct, he might have a punitive order reversed on appeal").

Because this Court lacks jurisdiction over both the underlying subpoena and IBC's motion for contempt, the motion must be denied.

**D.    IBC's Request For The Magistrate Judge To Conduct Evidentiary Hearings And Fact-Findings Invites The Court To Violate Controlling Third Circuit Precedent.**

In attempting to guide the Magistrate Judge to hold a hearing and conduct fact-finding, IBC once again cites the wrong legal standards and misguides the Magistrate Judge and the District Judge to violate clear dictates of Third Circuit precedent under the Federal Magistrates Act.

In *Taberer v. Armstrong World Indus. Inc.,* 954 F. 2d 888, 891 (3d. Cir. 1992), the Third Circuit proclaimed that a Magistrate Judge "lack[s] jurisdiction" to hold contempt hearings, and a "district judge err[s] in adjudicating the contempt based on the record of [any Magistrate Judge's] hearing, instead of holding a de novo hearing."  Again, there is absolutely no basis for IBC's instant motion and the motion seeks to mislead the court into committing legal error.

IBC cites *Holt Cargo Systems, Inc. v. Delaware River Port Authority*, 1998 WL 150948 at *3-4. No. 94-7778 (E.D. Pa. March 27, 2003) for the proposition that "[t]he proper procedure for a party moving for contempt of a Magistrate Judge's order is to file the motion with the magistrate judge; the magistrate judge  then acts as fact-finder and 'certifies the facts' to the district judge for determination whether the facts establish a

contempt of court." IBC's 1/16/04 Memorandum at 4. However, IBC's citation to *Holt* is misguided, as *Holt* stands in direct contrast to Judge Becker's opinion in *Taberer*.

In *Taberer*, Judge Becker engaged in a lengthy analysis of 28 U.S.C. § 636(e). 954 F. 2d. at 895-907. The Third Circuit concluded that, in a contempt proceeding pursuant to 636(e), the District Judge must hold a de novo hearing and that a de novo determination, such as a decision that would comport with 636(b)(1)(c) "is not sufficient to comply with this requirement." *Id*. at 904. A "de novo hearing entails a new proceeding at which the decision is based solely on the evidence freshly presented at the new proceeding." *Id*. "When holding a de novo hearing, however, the district court acts as a trial court. "*Id*.

The Third Circuit found support for its interpretation in the Fourth Circuit's analysis of a civil contempt committed before a Magistrate Judge in *Proctor v. State Government of North Carolina*, 830 F. 2d. 514 (4ᵗʰ Cir. 1987). *Id*. at 906-07.  The Court noted that:

> [o]ur interpretation of section 636(e) is consistent with *Proctor's* in one aspect: we agree that contempts committed in proceedings before a magistrate judge must be adjudicated pursuant to section 636(e) and not some other provision of the Act.  We disagree with *Proctor*, however, because it permits the district judge to act as he or she would in a section 636(c) proceedings, except that the district judge is required, rather than merely permitted, to hear additional evidence upon a party's request.  In other words, *Proctor* contemplates that on remand the district judge will review the magistrate judge's certification along with any additional evidence, rather than try the contempt de novo.  We cannot follow that course for two reasons. First, as we have already explained, section 636(e) prohibits magistrate judges from trying contempts committed in proceedings before them.

*Id*. at 907.

Accordingly, based upon the controlling Third Circuit law, the Magistrate Judge may only "certify" a contempt motion to the District Judge, in appropriate circumstances, but cannot hear evidence or "certify facts". Once again, IBC misdirects this Court with the wrong law. The troubling part in this instance, however, is that IBC wants to have the Magistrate Judge conducting parallel trial proceedings while the District Judge is proceeding with the duty to address the merits of the Order. IBC demonstrates a complete disregard for the burdens it has been imposing on the Court and Aetna with its baseless motions.

### E. The District Court Cases Cited By IBC Are Not Precedential And Are Otherwise Inappicable.

IBC wrongly argues that there must be motion practice seeking stays of the Magistrate Judge's Order, even when there is a timely appeal and objections filed with the District Judge. For the reasons provided above, that contention is not the law of this Circuit, and otherwise finds no support in the Federal Magistrate Judge's Act.

The cases cited by IBC are all distinguishable. *See* IBC's 1/16/04 memorandum, at 4-5. As noted above, not a single Ciircuit Court, let alone the Third Circuit, has held that objections to a Magistrate Judge's discovery order do not stay that order or suspend it pending an opportunity for the District Judge to perform the statutorily-mandated duty to address the Objections.

Moreover, all of the cases cited by IBC relate to disputes between ***parties***, not issues involving ***non-parties*** such as Aetna. Nor do they implicate the heightened standard applied by Rule 45 for trade secrets. Additionally, the rationale of some of IBC's cited cases rely upon explicit mechanisms governing the applicability of an automatic stay as set forth in the relevant local rules. *See Esparza v.*

*Bridgestone/Firestone, Inc.* 200 F.R.D. 654, 656 (D. Col. 2001); *In re: Lernout & Haupsie Securities Lit.*, 219 F.R.D. 28, 30 (D. Mass. 2003).[11] In contrast to the foregoing cases, the Eastern District Local Rules are silent on this issue. *See* E.D. Pa. Local Rule of Civil Procedures 72.1.

Moreover, in *Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb, Inc.,* 124 F.R.D. 75, 79 (S.D.N.Y. 1989), upon which most of IBC's other cited authority relies, the Court declined to impose sanctions based upon Plaintiff's refusal to produce its expert witness for deposition in reliance upon an automatic stay pending resolution of objections. Although none of the cases cited by IBC implicate trade secrets, in *L.D. Williams v. Texaco, Inc.* 165 B.R. 662, 666-67, 673-74 (D.N.M. 1994), where Texaco had made false or misleading statements in pleadings, filed bad faith motions and disobeyed discovery orders on the basis of relevance, the Court ordered Texaco to produce only a privilege log, not privileged documents, even though it found Texaco's privilege assertion to be "self-serving."

In sum, IBC cannot cite to a single persuasive opinion from any Circuit Court, or any District Court in this Circuit, supporting its position.

## IV.    CONCLUSION

For the foregoing reasons, and such other reasons as may be provided at any hearing, IBC's motion for contempt must be denied, and there should be no certification by the Magistrate Judge. Because of the significant and unnecessary expense Aetna incurred as a result of IBC's vexatious motion, Aetna should be granted attorneys fees and costs incurred in responding thereto.

---

[11] In *Lernout*, rather than objecting or seeking a stay, defendant filed an *ex parte* proceeding in a Belgian court seeking an injunction against the court order. *Id.* Defendant only filed its objections, which are on their face untimely, ***after*** the Belgian court denied *ex parte* relief. *Id.*

Respectfully submitted,

OF COUNSEL:

/s/ Frederick P. Santarelli

ELLIOTT REIHNER &amp;          JOHN M. ELLIOTT
  SIEDZIKOWSKI, P.C.       JAMES C. CRUMLISH III
                             MARK J. SCHWEMLER
                             FREDERICK P. SANTARELLI
                             JOHN P. ELLIOTT
                             Union Meeting Corporate Center V
                             925 Harvest Drive, Suite 300
                             P.O. Box 3010
                             Blue Bell, PA 19422
                             (215) 977-1000
                             Counsel for Non-party
                             Aetna Inc.

DATED:  January 30, 2004

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day a copy of the foregoing is being served

upon the persons and in the manner indicated below:

## VIA FIRST CLASS MAIL

Lewis R. Olshin, Esquire
Duane, Morris LLP
One Liberty Place
Philadelphia, PA 19103-7396

William J. Leonard, Esquire
Obermayer Rebmann Maxwell & Hippel, LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895

Daniel A. Kotchen, Esquire
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

Howard T. Rosenblatt, Esquire
Howrey Simon Arnold & White LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004


_____/s/ John P. Elliott_____

Dated:  January 30, 2004              JOHN P. ELLIOT